## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEAN-MARC EICHNER, *et al.*, | |
| Plaintiffs, | |
| v. | No. 4:19-cv-00524-ALM |
| OCWEN LOAN SERVICING, LLC, *et al.* | |
| Defendants. | |

**DEFENDANTS U.S. BANK NATIONAL ASSOCIATION'S, DEUTSCHE BANK NATIONAL TRUST COMPANY'S, WELLS FARGO BANK, N.A.'S, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. F/K/A THE BANK OF NEW YORK TRUST COMPANY, NATIONAL ASSOCIATION'S, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK'S, AND THE BANK OF NEW YORK MELLON CORPORATION F/K/A THE BANK OF NEW YORK COMPANY'S <u>MOTION TO DISMISS ON BEHALF OF CERTAIN TRUST DEFENDANTS</u>**

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

Should the Complaint be dismissed with prejudice as to Defendants U.S. Bank National Association, Deutsche Bank National Trust Company, Wells Fargo Bank, N.A., The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association, and The Bank of New York Mellon f/k/a The Bank of New York – and any Residential Mortgage Backed Securities Trust Defendants for whom each acts as trustee[1] – and The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc. pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) because:

1. The Complaint is barred by the res judicata effect of the final judgment in *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tx. May 19, 2017)?

   **Answer: Yes.**

2. The claims brought by Relator Brandon Loyd are barred by the public disclosure bar of the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), because substantially the same allegations already were disclosed in *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tx. filed Aug. 20, 2012), *Consumer Financial Protection Bureau v. Ocwen Financial Corp.*, No. 17-CV-80495 (S.D. Fla. filed Apr. 20, 2017), and the news media and because Loyd does not qualify as an original source?

   **Answer: Yes.**

3. The claims brought by Relator Jean-Marc Eichner are barred by the public disclosure bar of the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), because substantially the same

---

[1] The Complaint purports to sue the "Trustee Defendants … in their capacities *as Trustees* (and legal owners of the Trust Assets) and on behalf of the Trusts (and their investor/certificate holders), which are the beneficial owners of the Trust Assets."  Compl. ¶ 1 (emphasis in original).

allegations already were disclosed in *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tx. filed Aug. 20, 2012), *Consumer Financial Protection Bureau v. Ocwen Financial Corp.*, No. 17-CV-80495 (S.D. Fla. filed Apr. 20, 2017), and the news media and because Eichner does not qualify as an original source?

**Answer: Yes.**

4. Relator Jean-Marc Eichner is prohibited from bringing this action by the first-to-file bar of the False Claims Act, 31 U.S.C. § 3730(b)(5), because the related action of *United States ex rel. Loyd v. U.S. Bank, National Association*, No. 4:17-CV-149 (E.D. Tex. filed Mar. 1, 2017) was pending when the Complaint was filed?

**Answer: Yes.**

5. The Complaint is barred by the government action bar of the False Claims Act, 31 U.S.C. § 3730(e)(3), because it is based on allegations already the subject of the following civil suit in which the Government is a party: *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tx. filed Aug. 20, 2012)?

**Answer: Yes.**

6. The Complaint is barred by the government action bar of the False Claims Act, 31 U.S.C. § 3730(e)(3), because it is based on allegations already the subject of the following civil suit in which the Government is a party: *Consumer Financial Protection Bureau v. Ocwen Fin. Corp.*, No. 17-CV-80495 (S.D. Fla. filed Apr. 20, 2017)?

**Answer: Yes.**

7. Any claims in the Complaint before July 15, 2013 are barred by the False Claims Act's six-year statute of limitations, 31 U.S.C. § 3731(b)?

**Answer: Yes.**

8. The Complaint relies on impermissible group pleading with respect to the "Trusts" and "Trustees" and thus does not plead the elements of any False Claims Act violation with the particularity required by Rule 9(b)?

**Answer: Yes.**

9. The Complaint's conclusory, impermissibly grouped, and contradictory allegations about the Bank of New York Mellon Corporation do not plausibly allege that it is a "trustee" and thus separately fails to state a claim against the Bank of New York Mellon Corporation?

**Answer: Yes.**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 4

APPLICABLE LEGAL STANDARDS ........................................................................ 12

ARGUMENT ................................................................................................................ 13

I.  RES JUDICATA BARS RELATORS' CLAIMS ............................................ 13

    A.  ELEMENT ONE IS MET: THERE IS AN IDENTITY OF PARTIES BETWEEN THE *FISHER* ACTION AND THIS ACTION ............................... 14

    B.  ELEMENTS TWO AND THREE ARE MET: THE SETTLEMENT AND DISMISSAL OF THE *FISHER* ACTION WAS A FINAL JUDGMENT ON THE MERITS RENDERED BY A COURT OF COMPETENT JURISDICTION ....................................................................................... 16

    C.  ELEMENT FOUR IS MET: THIS ACTION INVOLVES FACTS AND CLAIMS THAT ARE VIRTUALLY IDENTICAL TO THOSE IN THE *FISHER* ACTION .......................................................................... 17

II.  THE FCA'S PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL OF RELATORS' CLAIMS ................................................................................ 20

    A.  THE *FISHER* AND CFPB ACTIONS AND ASSOCIATED NEWS MEDIA ARE QUALIFYING PUBLIC DISCLOSURES ................................. 22

    B.  THE COMPLAINT CONTAINS SUBSTANTIALLY THE SAME ALLEGATIONS AS THE PUBLICLY DISCLOSED *FISHER* AND CFPB ACTIONS AND ASSOCIATED NEWS MEDIA ................................. 23

    C.  NEITHER RELATOR LOYD NOR RELATOR EICHNER IS AN ORIGINAL SOURCE ........................................................................ 27

        1.  NEITHER RELATOR VOLUNTARILY DISCLOSED INFORMATION PRIOR TO A PUBLIC DISCLOSURE ..................... 27

        2.  NEITHER RELATOR HAS INDEPENDENT KNOWLEDGE THAT MATERIALLY ADDS TO THE PUBLICLY DISCLOSED ALLEGATIONS ............................................................... 28

III.  THE FCA'S FIRST-TO-FILE RULE REQUIRES DISMISSAL OF RELATOR EICHNER'S CLAIMS .................................................................... 37

IV.  THE FCA'S GOVERNMENT ACTION BAR REQUIRES DISMISSAL OF RELATORS' CLAIMS ................................................................................ 38

V.  ANY CLAIMS BEFORE JULY 15, 2013 ARE BARRED BY THE FCA STATUTE OF LIMITATIONS .......................................................................... 42

VI.  THE COMPLAINT DOES NOT PLEAD TRUST LIABILITY WITH THE PARTICULARITY REQUIRED BY RULE 9(B) ....................................... 44

VII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE BANK OF
       NEW YORK MELLON CORPORATION ..................................................................... 46

CONCLUSION.............................................................................................................................. 49

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. BP Expl. & Prod., Inc.*,
   851 F.3d 384 (5th Cir. 2017) ...................................................................................21

*Bailey v. Shell W. E&P, Inc.*,
   609 F.3d 710 (5th Cir. 2010) ...................................................................................38

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................44

*Cause of Action v. Chi. Transit Auth.*,
   815 F.3d 267 (7th Cir. 2016) ...................................................................................35

*Cicalese v. Univ. of Tex. Med. Branch*,
   456 F. Supp. 3d 859 (S.D. Tex. 2020) .....................................................................48

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ...................................................................................12

*Citibank N.A. v. Data Lease Fin. Corp.*,
   904 F.2d 1498 (11th Cir. 1990) ...............................................................................13

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
   139 S. Ct. 1507 (2019)............................................................................................42

*Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*,
   No. 17-CV-80495, 2021 WL 1348555 (S.D. Fla. Mar. 4, 2021)................................25

*Davis v. Dallas Area Rapid Transit*,
   383 F.3d 309 (5th Cir. 2004) ..............................................................................17, 19

*Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*,
   259 F. Supp. 2d 329 (D.N.J. 2003) ......................................................................38, 41

*Johnson-Williams v. Citimortgage, Inc.*,
   750 F. App'x 301 (5th Cir. 2018) ............................................................................12

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1982) .................................................................................42

*Lubrizol Corp. v. Exxon Corp.*,
   871 F.2d 1279 (5th Cir. 1989) ........................................................................13, 15, 16

*McIntyre v. Ben E. Keith Company*,
    754 F. App'x 262 (5th Cir. 2018) ..............................................................14, 18

*Mendez v. Drs. Hosp. At Renaissance, Ltd.*,
    No. 4:11-CV-02565, 2022 WL 584268 (S.D. Tex. Feb. 25, 2022) ...................21, 23

*Murry v. Gen. Servs. Admin.*,
    553 F. App'x 362 (5th Cir. 2014) ........................................................................14

*New York Life Insur. Co. v. Gillspie*,
    203 F.3d 384 (5th Cir. 2000) ...............................................................................17

*Oreck Direct, LLC v. Dyson, Inc.*,
    560 F.3d 398 (5th Cir. 2009) .........................................................................13, 19

*Oyekwe v. Rsch. Now Grp., Inc.*,
    No. 3:21-CV-2166-X-BK, 2021 WL 5168269 (N.D. Tex. Oct. 21, 2021)...........18

*Ratcliff v. Rainwater*,
    93 F. App'x 623 (5th Cir. 2004) ..........................................................................14

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749 (5th Cir. 2001) ...............................................................................41

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007)..............................................................................................36

*Russell v. SunAmerica Securities, Inc.*,
    962 F.2d 1169 (5th Cir. 1992) .......................................................................15, 16

*Selery Fulfillment, Inc. v. Colony Insur. Co.*,
    525 F. Supp. 3d 771 (E.D. Tex. 2021) .................................................................12

*Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back
    Certificates WAMU Series No. 2007-HE2 Tr.*,
    390 F. Supp. 3d 769 (E.D. Tex. 2019) .................................................................42

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ...............................................................................13

*Stennett v. Premier Rehab., LLC*,
    479 Fed. App'x 631 (5th Cir. 2012) .....................................................................21

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..............................................................................................15

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .........................................................................13, 17

*United States v. Career Opportunities, Inc.*,
    2016 WL 8674565 (N.D. Tex. Sept. 16, 2016)......................................................46

*United States v. Eli Lilly & Co., Inc.*,
    4 F.4th 255 (5th Cir. 2021) ...............................................................14, 15, 40

*United States v. Health Possibilities, P.S.C.*,
    207 F.3d 335 (6th Cir. 2000) .........................................................................14

*United States v. Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ...........................................................................16

*United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*,
    816 F.3d 428 (6th Cir. 2016) .........................................................................35

*United States ex rel. Batty v. Amerigroup Ill., Inc.*,
    528 F. Supp. 2d 861 (N.D. Ill. 2007) ...........................................................39

*United States ex rel. Bennett v. Biotronik, Inc.*,
    876 F.3d 1011 (9th Cir. 2017) .......................................................................41

*United States ex rel. Bennett v. Biotronik, Inc.*,
    No. 2:14-cv-2407, 2016 WL 1587215 (E.D. Cal. Apr. 20, 2016) ................39

*United States ex rel. Bogina v. Medline Industries, Inc.*,
    809 F.3d 365 (7th Cir. 2016) .........................................................................35

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*,
    560 F.3d 371 (5th Cir. 2009) ...................................................................37, 38

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*,
    587 F. Supp. 2d 805 (E.D. Tex. 2008) ..........................................................43

*United States ex rel. Colquitt v. Abbott Labs.*,
    858 F.3d 365 (5th Cir. 2017) ..............................................................26, 28, 44

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*,
    No. 3:19-CV-0920-B, 2021 WL 4502275 (N.D. Tex. Oct. 1, 2021).............43

*United States ex rel. Gage v. Davis S.R. Aviation*,
    No. A–12–CA–904–SS, 2014 WL 3007201 (W.D. Tex. July 2, 2014) .............22, 23

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .........................................................................46

*United States ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ..................................................................45

*United States ex rel. Hendrickson v. Bank of Am., N.A.*,
    343 F. Supp. 3d 610 (N.D. Tex. 2018) ..................................................................36

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) ........................................................................27

*United States ex rel. Holloway v. Heartland Hospice, Inc.*,
    960 F.3d 836 (6th Cir. 2020) ................................................................................23

*United States ex rel. Jackson v. Univ. of N. Texas*,
    673 F. App'x 384 (5th Cir. 2016) .........................................................................43

*United States ex rel. Jackson v. Univ. of N. Texas*,
    No. 4:13-CV-734, 2016 WL 369694 (E.D. Tex. Feb. 1, 2016).........................13, 18

*United States ex rel. Jamison v. McKesson Corp.*,
    649 F.3d 322 (5th Cir. 2011) ...........................................................................21, 24

*United States ex rel. King v. Solvay S.A.*,
    823 F. Supp. 2d 472 (S.D. Tex. 2011) ..................................................................48

*United States ex rel. Lam v. Tenet Healthcare Corp.*,
    481 F. Supp. 2d 689 (W.D. Tex. 2007)................................................................5, 12

*United States ex rel. Lockey v. City of Dallas*,
    576 F. App'x 431 (5th Cir. 2014) ..................................................................21, 27, 35

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
    No. 4:14-CV-00833, 2022 WL 135438 (E.D. Tex. Jan. 13, 2022) ................................ *passim*

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
    No. 4:14-CV-00833, 2022 WL 812364 (E.D. Tex. Mar. 16, 2022) ........................38

*United States ex rel. Park v. Legacy Heart Care, LLC*,
    No. 3:16-CV-0803-S, 2019 WL 4450371 (N.D. Tex. Sept. 17, 2019)....................45

*United States ex rel. Park v. Legacy Heart Care, LLC*,
    No. 3:16-CV-803-S, 2018 WL 5313884 (N.D. Tex. Oct. 26, 2018) ................45, 46

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004) ................................................................................28

*United States ex rel. Reddell v. DynCorp Int'l, LLC*,
    No. 1:14-CV-86, 2019 WL 12875442 (E.D. Tex. Mar. 1, 2019) ...........................48

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
    794 F.3d 457 (5th Cir. 2015) ................................................................................27

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ...........................................................................48

*United States ex rel. Schweizer v. Canon Inc.*,
   9 F.4th 269 (5th Cir. 2021) ...............................................................21, 24, 26

*United States ex rel. Schweizer v. Canon Inc.*,
   No. 4:16-CV-00582, 2019 WL 5061097 (S.D. Tex. Oct. 9, 2019) ................37, 40

*United States ex rel. Schweizer v. Canon, Inc.*,
   No. H-16-0582, 2019 WL 7593347 (S.D. Tex. Aug. 14, 2019) ...........................40

*United States ex rel. Schweizer v. Océ N.V.*,
   677 F.3d 1228 (D.C. Cir. 2012) ........................................................................40

*United States ex rel. Solomon v. Lockheed Martin Corp.*,
   878 F.3d 139 (5th Cir. 2017) ................................................................... *passim*

*United States ex rel. Sonnier v. Standard Fire Ins. Co.*,
   84 F. Supp. 3d 575 (S.D. Tex. 2015) ................................................................22

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994) ...........................................................................24

*United States ex rel. Stone v. AmWest Sav. Ass'n*,
   999 F. Supp. 852 (N.D. Tex. 1997) ..................................................................39

*United States ex rel. Sujatha v. Dental Health Programs, Inc.*,
   No. 3:18-CV-00463-E, 2020 WL 3064712 (N.D. Tex. June 8, 2020) ...................48

*Vela v. Enron Oil & Gas Co.*,
   No. 5:02–cv–37, 2007 WL 1564562 (S.D. Tex. May 29, 2007) ...........................20

*Matter of W. Tex. Mktg. Corp.*,
   12 F.3d 497 (5th Cir. 1994) .............................................................................17

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ...........................................................................12

**Statutes**

12 U.S.C. § 5491(a) ...........................................................................................23

12 U.S.C. § 5564 ...............................................................................................11

12 U.S.C. § 5565 ...............................................................................................11

31 U.S.C. § 3729 ...............................................................................................18

31 U.S.C. § 3730(a) ..................................................................................42

31 U.S.C. § 3730(b)(1) ............................................................................16

31 U.S.C. § 3730(b)(5) ........................................................................3, 37

31 U.S.C. § 3730(e)(3)......................................................................2, 38, 41

31 U.S.C. § 3730(e)(4) ...................................................................... *passim*

31 U.S.C. § 3731(b) ............................................................................3, 42

N.Y. Banking Law § 131 ..........................................................................47

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119,
   901, § 10104(j)(2) (Mar. 23, 2010)........................................................20

**Other Authorities**

12 C.F.R. § 1024.35 ................................................................................32

Fed. R. Civ. P. 8(a) ........................................................................1, 3, 44

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)......................................................................1, 12

Defendants U.S. Bank National Association, Deutsche Bank National Trust Company, Wells Fargo Bank, N.A., The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association, and The Bank of New York Mellon f/k/a The Bank of New York – each acting solely in its capacity as trustee for certain Residential Mortgage Backed Securities Trust Defendants – and The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc.[2] (collectively the "Trustees" or "Trustee Defendants," and together with the Residential Mortgage Backed Securities Trust Defendants for which the Trustees act as trustees,[3] the "Trusts"), respectfully move to dismiss the Complaint, ECF No. 1 ("Compl."), with prejudice pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) for the reasons set forth below.

## INTRODUCTION

This is the third False Claims Act ("FCA") case in a series of *qui tam* lawsuits alleging the same wrongdoing by the same party, and as a parasitic, repeat action it must be dismissed.  In all three cases, *qui tam* relators allege that Defendants Ocwen Loan Servicing, LLC and Ocwen Financial Corporation (together, "Ocwen") falsely certified compliance with applicable laws and regulations when participating in the Home Affordable Modification Program ("HAMP") and servicing mortgage loans insured by the Federal Housing Administration ("FHA") and Veterans' Administration ("VA").  Ocwen settled the first case, *United States ex rel. Fisher v. Ocwen Loan*

---

[2] As addressed further below, the Bank of New York Mellon Corporation is not a trustee and improperly is named as such in the Complaint, but it is referred to herein collectively with the Trustee Defendants because the same dismissal arguments apply equally to it.

[3] The Trustees are not trustees for all of the Trusts listed in Exhibits 7–10 of the Complaint.  Except where otherwise stated, this Motion assumes, solely for purposes of this Motion and without waiving any defenses or admitting any facts, that the Defendant Trustee identified as the trustee for a given Trust in Exhibits 7–10 is or was the trustee of that Trust and that each of the Trusts still exists.  At the appropriate time and as necessary, the Trustees will refute those allegations.

*Servicing, LLC*, with the United States, obtained a release for this conduct from the United States, and the Court thereafter dismissed the action with prejudice as to the United States.

Nonetheless, before the first case was even formally dismissed, Brandon Loyd ("Loyd") – represented by one of the attorneys representing the original relators – filed another *qui tam* case under seal, *United States ex rel. Loyd v. U.S. Bank, National Association, et al.*, alleging the same wrongdoing by Ocwen.  The only difference was that Loyd sought to hold other parties – trustees of Residential Mortgage Backed Securities ("RMBS") trusts – vicariously liable for Ocwen's alleged misconduct.  Loyd filed a notice of voluntary dismissal while the case still was sealed.

On the same day he filed his dismissal notice, Loyd, joined by Jean-Marc Eichner ("Eichner," and together with Loyd, "Relators"), filed this third case, again pursuing allegations arising out of the Ocwen HAMP loan modification and servicing conduct that were raised in the two prior FCA actions.  In their *qui tam* complaint, Relators again rely on a vicarious liability theory, and the only real difference is that now – in addition to naming Ocwen – Relators name as defendants over 1,500 RMBS Trusts that allegedly contain or contained certain loans that Ocwen modified or serviced.  In so doing, Relators improperly are pursuing relief for conduct that the Government already knew about, participated in resolving via settlement, and dismissed with prejudice.

This classically parasitic *qui tam* action must be dismissed.  The law does not allow a party to seek multiple recoveries for the same wrongdoing.  As explained below, Relators' claims face three legal bars that are fatal to their Complaint: (1) res judicata, (2) the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), and (3) the FCA's government action bar, 31 U.S.C. § 3730(e)(3).  Naming the Trusts (in addition to Ocwen) as Defendants does nothing to overcome these legal impediments.  The Complaint alleges no Trust misconduct, let alone any conduct that would give

rise to FCA liability.  Instead, Relators rely solely on a vicarious liability theory to contend that the Trusts are liable for Ocwen's conduct.  Because the claims against Ocwen are not viable, the wholly derivative claims against the Trusts necessarily fail, too.[4]  Relators cannot pursue an alleged fraud that was discovered, litigated, and resolved long ago.  Fifth Circuit authority on this issue is clear: a plaintiff cannot, after dismissing with prejudice a claim against one defendant, bring a subsequent suit against a second defendant for the same claim based solely on a theory of vicarious liability for the first defendant's conduct.  The rule applies with equal force to FCA actions where, as here, relators seek to pursue FCA claims on behalf of the Government that the Government already settled and dismissed with prejudice.

Finally, in addition to these case-dispositive impediments, Relators' claims suffer from other flaws.  Relator Eichner is prohibited from bringing claims by the FCA's first-to-file rule, 31 U.S.C. § 3730(b)(5).  All of Relators' claims that predate July 15, 2013 are barred by the FCA's six-year statute of limitations, 31 U.S.C. § 3731(b).  And the Complaint also fails to plead Trust liability with the plausibility and particularity required by Federal Rules of Civil Procedure 8(a) and 9(b).  In particular, the Complaint improperly lumps all of the Trusts together in impermissible group pleading and fails to provide the specificity necessary to pinpoint and connect underlying loans and claims for payment to alleged Ocwen misconduct on the one hand and to particular Trusts on the other hand.

For these reasons, and as explained further below, the Complaint must be dismissed with prejudice as to the Trusts.

---

[4] The Trusts thus join in the arguments made by Ocwen in its separate Motion to Dismiss.

## BACKGROUND

In this case, Relators allege that Ocwen violated the FCA by engaging in "unlawful servicing conduct" and making "false records, statements and claims" in connection with the HAMP program and mortgage loans insured by the FHA and VA.  Compl. ¶¶ 213–14, 218–20. These allegations are not new.  Over the last ten years, relators (all with an attorney in common) have filed three different *qui tam* cases in this Court alleging FCA claims based on Ocwen's allegedly unlawful conduct when participating in HAMP and servicing FHA and VA loans.  And the Consumer Financial Protection Bureau ("CFPB") also has been pursuing a case against Ocwen for similar loan servicing and modification misconduct since two years before Relators filed their Complaint.

**The First FCA Case:** ***United States ex rel. Fisher v. Ocwen Loan Servicing, LLC.***  On August 20, 2012, Michael Fisher (later joined by Brian Bullock) filed an FCA *qui tam* action against Ocwen alleging that Ocwen submitted false certifications and false claims to the Government in connection with its participation in HAMP and FHA and VA mortgage loan servicing.  *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543 (E.D. Tex. filed Aug. 20, 2012) (the "*Fisher* Action").  Specifically, the relators alleged that Ocwen falsely certified compliance with "all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements" in its initial and amended HAMP Servicer Participation Agreements ("SPAs") and annual certifications by failing to comply with various laws and regulations including FHA regulations; laws prohibiting unfair, deceptive, or abusive acts or practices ("UDAAP"); the Real Estate Settlement Procedures Act ("RESPA"); the Truth in Lending Act ("TILA") and Regulation Z; and Texas, New York, and Massachusetts

laws designed to protect homeowners.  Fisher Dkt. 126 ¶¶ 41–187.[5]  In addition, the relators alleged that Ocwen made similar false statements and certifications under the FHA and VA programs.  *Id.* ¶¶ 196–97.

On May 19, 2017, this Court dismissed the *Fisher* Action with prejudice pursuant to settlement.  Fisher Dkt. 593.  Under that settlement, "the United States release[d] Ocwen from any civil or administrative monetary claim the United States has for the Covered Conduct under: the False Claims Act, 31 U.S.C. §§ 3729-3733, and common law theories of breach of contract, payment by mistake, unjust enrichment, or fraud."  Ex. A at  4–5.[6]  The "Covered Conduct" released in that settlement encompasses the Ocwen conduct alleged in the *Fisher* Action, such as "certain civil claims against Ocwen for knowingly submitting or causing the submission of false or fraudulent claims in violation of the False Claims Act, 31 U.S.C. § 3729–3733, arising from its performance of the Home Affordable Modification Program (HAMP) mortgage modifications, from April 16, 2009 through [February 17, 2017]."  Ex. A at 2–3.

**The Second FCA Case: *United States ex rel. Loyd v. U.S. Bank, N.A., et al*.**  On March 1, 2017, two months before dismissal of the *Fisher* Action (and less than two weeks after the *Fisher* settlement agreement was signed), Loyd – one of the two Relators in this case and represented by one of the same attorneys who represented the relators in the *Fisher* Action – filed

---

[5] The *Fisher* Action Fourth Amended Complaint is attached as Exhibit B to the May 6, 2022 Declaration of Jennifer M. Wollenberg (the "Wollenberg Declaration").  All referenced docket entries from the *Fisher* Action and the two other litigations described in this Background – the *Loyd* Action and the CFPB Action – also are attached as exhibits to the Wollenberg Declaration, and, as noted below, the Court can take judicial notice of these "documents filed in other courts for the purpose of establishing the fact of litigation and related filings."  *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 689, 695 (W.D. Tex. 2007).

[6] All "Ex." references are to exhibits to the Wollenberg Declaration.

a separate FCA *qui tam* action against the Trustees,[7] alleging that the Trustees were vicariously liable for the ***same*** allegedly false Ocwen statements and certifications that were raised and ultimately dismissed with prejudice in the *Fisher* Action.  *See United States ex rel. Loyd v. U.S. Bank, National Association, et al.*, No. 4:17-CV-149 (E.D. Tex. filed Mar. 1, 2017) (the "*Loyd* Action").  The allegations in the *Loyd* Action complaint are in almost every respect identical to the *Fisher* Action complaint, alleging the same party (Ocwen) violated the same law (the FCA) in the same way (by falsely certifying compliance with laws when participating in HAMP).  Indeed, in language nearly identical to the *Fisher* Action complaint, the *Loyd* Action complaint alleged that Ocwen had falsely certified compliance with "all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements" in its initial and amended HAMP SPAs and annual certifications.  Loyd Dkt. 1 ¶ 12.

Besides omitting a few allegations regarding Ocwen's misconduct, the complaint in the *Loyd* Action differed from the complaint in the *Fisher* Action only in that it alleged that four banks operated as trustees for certain RMBS trusts and thus purportedly were vicariously liable for Ocwen's alleged misconduct.  Loyd Dkt. 1 ¶¶ 1–2, 16–24, 150.  The complaint contained no allegations that the trustees had engaged in any wrongdoing themselves.  Loyd moved to voluntarily dismiss the *Loyd* Action on July 15, 2019.  After the Government consented, the Court entered an order of dismissal on October 1, 2019.  Loyd Dkt. 22.

**The Third FCA Case:** ***United States ex rel. Eichner v. Ocwen Loan Servicing, LLC, et al.***  Loyd, joined by a new relator, Eichner, filed this case – the ***third*** *qui tam* lawsuit – on July 15,

---

[7] The trustee defendants in the *Loyd* Action and in this case are the same, except that JPMorgan Chase Bank, N.A. ("JPMorgan") was named in the *Loyd* Action, and the Complaint in this case now instead names the supposed "Successor-Trustees" to JPMorgan.  In the *Loyd* Action, Wells Fargo Bank, N.A. also was described as both trustee and master servicer.

2019 (the same day that Loyd filed his notice of voluntary dismissal in the *Loyd* Action).  The current Complaint replicates the complaint in the *Loyd* Action and is based upon the ***same*** HAMP participation and loan servicing allegations against Ocwen previously presented in the *Fisher* Action, but this time seeking to hold the Trusts – through the Trustees – vicariously liable for Ocwen's alleged conduct.  Indeed, on the Civil Cover Sheet, Relators expressly identified the *Fisher* Action and the *Loyd* Action as "Related Case(s)."  *See* Dkt. 1-11 (Civil Cover Sheet listing Nos. "4:17cv149 and 4:12-cv-543").

As illustrated in Exhibit N (the "Exhibit N Comparison Chart"), the allegations reflect a copy-and-paste exercise by Relators from the *Fisher* Action and *Loyd* Action.  As just one example, the language underlined in the following paragraphs from the Complaint is identical across all three *Fisher* Action, *Loyd* Action, and current complaints, and the remaining *italicized* language is identical as between the Complaint and the *Loyd* Action complaint:

> Ocwen violated the FCA by fraudulently inducing Fannie Mae, *acting as financial* agent for the United States, to execute two (2) SPA*s with Ocwen (the original and Amended and Restated SPAs)* by falsely representing, warranting and covenanting therein *and in the Financial Instruments that comprised a part of the SPAs,* that Ocwen *[1]* was at that time [present] "in compliance with," and that *[2]* "all Services will be performed [future] in compliance with all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements . . . designed to prevent unfair, discriminatory or predatory lending practices" *and [3]* it *was* not aware of any other legal or financial impediments to performing its obligations under *the HAMP Program or the SPA* and it *would* promptly notify Fannie Mae of any financial and/or operational impediments which may impair its ability to perform its obligations under the Program or the Agreement. Each annual recertification of compliance repeated the same false certifications and/or representations *in addition to a certification that [4]* all [HAMP] Services had been performed [past] in compliance with *the same laws and regulations. Moreover, Ocwen impliedly certified to the United States, falsely, by submitting* numerous *claims for* incentive *payments under HAMP, that it was in compliance with all such applicable laws and regulations*; this multitude of *implied false*

*certifications also* made *Ocwen's* billions of dollars' worth of *claims* submitted *for payment false claims under the FCA*.[8]

> Ocwen continuously failed to meet basic and fundamental requirements related to the servicing of delinquent conventional and FHA loans under "default servicing" and/or "loss mitigation" requirements—procedures designed to protect delinquent borrowers from losing their homes, protect *investors/note owners* (the Trusts) from losing the income streams from the loans and, finally, to protect the FHA, *as* insurer, from unnecessarily paying claims under FHA loan insurance programs *when the losses could and should have been avoided* by proper servicing conduct. Ocwen knowingly failed to comply with federal and state laws (including at least Texas, New York, *and California laws)* designed to prevent unfair, discriminatory or predatory lending practices including but not limited to UDAAP and UDAP laws and state consumer lending laws. Ocwen further failed to provide consumers with notices of the right to rescind loan modification agreements involving new advances of credit entered between the borrowers and Ocwen, as required by *the Truth in Lending Act ("TILA")* and *the laws of* Texas, New York and Massachusetts *when Ocwen advanced to borrowers new extensions of credit not arising from the original notes or deeds of trust/mortgages.*

Compl. ¶¶ 16–17 (original emphases & footnotes omitted).  *Compare with* Fisher Dkt. 126 ¶¶ 1–2 (using term "OLS" instead of "Ocwen" in places) *and* Loyd Dkt. 1 ¶¶ 12–13.  This similarity carries throughout the Complaint as illustrated in the examples in the following charts:

| FHA Regulation Violation Allegations | | |
|---|---|---|
| **Fisher Dkt. 126** | **Loyd Dkt. 1** | **Complaint** |
| Ocwen failed to engage in timely loss mitigation. (¶ 41) | Same. (¶ 48) | Same. (¶ 57) |
| Ocwen failed to engage in FHA-specific loss mitigation.  (¶ 42) | Same. (¶ 49) | Same. (¶ 58) |
| Ocwen failed to properly implement FHA-HAMP. (¶ 43) | Same. (¶ 50) | Same. (¶ 59) |

---

[8] While this final sentence does not appear verbatim in the *Fisher* Action complaint, the preamble to that complaint makes a substantially similar allegation: "As a result of the fraudulent inducement of the United States to enter that contract, all of Ocwen's requests for incentive payments thereunder were false claims.  Ocwen continued its fraudulent course of conduct by submitting to Fannie Mae, the financial agent for the United States under the HAMP program, false Annual Certifications and representations of past, present and future compliance with federal and state laws, regulations, rules and requirements.  Based on these and other false representations, Ocwen continues to submit false claims for incentive payments under the HAMP program."  Fisher Dkt. 126, at 5.  As demonstrated by the italics, the *Loyd* Action complaint includes this final sentence almost verbatim.  Loyd Dkt. 1 ¶ 12.

| | | |
|---|---|---|
| Ocwen failed to implement FHA-compliance quality control. (¶¶ 44–45) | Same. (¶¶ 51–52) | Same. (¶¶ 60–61) |
| Ocwen improperly serviced FHA loans offshore. (¶¶ 46–50) | Same. (¶¶ 53–57) | Same. (¶¶ 62–66) |

| UDAAP Violation Allegations | | |
|---|---|---|
| **Fisher Dkt. 126** | **Loyd Dkt. 1** | **Complaint** |
| Ocwen failed to make clear that borrowers had to pay any "deferred principal" at maturity. (¶ 57.1) | Same. (¶ 65.1) | Same. (¶ 74) |
| Ocwen failed to provide borrowers with the pre-modification principal balance of their loans. (¶ 57.2) | Same. (¶ 65.2) | Same. (¶ 74) |
| Ocwen failed to break down the amounts it had advanced for taxes, insurance, and interest. (¶ 57.3) | Same. (¶ 65.3) | Same. (¶ 74) |
| Ocwen offered interest rates that increased over time. (¶ 57.4) | Same. (¶ 65.4) | Same. (¶ 74) |
| Ocwen provided modifications that depended on home values rising. (¶ 58) | Same. (¶ 66) | Same. (¶ 75) |
| Ocwen delayed and wrongfully denied loan modifications. (¶¶ 75–83) | Same. (¶¶ 83–91) | Same. (¶¶ 92–100) |
| Ocwen incorrectly calculated borrower incomes. (¶¶ 84–86) | Omitted. | Omitted. |
| Ocwen violated loss mitigation requirements. (¶¶ 87–88) | Same. (¶¶ 92–93) | Same. (¶¶ 101–02) |
| Ocwen unlawfully failed to suspend foreclosure. (¶¶ 89–90) | Same. (¶¶ 94–96) | Same. (¶¶ 103–05) |
| Ocwen unlawfully capitalized unloaned principal. (¶¶ 91–94) | Same. (¶¶ 97–100) | Same. (¶¶ 106–09) |
| Ocwen unlawfully forced escrow advances. (¶¶ 95–97) | Same. (¶¶ 101–03) | Same. (¶¶ 110–12) |
| Ocwen failed to honor in-flight modifications. (¶¶ 98–99) | Same. (¶¶ 104–05) | Same. (¶¶ 113–14) |
| Ocwen executed false affidavits, assignments, and attestations. (¶ 100) | Omitted. | Omitted. |
| Ocwen manipulated the modification process. (¶ 101) | Same. (¶ 106) | Same. (¶ 115) |
| Ocwen manipulated modification documents. (¶¶ 102–04) | Same. (¶¶ 107–09) | Same. (¶¶ 116–19) |
| Ocwen violated the CFPB's continuity of contact requirements. (¶¶ 105–10) | Same. (¶¶ 110–15) | Same. (¶¶ 120–25) |
| Ocwen imparted false and misleading information to borrowers. (¶¶ 111–15) | Same. (¶¶ 116–20) | Same. (¶¶ 126–30) |
| Ocwen permitted offshore loan reviews. (¶¶ 116–19) | Same. (¶¶ 121–24) | Same. (¶¶ 131–34) |

| Ocwen forced borrowers into in-house modifications. (¶¶ 120–22) | Same. (¶¶ 125–27) | Same. (¶¶ 135–37) |
| --- | --- | --- |

| RESPA Violation Allegations | | |
| --- | --- | --- |
| **Fisher Dkt. 126** | **Loyd Dkt. 1** | **Complaint** |
| Ocwen failed to timely send borrowers notice of transfer to a new servicer and timely respond to complaints. (¶ 126–28) | Same. (¶¶ 131–32) | Same. (¶¶ 141–42) |
| Ocwen failed to ensure proper receipt of information about and to honor in-flight modifications. (¶ 129–30) | Same. (¶¶ 133–34) | Same. (¶¶ 143–44) |

| TILA and Regulation Z Violation Allegations | | |
| --- | --- | --- |
| **Fisher Dkt. 126** | **Loyd Dkt. 1** | **Complaint** |
| Ocwen failed to give the required notice of the right to rescind the transaction within three days. (¶¶ 131–46) | Largely omitted; same to the extent retained. (*See, e.g.*, ¶¶ 13, 39) | Largely omitted; same to the extent retained. (*See, e.g.*, ¶¶ 17, 48) |

| State Law Violation Allegations | | |
| --- | --- | --- |
| **Fisher Dkt. 126** | **Loyd Dkt. 1** | **Complaint** |
| Ocwen violated Texas law designed to protect homeowners. (¶¶ 152–73) | Partially omitted; same to the extent retained. (¶¶ 137–40) | Partially omitted; same to the extent retained. (¶¶ 147–50) |
| Ocwen violated New York law designed to protect homeowners. (¶¶ 174–80) | Omitted. | Omitted. |
| Ocwen violated Massachusetts law designed to protect homeowners. (¶¶ 181–87) | Omitted. | Omitted. |

In other words, the Complaint's allegations of fraud based on Ocwen's purported misconduct repeat the allegations made in the *Fisher* Action and *Loyd* Action.

Moreover, while the *Loyd* Action first named trustees as defendants and the Complaint first named the Trusts (through the Trustees) as defendants, allegations recognizing the existence of trust investors in, or beneficial owners of, the loans serviced by Ocwen were present in the *Fisher* Action.  *See, e.g.*, Fisher Dkt. 126 ¶ 13 ("Under HAMP, incentive fees paid to the servicer by the Government, … and similar, separate fees paid by the Government to the lender/investor owners of the loans, are designed to fully compensate the servicer and investor owners for all costs

associated with granting the HAMP modification."); *id.* ¶ 17 ("Investors/owners of the loans are paid an initial, one-time modification fee of $1,500 for modifications that lower the monthly housing expense by 6% or more …. Investors are paid by the United States (via payment to the servicer for the investor) …."). Many of those allegations have been copied into the follow-on complaints as illustrated in the examples in the following chart:

| Trust/Trustee Allegations | |
|---|---|
| **Fisher Dkt. 126** | **Complaint** |
| Ocwen "wrongfully procured for themselves and the owner/investors of mortgages serviced by OLS nearly two billion dollars in incentive payments from the Government …." (5) | Same but describing "the owner/ investors" as "the Trusts (and their investors)" and updating the amount to "approximately four and a half billion dollars." (¶ 12) |
| "Under HAMP, loan servicers, investor/owners of loans, and borrowers receive incentive payments from the Government in connection with granting the modification …." (¶ 10) | Same but describing "investor/owners" as "investors in securitized loans (the Trusts)." (¶ 37) |
| "OLS additionally failed to properly inform some borrowers the relevant investor on their loan did not participate in HAMP, and therefore they weren't eligible for HAMP modifications." (¶ 113) | Same but describing "the relevant investor" as "the investor (the Trust)." (¶ 128) |
| "In some instances, OLS failed to communicate with the trustee to ensure proper financials and court documents were obtained in connection with borrowers' request for modification." (¶ 114) | Same. (¶ 129) |

In other words, the concept of the Trusts and their relationship with Ocwen vis-à-vis the loans at issue is not a new one.

**The CFPB Action:** ***CFPB v. Ocwen Fin. Corp, et al.*** On April 20, 2017 – more than two years before this action was filed – the CFPB filed a complaint against Ocwen under the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5564 and 5565, for loan servicing and modification misconduct. *See Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-CV-80495 (S.D. Fla. filed Apr. 20, 2017) (the "CFPB Action"). The CFPB alleged that Ocwen "committed numerous violations of Federal consumer financial laws," including that "[a]mong other things, Ocwen has

improperly calculated loan balances, misapplied borrower payments, failed to correctly process escrow and insurance payments, and failed to properly investigate and make corrections in response to consumer complaints" and "illegally foreclose[ed] upon borrowers' loans …." CFPB Dkt. 1 ¶ 1. These allegations are substantially similar to allegations of Ocwen misconduct alleged in the Complaint. *See, e.g.*, Compl. ¶ 177 (letters to customers contained incorrect unpaid principal balances); ¶ 134 (borrower payments "were often misapplied"); ¶ 171 (Ocwen "failed to pay premiums due from borrowers' escrow accounts"); ¶ 158 (rather than investigating and correcting, Ocwen falsified complaint records to hide non-compliance); ¶¶ 160, 180 (wrongful foreclosure). And the Government, through the CFPB, still is pursuing the CFPB Action today.

## APPLICABLE LEGAL STANDARDS

Courts considering a Rule 12(b)(6) motion "must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff." *Selery Fulfillment, Inc. v. Colony Insur. Co.*, 525 F. Supp. 3d 771, 774 (E.D. Tex. 2021) (Mazzant, J.). In doing so, however, the Court first "should identify and disregard conclusory allegations, for they are 'not entitled to the assumption of truth.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). The Court may properly consider "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Id.* (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (noting that such documents assist the court in making the "elementary determination of whether a claim has been stated" (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000))). The Court also may properly take judicial notice of matters of public record, *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994), and "documents filed in other courts for the purpose of establishing the fact of

litigation and related filings."   *Lam*, 481 F. Supp. 2d at 695; *see also Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 303–04 (5th Cir. 2018).

## ARGUMENT

## I.   RES JUDICATA BARS RELATORS' CLAIMS

Relators' attempt to hold the Trusts vicariously liable for conduct that was resolved by a final judgment in the *Fisher* Action fails due to res judicata,[9] which bars the re-litigation of claims that were raised or could have been raised in a prior suit.   *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).   Importantly, the preclusive effect of the prior judgment extends to an attempt to hold one party vicariously liable for the same wrongdoing that was previously litigated.   *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989) (holding res judicata barred claims brought against additional defendants based on a vicarious liability theory); *Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (same).   Thus, even assuming, *arguendo*, that the Trusts otherwise could be held vicariously liable for Ocwen's conduct, res judicata precludes pursuit of the claims here because they arise from the same facts (Ocwen's alleged fraud and servicing misconduct when participating in the HAMP, FHA, and VA loan programs) that were pursued to final judgment against Ocwen in the *Fisher* Action.

In the Fifth Circuit, res judicata applies where four elements are satisfied: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.   *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *see also United States ex rel. Jackson v. Univ. of N. Texas*, No.

---

[9] The term res judicata generally is used to encompass two preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000).   The term "res judicata" as used in this Motion refers to claim preclusion.

4:13-CV-734, 2016 WL 369694, at *3 (E.D. Tex. Feb. 1, 2016) (Mazzant, J.), *aff'd*, 673 F. App'x 384 (5th Cir. 2016).  "Dismissal under Rule 12(b)(6) on res judicata grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings."  *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014) (citing *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *see also McIntyre v. Ben E. Keith Company*, 754 F. App'x 262, 265 (5th Cir. 2018) (holding that "relevant facts" for res judicata purposes are contained in a complaint when a complaint is nearly identical to the complaint filed in the earlier action); *Ratcliff v. Rainwater*, 93 F. App'x 623, 624–25 (5th Cir. 2004) (upholding dismissal of claims as "plainly barred by res judicata" and noting that "[a] judge may take judicial notice of the record in a prior related proceeding over which he presided").  As described below, each res judicata element is satisfied here.

## A.     Element One Is Met: There Is an Identity of Parties Between the *Fisher* Action and This Action

The first res judicata element – identical parties or parties in privity with another – is easily satisfied here.  First, there is an identity between the plaintiffs in the *Fisher* Action and this action.  Both the *Fisher* Action and this case were brought under the FCA's *qui tam* provisions; thus, "the 'real party in interest' is the United States," and the FCA claims "ultimately belong to the United States."  *United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 262 (5th Cir. 2021); *see also United States v. Health Possibilities, P.S.C.,* 207 F.3d 335, 341 (6th Cir. 2000) (explaining that a relator's "right to 'conduct' the action" in a non-intervened case does not "annul the government's status as the real-party-in-interest in *qui tam* litigation").  In the *Fisher* Action, the United States affirmatively ***consented to dismissal with prejudice*** of its FCA claims arising from Ocwen's servicing and modification conduct and accepted Ocwen's settlement payment.  Fisher Dkt. 584.  Because the United States is the real party in interest in all FCA cases and agreed to settle the

14

claims regarding Ocwen's alleged misconduct, it is of no moment that this case involves different relators than in the *Fisher* Action.  Relators are merely partial assignees of the United States' FCA claims, *Eli Lilly & Co., Inc.*, 4 F.4th at 262 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000)), and thus are barred by res judicata to the same extent as the United States would be.  *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (relationship between assignee and assignor merits application of res judicata).[10]

Second, there is an identity between the defendants in the *Fisher* Action and this case. Ocwen was a defendant in the *Fisher* Action and is a defendant here.  In addition, Relators' only asserted basis for liability as to the other Defendants is the Trusts' supposed "vicarious liability" for the "wrongful acts of their agent, Ocwen."  *See* Compl. ¶¶ 188, 214.  That alleged vicarious liability relationship also satisfies the defendant-side identity-of-parties element of res judicata. *See Lubrizol Corp.*, 871 F.2d at 1289 ("The vicarious liability relationship between Exxon and its employees Evans and Lower, which forms the only asserted basis for Exxon's liability for the computer dispute, justifies claim preclusion."); *see also Russell*, 962 F.2d at 1174 (noting that "[s]everal circuits have considered whether a vicarious liability relationship constitutes sufficient privity to merit the application of claim preclusion" and collecting cases concluding that preclusion applies); W. Prosser & R. Keeton, The Law of Torts § 69, at 449 n.3 (5th ed. 1984) ("[A] judgment for A in an action brought against him by C is res judicata as to B's vicarious liability to C.").  As the Fifth Circuit explained:

> Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants

---

[10] Res judicata applies even where the named parties in two actions are not identical, so long as the parties are in privity.  *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) ("To satisfy the identity element, strict identity of parties is not necessary.").

> in each action, if not complete identity of parties; and where although the
> prior action was concluded, the plaintiff's later suit continued to seek
> essentially similar relief—the courts have denied the plaintiff a second bite
> at the apple.

*Lubrizol Corp.*, 871 F.2d at 1288.  That is precisely the situation here.  The United States' FCA

claims based on Ocwen's HAMP modification and servicing conduct were alleged and resolved

in the *Fisher* Action.  Now, Relators – acting on behalf of the **United States** – want a second bite

at the apple against **Ocwen's** alleged principals – the Trusts.  Res judicata blocks Relators' efforts.

**B.**  **Elements Two and Three Are Met: The Settlement and Dismissal of the *Fisher*
Action Was a Final Judgment on the Merits Rendered by a Court of
Competent Jurisdiction**

The settlement and accompanying dismissal with prejudice of the *Fisher* Action satisfy the

second and third elements of res judicata – that the prior action ended in a final judgment on the

merits rendered by a court of competent jurisdiction.  On February 17, 2017, the *Fisher* parties

executed a settlement agreement, pursuant to which the United States released Ocwen for FCA

(and other) liability for the broad range of Covered Conduct alleged.  Ex. A at 4-5.  On April 28,

2017, the *Fisher* parties filed a joint stipulation of dismissal with prejudice pursuant to Federal

Rule of Civil Procedure 41(a).  Fisher Dkt. 583.  And on May 1, 2017, in accordance with 31

U.S.C. § 3730(b)(1), the United States filed its consent to dismissal of the *Fisher* Action, agreeing

"to Dismissal with prejudice of any claims asserted in this action under the False Claims Act, 31

U.S.C. §§ 3729-3733, or the common law theories of breach of contract, payment by mistake,

unjust enrichment, or fraud for the Covered Conduct, as that term is defined in the February 17,

2017 Settlement Agreement …."  Fisher Dkt. 584.  *See United States v. Shanbaum*, 10 F.3d 305,

313 (5th Cir. 1994) ("An agreed judgment is entitled to full res judicata effect.");  *Russell*, 962 F.2d

1169 (precluding action under res judicata when party in privity with defendants entered into

settlement agreement of similar claim).  Shortly thereafter, on May 19, 2017, this Court ordered,

"pursuant to the February 17, 2017 Settlement Agreement," dismissal with prejudice as to the *Fisher* relators and as to the United States with respect to the FCA claims for the Covered Conduct. Fisher Dkt. 593.  *See Matter of W. Tex. Mktg. Corp.*, 12 F.3d 497, 501 (5th Cir. 1994) ("[I]t is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir. 1978))).

### C.    Element Four Is Met: This Action Involves Facts and Claims That Are Virtually Identical to Those in the *Fisher* Action

When determining whether the same claim or cause of action was involved in both actions – the fourth res judicata element – courts in the Fifth Circuit apply the "transactional test," which extends a prior judgment's preclusive effects to the transaction or series of transactions out of which the original action rose.  *Test Masters Educ. Servs. Inc.*, 428 F.3d at 571.  Ultimately, courts weigh whether a grouping of facts constitutes a preclusive transaction by evaluating whether the actions are based in the "same nucleus of operative facts."  *Id.*; *see also New York Life Insur. Co. v. Gillspie*, 203 F.3d 384, 387 (5th Cir. 2000); *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 313 (5th Cir. 2004).

In the *Fisher* Action, the relators alleged that Ocwen was liable under the FCA for submitting false certifications and claims for payment to the Government in connection with its participation in HAMP and in the FHA/VA programs, including as described in the settlement agreement's "Covered Conduct."  *See* Ex. A at 2-3.  As Defendants illustrate in the Background, *supra*, and the Exhibit N Comparison Chart, the current Complaint repeats those allegations and relies on them exclusively in the attempt to impose vicarious liability on the Trusts.  As such, the claims here clearly arise out of the "same nucleus of operative facts" as the *Fisher* Action.  *See,*

*e.g.*, *McIntyre*, 754 F. App'x at 265 (precluding claim when the facts alleged in the complaint were nearly identical to the complaint filed in the earlier action); *Oyekwe v. Rsch. Now Grp., Inc.*, No. 3:21-CV-2166-X-BK, 2021 WL 5168269, at *3 (N.D. Tex. Oct. 21, 2021) (barring claims under res judicata because the allegations in the amended complaint mirrored those in a prior action); *Jackson*, 2016 WL 369694, at *3 ("Relator's claims in the instant litigation were demonstrably premised on the same set of factual allegations as those asserted previously, and for that reason … Relator's claims arose out of the same nucleus of operative facts." (internal quotations omitted)). Moreover, while application of res judicata does not depend on the same type of claim being asserted in each action, *Jackson*, 2016 WL 369694, at *3, there is overlap on that score as well, with both actions alleging the **same** FCA liability arising out of the **same** federal and state laws and regulations. *Compare* Complaint (causes of action under 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G)) *with* Fisher Dkt. 126 (causes of action under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)).

Res judicata bars all of Relators' claims concerning false claims for payment that pre-dated the May 19, 2017 final judgment in the *Fisher* Action, as such claims clearly could have been raised in the prior proceeding. This bar also extends to preclude the Complaint's claims concerning false claims for payment that post-date May 19, 2017, because those claims originate from the same allegations that Ocwen fraudulently induced the United States through the initial and amended SPAs, HAMP annual certifications, and annual certifications to HUD.

In the *Fisher* Action, the relators alleged that Ocwen "wrongfully procured for themselves and the owner/investors of mortgages serviced by OLS nearly two billion dollars in incentive payments from the Government … by fraudulently inducing the U.S. to execute a mortgage servicer incentives contract allowing Ocwen to participate and recover incentives in the Treasury

Department's Home Affordable Modification Program ("HAMP") program."  Fisher Dkt. 126, at 5.[11]   The relators further claimed that this fraudulent inducement extended to "false Annual Certifications" and that, as of the date of the *Fisher* Action complaint, Ocwen, "***continues to submit false claims*** for incentive payments under the HAMP program."  *Id.*  The allegations in the Complaint that Ocwen fraudulently induced the United States to enter into these same HAMP SPAs executed on April 16, 2009 and September 15, 2010 (and that Ocwen continued its "fraudulent course of conduct" through the same annual certifications submitted to HAMP from 2010–2013 and the same annual certifications submitted to HUD since 2004), Compl. ¶¶ 12, 16, 38, 69, 71, have already been litigated and settled and are barred.  Relators do not claim any new, post-*Fisher*-judgment agreements, annual certifications, or program participation conduct by Ocwen that fraudulently induced the United States.  Indeed, the Complaint admits that "as of December 30, 2016, new HAMP loan modification applications were no longer accepted."  *Id.* ¶ 38.  Under Relators' own theory, any trailing "incentive payments through the current date" for successful HAMP modifications would have been "induced" prior to the *Fisher* Action judgment.  *See, e.g.*, *id.* ¶¶ 38, 230(a) (seeking damages for "fraudulent inducements" of the SPAs and annual certifications).  Thus, "[u]nder the transactional test's pragmatic considerations, … the claims in question originate from the same continuing course of allegedly [wrongful] conduct[.]"  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004).

In light of this, Relators' claims do not survive res judicata.  *See Oreck Direct, LLC*, 560 F.3d at 404 (holding that false advertising claims regarding a vacuum model marketed both before

---

[11] As noted in the Background, *supra*, the *Fisher* Action complaint noted the existence of the Trusts and alleged that the payments making up the alleged false claims and damages were earmarked for not only Ocwen but also the borrowers and the investors in, or beneficial owners, of the loans (all to be paid through Ocwen).

and subsequent to the judgment in first action were barred by res judicata because the claim regarding continued false advertising "ar[o]se from the same series of transactions from which [the first action] arose"); *Vela v. Enron Oil & Gas Co.*, No. 5:02–cv–37, 2007 WL 1564562, at *9 (S.D. Tex. May 29, 2007) (claims regarding alleged misinterpretation of royalty obligations under a lease agreement were barred – even as to payments missed subsequent to the prior judgment – because the alleged misinterpretation of the lease could have been raised in the prior action and "continuous conduct occurring after the [prior judgment] became final is not a 'subsequent wrong'").

## II.    THE FCA'S PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL OF RELATORS' CLAIMS

Even if it were not barred by res judicata (it is), the Complaint would have to be dismissed because Relators' claims are based on Ocwen's alleged modification and servicing violations that were publicly disclosed, and neither Relator is an original source.   The FCA's public disclosure bar provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed ... unless ... the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).[12]  "The purpose of the [public disclosure] bar is both to promote private citizen involvement in fraud exposure while also 'preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud.'"  *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 143 (5th Cir. 2017) (quoting *United States ex rel. Reagan v. E. Tex.*

---

[12] This current version of the public disclosure bar became effective on July 22, 2010.  *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, 901, § 10104(j)(2) (Mar. 23, 2010).  Although the Complaint purports to allege claims prior to July 22, 2010, any such earlier claims are time-barred as discussed below and, regardless, dismissal is warranted under both the current and prior versions of the public disclosure bar.

*Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004)).  The Complaint here – which literally copies and pastes publicly disclosed allegations from prior lawsuits – is precisely the type of action § 3730(e)(4) is designed to bar.

The Fifth Circuit applies a three-part test to determine whether the public disclosure bar applies:

> (1) whether there has been a "public disclosure" of allegations or transactions,
>
> (2) whether the *qui tam* action [allegations are substantially the same as] such publicly disclosed allegations, and
>
> (3) if so, whether the relator is the "original source" of the information.

*United States ex rel. Schweizer v. Canon Inc.*, 9 F.4th 269, 275 (5th Cir. 2021) (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011)).[13]  "Once the [defendant] has identified public documents that could plausibly contain allegations or transactions upon which the relator's action is based, the relator bears the burden of demonstrating that they do not." *Jamison*, 649 F.3d at 327.  Each relator also bears the burden of establishing that he or she is an "original source" of the public disclosures.  *United States ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 435 (5th Cir. 2014).[14]  The Complaint here is subject to dismissal under this

---

[13] *Schweizer* applied the pre-2010 version of the public disclosure bar, but "courts have found the 'change from 'based upon' to 'substantially the same' has no real impact, as courts considering the term 'based upon' interpreted it to mean 'substantially the same.'"  *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 135438, at *4 n.4 (E.D. Tex. Jan. 13, 2022) (Mazzant, J.) (alterations incorporated) (quoting *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 623 (N.D. Tex. 2018)).  *See also Stennett v. Premier Rehab., LLC*, 479 Fed. App'x 631, 634-35 (5th Cir. 2012) ("The claims alleged in a *qui tam* action are deemed 'based upon' the publicly disclosed allegations when both sets of allegations are substantially similar.").

[14] While the post-amendment public disclosure bar is no longer jurisdictional, *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017), "[t]he same burden-shifting framework applies for both [pre- and post-amendment] versions of the public disclosure bar." *Mendez v. Drs. Hosp. At Renaissance, Ltd.*, No. 4:11-CV-02565, 2022 WL 584268, at *4 (S.D. Tex. Feb. 25, 2022).

three-part public disclosure bar test.

A.    **The *Fisher* and CFPB Actions and Associated News Media Are Qualifying Public Disclosures**

The first part of the public disclosure bar test focuses on whether the Complaint allegations or transactions were disclosed "publicly" – through means specified in the FCA – prior to commencement of this *qui tam* action. *Solomon*, 878 F.3d at 144.  That test is easily satisfied here. The FCA identifies as qualifying public disclosures federal civil hearings in which the Government or its agent is a party and news media.  31 U.S.C. § 3730(e)(4)(A)(i) & (iii).  Here, the Complaint is based upon several prior public disclosures that meet this qualification, including: (1) the *Fisher* Action complaint,[15] (2) the CFPB Action complaint, and (3) news media reports on allegedly fraudulent conduct by Ocwen.[16]

Starting with the *Fisher* Action and CFPB Action complaints, the "Fifth Circuit has held that '[a]ny information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A),' which 'includes civil complaints.'"  *United States ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 589 (S.D. Tex. 2015) (quoting *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995)); *see also United States ex rel. Gage v. Davis S.R. Aviation*, No. A–12–CA–904–SS, 2014 WL 3007201, at *4 (W.D. Tex. July 2, 2014) (finding allegations

---

[15] The original complaint in *Fisher* was filed on August 20, 2012, and subsequently amended four times.  Although earlier versions of the *Fisher* complaint may also qualify as public disclosures, Defendants' Motion here relies on the operative Fourth Amended Complaint (Dkt. 126) filed on April 17, 2015, several years prior to the initiation of the action now before this Court.

[16] While there were additional public disclosures of substantially the same allegations in various public government investigative reports – such as those by the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") to Congress – it is not necessary to examine those in the present Motion because dismissal is warranted based on the *Fisher* Action and CFPB Action complaints and associated news media.

of fraud were disclosed in prior action through the complaint and other motions filed by the parties).  The CFPB is a United States agency.  12 U.S.C. § 5491(a).  And "the *qui tam* relator is, in all cases, the government's agent under § 3730(e)(4)(A)(i)."  *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 845 (6th Cir. 2020) (examining cases).  Both the *Fisher* Action and CFPB Action complaints thus qualify as public disclosures because they were disclosed in hearings in which the Government or its agent is a party.

Moreover, the news media widely reported on the allegations against Ocwen in the *Fisher* Action, resulting in separate qualifying public disclosures under Section 3730(e)(4)(A)(iii).[17]  *See Mendez*, 2022 WL 584268, at *5 ("The news articles, all pre-dating the relators' lawsuit, qualify as 'news media' under both the pre-ACA and post-ACA provisions." (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011))).

### B.       The Complaint Contains Substantially the Same Allegations as the Publicly Disclosed *Fisher* and CFPB Actions and Associated News Media

The Complaint allegations are substantially the same as what was publicly disclosed in the *Fisher* and CFPB Actions and related news articles, as the second part of the public disclosure bar test requires.  *Solomon*, 878 F.3d at 144.  While FCA allegations need not be identical to the public allegations or transactions, *Gage*, 2014 WL 3007201, at *3, here, the Complaint allegations are not merely substantially similar to the *Fisher* Action, they are in all material respects identical.  As demonstrated in the Background, *supra*, and the Exhibit N Comparison Chart, both *qui tam*

---

[17] *See, e.g.*, Ex. P (Jess Krochtengel, *Ocwen To Pay $30M To End Whistleblowers' False Claims Suits*, Law360 (June 22, 2016), *available at* https://www.law360.com/articles/809436/ocwen-to-pay-30m-to-end-whistleblowers-false-claims-suits); Ex. Q (Zacks Equity Research, *Ocwen (OCN) to Pay $30M to Settle HAMP Disclosure Issues*, Yahoo! News (June 27, 2016), *available at* https://www.yahoo.com/news/ocwen-ocn-pay-30m-settle-132201311.html); Ex. R (Austen Hufford, *Ocwen to Pay $30 Million to Resolve Disclosure Suits*, Wall St. J. (June 23, 2016), *available at* https://www.wsj.com/articles/ocwen-to-pay-30-million-to-resolve-disclosure-suits-1466698936?mod=wsjde_finanzen_wsj_barron_tickers).

lawsuits involve the same alleged FCA violations by Ocwen premised on the same alleged false statements and certifications with respect to HAMP modifications and FHA/VA loan servicing. Indeed, with minor exceptions, the Complaint appears to be copied verbatim from the *Loyd* Action complaint, which was itself a near exact copy of the *Fisher* Action complaint.[18]

The only real difference between the *Fisher* Action and the current Complaint is the addition of a vicarious liability assertion against the Trusts.  But the public disclosure bar applies when "a *qui tam* action is 'even partly based upon public allegations or transactions.'"  *Schweizer*, 9 F.4th at 275 (quoting *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008)).  Moreover, asserting vicarious liability against new defendants (the Trusts) arising from the same alleged Ocwen conduct is immaterial for public disclosure bar purposes.  *Cf. Jamison*, 649 F.3d at 329 ("[T]he public disclosures need not name particular defendants so long as they alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." (quotations omitted)).

The news media reporting on the *Fisher* Action allegations also meets the "substantially the same" test for precisely the same reasons as the *Fisher* Action complaint itself does.  Indeed, the words from those articles could have been used to describe this case:  "The whistleblowers had claimed that Ocwen had lied about its compliance with federal guidelines as part of the HAMP program, … The whistleblowers claimed that homeowners lost their properties while Ocwen executives took in nearly $2 billion in incentive payments from the government."  Ex. P at 1.  "The

---

[18] While the Fifth Circuit employs the *Springfield* test to evaluate whether allegations are "based upon" public disclosures, *Solomon*, 878 F.3d at 144 ("the combination of X and Y must be revealed, from which the readers or listeners may infer Z" (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994))), because the allegations in the Complaint and the *Fisher* Action complaint are so nearly identical, it is not necessary to apply the *Springfield* test in detail as the same X, Y, and Z are apparent in both complaints and do not even require the allowable Z inference.

lawsuits claimed that Ocwen violated the False Claims Act by wrongly declaring its compliance with laws and regulations in connection with its participation in the HAMP and FHA insurance programs."  Ex. Q at 1.

In addition to these public disclosures, which clearly disclose the alleged fraud at issue here, the CFPB Action complaint also revealed Ocwen's purported loan servicing and modification misconduct, alleging that:

> [T]he Ocwen companies violated the Consumer Financial Protection Act ("CFPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA") and Regulation X, the Truth in Lending Act ("TILA") and Regulation Z, and the Homeowners Protection Act of 1998 ("HPA").  The Bureau alleges that since January 2014 Ocwen used inaccurate and incomplete information to service residential mortgage loans; inputted inaccurate and incomplete loan account information into its system of record; made material misrepresentations to borrowers regarding loan account information and monthly amounts due; mishandled borrowers' loss mitigation applications, initiated premature foreclosures and other foreclosure-related misconduct; failed to provide accurate periodic statements to borrowers; engaged in improper escrow-related practices; and failed to terminate automatically private mortgage insurance (PMI) on scheduled termination dates.

*Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-CV-80495, 2021 WL 1348555, at *1 (S.D. Fla. Mar. 4, 2021), *vacated and remanded*, 30 F.4th 1079 (11th Cir. 2022).  Substantially the same versions of many of these allegations appear in the Complaint.  *See, e.g.*, Compl. ¶¶ 140–44 (violations of RESPA); ¶¶ 17, 48, 52 (violations of TILA and Regulation Z); ¶¶ 88, 97, 118, 127, 135, 156, 168, 175–81 (using inaccurate, incomplete, or contradictory information to service loans, communicate with borrowers, and process modification applications); ¶¶ 97, 100, 103–05, 165, 173 (failure to suspend foreclosures and foreclosure without consideration of other options); ¶¶ 110–12, 171 (improper force-placed escrow and failure to pay premiums from escrow accounts).  It makes no difference that the CFPB pursued these allegations of Ocwen wrongdoing under the Consumer Financial Protection Act instead of the FCA because "[t]he public disclosures

need not expressly allege fraud.  The question is whether the relator *could have* synthesized an inference of fraud from the public disclosures." *Solomon*, 878 F.3d at 145 (emphasis in original).

Nor is the "substantially the same" analysis affected by any argument that the Complaint purports to allege continuing conduct beyond the time period covered by the publicly disclosed prior actions.  Both the *Fisher* Action complaint and the CFPB Action complaint already alleged that the conduct by Ocwen was "continuing," *see, e.g.*, Fisher Dkt. 126 at 5 & ¶¶ 2, 40, 42; CFPB Dkt. 1 ¶¶ 227, 232, 236, 271, 276, 285 ("since January 2014"),[19] and simply "contributing more of the same does not change the public character of a relator's allegations[.]"  *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 374 (5th Cir. 2017) ("[Relator] 'cannot avoid the [public disclosure] bar simply by adding other claims that are substantively identical to those previously disclosed.'" (quoting *Fed. Recovery Servs., Inc.*, 72 F.3d at 451)).  In *Schweizer*, the Fifth Circuit affirmed dismissal in a strikingly similar situation where a relator attempted to avoid the public disclosure bar by asserting that a different entity – a corporate successor – perpetuated the same fraud already previously disclosed and settled but continuing over a later time period (and through additional contracts).  9 F.4th at 276.  Here, Relators do not even allege wrongdoing by a different entity – still only Ocwen conduct is alleged.  Nor do Relators allege any additional contracts or programs – still only the same HAMP SPAs and annual certifications and the HAMP, FHA, and VA programs are allegedly involved.  The close identity between the Complaint and the allegations and transactions publicly disclosed in the *Fisher* Action and CFPB Action leaves no doubt that these public disclosures bar the present action unless Relators are original sources.

---

[19] *See also Ocwen Fin. Corp.*, 2021 WL 1348555, at *14 ("[CFPB] has since maintained that the relevant time period for its current claims is 'January 1, 2014 to the present [at the time being 2021].'").

### C.    <u>Neither Relator Loyd Nor Relator Eichner Is an Original Source</u>

The last public disclosure bar prong tests whether a relator qualifies as an "original source" and thereby falls within the exception to mandatory dismissal under § 3730(e)(4)(A).  The FCA defines "original source" as "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B) (2010).  The burden rests with each Relator to establish original source status,[20] and both fail to make the requisite showing here.  *See Lockey*, 576 F. App'x at 435.

### 1.    <u>Neither Relator Voluntarily Disclosed Information Prior to a Public Disclosure</u>

Here, to qualify as an original source under the first prong of the definition, each Relator would have to establish that, ***before*** the public disclosures were made, he voluntarily disclosed to the Government the information that forms the basis of the Complaint.  *See* 31 U.S.C. § 3730(e)(4)(B)(i).  From the face of the Complaint, neither Relator can carry that burden.

***Relator Loyd's Disclosure***.  The Complaint states that "Relators have provided the Attorney General of the United States and the United States Attorney for the Eastern District of Texas a disclosure statement of material evidence and information related to and supporting the allegations in this Complaint before the filing of the Complaint."  Compl. ¶ 217.  The "Certificate

---

[20] *See, e.g.*, *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 475–76 (5th Cir. 2015) (separately examining the original source status of each co-relator); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 51 n.14 (D.D.C. 2007) ("[I]t also appears that [each] relator must establish that she herself was an original source as to the new allegations in the Amended Complaint, regardless of whether either or both of her original co-relators would qualify as such.").

of Service and Disclosure" appended to the Complaint reveals that Loyd made his earliest disclosure on June 14, 2016. *Id.* at 130. This disclosure was more than two years after the *Fisher* Action was unsealed (on April 7, 2014) and more than a year after the Fourth Amended Complaint was publicly filed in the *Fisher* Action (on April 17, 2015). *See* Fisher Dkts. 19, 126.

*Relator Eichner's Disclosure*. Eichner cannot meet the first prong of original source qualification for similar reasons. According to the "Certificate of Service and Disclosure" appended to the Complaint, Eichner made his earliest disclosure even later than Loyd – on February 1, 2019. Compl. at 130. This disclosure came years ***after*** not only the filings in the *Fisher* Action but also after the filing of the CFPB Action complaint (on April 20, 2017) and the extensive news media disclosures of the *Fisher* Action (in June 2016). *See* CFPB Dkt. 1; Exs. P, Q, R.

### 2.    Neither Relator Has Independent Knowledge That Materially Adds to the Publicly Disclosed Allegations

Nor can either Relator establish that he is an original source under the second prong of the definition because neither has knowledge that is "independent of and materially adds to the publicly disclosed allegations." 31 U.S.C. § 3730(e)(4)(B)(2). Putting aside for now any consideration of whether either Relator has "independent" knowledge,[21] it is clear that neither Relator has knowledge that "materially adds" to the allegations publicly disclosed in the *Fisher* Action and the CFPB Action.

*Relator Loyd's Allegations*. To "materially add" to the public disclosures, Loyd would need to "significantly contribute[] information that would affect a person's decision-making."

---

[21] *See Colquitt*, 858 F.3d at 374 ("If someone relies upon the public disclosures at issue, then his or her knowledge is not independent."); *Reagan*, 384 F.3d at 178–79 (finding employee-relator was not an original source when her position caused her to become suspicious and investigate but knowledge was not "independent" because it "derived almost exclusively from information that has been publicly disclosed").

*Mitchell*, 2022 WL 135438, at *7.  But Loyd does not contribute anything.  In particular, while Section VIII of the Complaint is titled "Loyd's Directly and Independently Acquired Knowledge of Ocwen's Violations," Compl. ¶¶ 55–152, it is a near-exact duplicate of Sections VII, VIII, IX, XI.A(5)–(8), and XIII of the *Fisher* Action complaint.  *Compare with* Fisher Dkt. 126 ¶¶ 39–130, 166–70, 188–89.  *See* Ex. O (the "Exhibit O TOC Comparison").  This is amply illustrated by the following examples from the Complaint – of which there are many more – where Loyd simply inserts his name in the place of *Fisher* relator Bullock and otherwise copies the allegations that were publicly disclosed long before Loyd filed this Complaint:

| Examples of Publicly Disclosed Allegations | Loyd's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| "Relator Bullock directly witnessed evidence of several loan modifications with all the documents necessary to complete a full HAMP review; however, OLS failed to do so and borrowers were denied a modification due to alleged 'missing' documents. Borrowers, who might otherwise have qualified, were wrongfully denied a modification without first receiving a full and fair review, as required, of their modification package." Fisher Dkt. 126 ¶ 77. | "For instance, MBL directly witnessed evidence of several loan modifications with all the documents necessary to complete a full HAMP review; however, OLS failed to fully review the files and borrowers were denied modifications due to alleged "missing" documents—which were not missing at all. Thus, borrowers who might have qualified were wrongfully denied modifications without, first, receiving full and fair review of their modification packages." Compl. ¶ 94. |
| "Further, Relator Bullock observed that some borrowers had equity in their property at the time the borrowers lost their home to wrongful foreclosure.  It was more beneficial to OLS to foreclose on a home in which the borrower had equity than to foreclose on a home in the more typical situation, where the borrower was 'underwater,' owing more on the home than the home was worth, i.e., having 'negative equity.'" Fisher Dkt. 126 ¶ 83. | "Further, MBL observed that some borrowers had equity in their property when they lost their home to wrongful foreclosure.  It was more beneficial to OLS to foreclose on a home in which the borrower had equity than to foreclose where the borrower was 'underwater,' owing more on the home than the home was worth, *i.e.*, having 'negative equity.'" Compl. ¶ 100. |
| "Additionally, Relator Bullock directly witnessed evidence showing OLS employees often manipulated the loan modification process in order to achieve 'completion codes' and receive employee incentives from the servicer, at great detriment to borrowers. | "Additionally, MBL directly witnessed evidence showing OLS employees often manipulated the loan modification process in order to achieve 'completion codes' and receive employee incentives from the servicer, at great detriment to borrowers.   OLS's operating |

| Examples of Publicly Disclosed Allegations | Loyd's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| OLS's operating procedure was to reward employees in the home retention department based upon the number of 'completion codes' achieved, a system known as the HRD Incentive Plan. This system incentivized employees to work backwards in the modification process, in order to achieve completion codes that were not collected, so to speak, earlier in the process. This unfairly delayed the modification process for delinquent borrowers, …." Fisher Dkt. 126 ¶ 101. | procedure was to reward employees in the home retention department based upon the number of 'completion codes' achieved, a system known as the HRD Incentive Plan. This system incentivized employees to work backwards in the modification process, in order to achieve completion codes. This unfairly delayed the modification process for borrowers …." Compl. ¶ 115. |
| "In fact, while employed at OLS, Relator Brian Bullock observed on numerous occasions that he and other employees were able to access documents in the servicer's imaging system for which the borrower's modification had been denied, because they were supposedly 'missing.'  This was obviously an unfair, deceptive and pre-textual excuse for denial of the borrower's modification application …." Fisher Dkt. 126 ¶ 111. | "In fact, while employed at OLS, MBL observed on numerous occasions that he and other employees were able to access supposedly 'missing' documents, whose purported absence had caused the borrower's modification application to be denied, in the servicer's imaging system.  This was obviously an unfair, fraudulent and deceptive pretext for denial of the borrower's modification application, …." Compl. ¶ 126. |
| "Relator Bullock directly observed that approximately 95% of the loan modification process at OLS, including underwriting and the determination of specific borrower terms, was handled offshore by third-party contractors. While the general review and underwriting of conventional loans offshore is not prohibited, it is undoubtedly a violation of federal and state UDAP laws for the review and modification to be completed improperly, resulting in not only confusion but increased delinquency for borrowers." Fisher Dkt. 126 ¶ 116. | "Both Relators J-ME and MBL were aware that approximately 95% of the loan modification process at OLS, including underwriting and the determination of borrower-specific terms, was in many cases unlawfully handled offshore by third-party contractors.  While the general review and underwriting of conventional loans offshore is not prohibited, it is undoubtedly a violation of federal and state UDAP laws for the review and modification to be completed improperly, resulting in not only confusion but increased delinquencies for borrowers and numerous erroneous denials of modifications." Compl. ¶ 131. |
| "As an OLS employee, Relator Bullock regularly and directly saw instances of offshore underwriters inputting the wrong numbers in the system.  For instance, trial plan payments were sometimes set up slightly higher in the servicer's computer system than what the proposed modification agreement actually reflected.  This resulted in borrowers remitting | "As an OLS employee, MBL regularly and directly saw documents reflecting that offshore underwriters had input the wrong numbers in the system.  For instance, trial plan payments were sometimes set up slightly higher in the servicer's computer system than what the proposed modification agreement reflected.  This resulted in borrowers remitting payment |

| Examples of Publicly Disclosed Allegations | Loyd's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| a payment amount that did not match that contained in OLS's internal system, and many times caused a payment shortage to be reflected on the borrower's account.  In order to address and correct this type of error, a customer service representative would have to reach out to the individual underwriter overseas; however, these third party contractors are often unresponsive and a communication made to correct an error such as this may go unreturned for several weeks."  Fisher Dkt. 126 ¶ 117. | amounts that did not match OLS's system, and many times caused a payment shortage to be reflected on the borrower's account.  In order to address this type of error, a customer service representative would have to contact the underwriter overseas; however, these third-party contractors are often unresponsive, possibly due to the large time zone differences, and communications go unreturned for as much as several weeks."  Compl. ¶ 132. |

The remainder of Loyd's allegations are similarly copied from the prior *Fisher* Action complaint, *see* Exhibit N Comparison Chart, making clear that he does not have any knowledge that "materially adds" to the allegations that have been disclosed publicly.  *See Mitchell*, 2022 WL 135438, at *9 (determining whether relator materially added to public disclosures by comparing relator's allegations with the information available in the public disclosures).  As such, Loyd does not qualify as an original source.

**Relator Eichner's Allegations**.  For his part, Eichner does not "materially add" to the publicly disclosed allegations of fraud because he only alleges more of the same misconduct already disclosed in both the *Fisher* Action and CFPB Action.  *See* Compl. ¶¶ 153–81.  In particular, Eichner's cursory allegations of supposed first-hand observation do not add anything "significant[]" or "that would affect a person's decision-making," *Mitchell*, 2022 WL 135438, at *7, as demonstrated in the following comparison:

| Examples of Publicly Disclosed Allegations | Eichner's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| Ocwen violated RESPA by "[n]ot responding timely to borrower inquiries."  Fisher Dkt. 126 ¶ 129 (referring back to ¶ 88); *see also id.* ¶ 124 (quoting RESPA requirement that servicer may | Ocwen failed to comply with RESPA requirements for timely responding to borrower |

| Examples of Publicly Disclosed Allegations | Eichner's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| not "fail to take timely action to respond to a borrower's requests to correct errors"). <br><br> Ocwen failed to "adequately investigate and respond to borrower complaints" or "when appropriate, make corrections in response to borrower complaints[.]" CFPB Dkt. 1 ¶¶ 163–64. <br><br> Ocwen received numerous borrower complaints about servicing issues that it did not timely or appropriately address.  CFPB Dkt. 1 ¶¶ 96, 123, 141, 155, 163, 210. | complaints, 12 CFR § 1024.35,[22] and otherwise failed to adequately address such complaints. Compl. ¶¶ 155–59, 162, 169. |
| Ocwen "relied upon inaccurate data in REALServicing" in investigating consumer complaints. CFPB Dkt. 1 ¶ 173. | Despite direction from CFPB and state regulators that Ocwen "institute a system" other than "Real Servicing" capable of "follow[ing] complaints in time," Ocwen did not "migrate its complaint correspondence to the new platform and use the iCasework Complaint Management Database[.]" Compl. ¶¶ 155–56, 161, 163. |
| Ocwen failed "to suspend foreclosure proceedings when a delinquent borrower's modification package was under review." Fisher Dkt. 126 ¶ 89. <br><br> Ocwen "failed to accurately maintain foreclosure-related information necessary to ensure that it provides borrowers with required foreclosure protections" including where a borrower complaint had been made.  CFPB Dkt. 1 ¶ 173. | Ocwen wrongfully foreclosed as a result of its failure to implement foreclosure holds during modification processing or upon notice of a borrower complaint. Compl. ¶¶ 160, 180. |
| Ocwen "[f]ail[ed] to evaluate delinquent loans for all loss mitigation options within 30 days." Fisher Dkt. 126 ¶ 87(b). | 44 loans in California went to foreclosure without being considered for an alternative solution, such as a deed-in-lieu of foreclosure. Compl. ¶ 165. |
| "It was more beneficial to [Ocwen] to foreclose on a home" in certain situations.  Fisher Dkt. 126 ¶ 83. | Ocwen had a financial and regulatory rating motive to foreclose rather than work out loans in certain situations.  Compl. ¶ 166. |

---

[22] Although the Complaint does not directly cite 12 C.F.R. § 1024.35, the requirements it relies on, such as "acknowledging the receipt of the complaint on the fifth day after receipt" and the "30-day complaint resolution requirement," Compl. ¶¶ 155, 157, are found in that regulation.  *See* 12 C.F.R. § 1024.35(d), (e)(3)(i)(C).

| Examples of Publicly Disclosed Allegations | Eichner's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| Ocwen "[p]rovid[ed] false/misleading information to borrowers" and did "[n]ot respond[] timely to borrower inquiries." Fisher Dkt. 126 ¶ 87(h) & (j).<br><br>"Ocwen has serviced loans and collected upon debts based on inaccurate and incomplete borrower loan information" and used "inaccurate and incomplete information to … communicate with borrowers." CFPB Dkt. 1 ¶¶ 33–34.<br><br>"Ocwen's use of inaccurate and incomplete information … resulted in Ocwen communicating, orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate." CFPB Dkt. 1 ¶ 69. | Ocwen sent borrowers confusing and contradictory correspondence. Compl. ¶ 168. |
| Ocwen added "undefined and undisclosed fees and costs" and "wrongfully charged unauthorized charges and fees" to borrowers. Fisher Dkt. 126 ¶¶ 31, 90.<br><br>Ocwen failed to "timely and appropriately credit payments" made by borrowers and made numerous fee errors. CFPB Dkt. 1 ¶¶ 96, 162, 228, 258–62. | Ocwen failed to return money owed to borrowers and overcharged fees to borrowers. Compl. ¶¶ 167, 170. |
| Ocwen wrongfully capitalized late fees. Fisher Dkt. 126 ¶¶ 92–94. | Ocwen wrongfully capitalized late fees. Compl. ¶ 170. |
| Ocwen engaged in unfair and abusive escrow account practices. Fisher Dkt. 126 ¶ 97.<br><br>Ocwen improperly handled borrower escrow accounts, including by "fail[ing] to properly disburse borrowers' payments to their hazard insurance companies." CFPB Dkt. 1 ¶¶ 125, 133. | Ocwen improperly handled borrower escrow accounts. Compl. ¶ 171. |
| Ocwen "fail[ed] to properly staff" and used a deficient continuity-of-contact "appointment system." Fisher Dkt. 126 ¶¶ 78, 87(a), 106–110. | Ocwen intentionally understaffed, leading to unnecessary foreclosures due to wait times and borrowers unable to communicate with Ocwen. Compl. ¶¶ 172–73. |
| Ocwen wrongfully denied modifications where applications were reviewed under the wrong criteria. Fisher Dkt. 126 ¶ 46. | Ocwen wrongfully denied modifications based on incorrect loan characteristics. Compl. ¶ 175. |

| Examples of Publicly Disclosed Allegations | Eichner's "Knowledge of Ocwen Violations" Allegations |
|---|---|
| Ocwen misled borrowers by offering and approving HAMP packages where modification was not allowed.  Fisher Dkt. 126 ¶ 113. | Ocwen incorrectly offered modifications not allowed. Compl. ¶ 176. |
| Ocwen "failed to provide the borrowers with the current principal balance of their loans" and failed to disclose details of principal calculations to allow borrowers to determine their accuracy.  Fisher Dkt. 126 ¶¶ 57(2), 92.<br><br>Ocwen sent borrowers agreements "that contained incorrect interest rate, principal payment, maturity date, and balloon payment information" and serviced borrowers' loans, and communicated "orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate."  CFPB Dkt. 1 ¶¶ 63, 69. | Ocwen issued borrower letters containing incorrect unpaid principal balances.   Compl. ¶ 177. |
| Ocwen gave borrowers misleading statements of trial payment plan amounts and modified trial payment amounts to the detriment of borrowers.  Fisher Dkt. 126 ¶¶ 79, 120. | Ocwen defectively calculated trial payment amounts. Compl. ¶ 178. |
| Ocwen employees erred in making income calculations to the detriment of HAMP borrowers.  Fisher Dkt. 126 ¶ 84. | Ocwen made incorrect calculations of borrower self-employment income and understated borrower income.  Compl. ¶ 179 |
| Ocwen improperly added amounts to unpaid principal balances, resulting in higher modified balances.  Fisher Dkt. 126 ¶¶ 31–32. | Ocwen failed to process principal forgiveness on HAMP modifications.  Compl. ¶ 181. |

Even if there may be some minor differences between these twenty-nine paragraphs added by Eichner and the *Fisher* Action and CFPB Action complaints, the differences are immaterial – such as describing one of the mischarged fees as a "payoff quote fee" rather than more generically referring to mischarged fees – and all go to the same alleged fraud of improper Ocwen HAMP modification and servicing conduct.  "[A] relator who merely adds background information or details about a known fraudulent scheme will be found not to have materially added to the publicly

disclosed information." *Mitchell*, 2022 WL 135438, at *8 (quoting *United States ex rel. Reed v. Keypoint Gov't. Sols.*, 923 F.3d 729, 756 (10th Cir. 2019)).

Indeed, for all of these "Eichner" paragraphs, there are no additional or different false certifications or false statements material to a claim for payment alleged; instead Relators assert that all of this is just part of the same "unlawful servicing conduct" alleged throughout the Complaint, Compl. ¶ 214.   Thus, none of these observations amounts to "some additional compelling fact" or "demonstrate[s] a new and undisclosed relationship between the disclosed facts." *Lockey*, 576 F. App'x at 437 (quoting *Reagan*, 384 F.3d at 179); *see also United States ex rel. Bogina v. Medline Industries, Inc.*, 809 F.3d 365, 369–70 (7th Cir. 2016) (finding that in settling a prior *qui tam* case the Government was already on notice that defendant may have engaged in a broader kickback scheme without relator's additional kickback allegation, which did not materially add to the fraud already disclosed by adding a new defendant, identifying additional government programs, and alleging continuing fraud); *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431–33 (6th Cir. 2016) (finding that relator's examples of defendant's failure to mitigate loss in three foreclosures did not "materially add" to the thousands of foreclosures covered by a consent decree that were flawed for the same reason); *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016) (finding allegations of fraud relating to a broader time period than that previously disclosed did not materially add to prior public disclosures and relator was not an original source).

*Trust Allegations*.  While the Complaint adds the Trusts as defendants and cites vicarious liability case law, these additions do not transform either of the Relators into original sources as they do not add anything material to the "known fraudulent scheme." *Mitchell*, 2022 WL 135438, at *8.  First, the existence of the Trusts as investors in the loans serviced by Ocwen already was

publicly disclosed in the *Fisher* Action, and many of those same allegations were simply copied over into the Complaint, as illustrated in the Background, *supra*.  Indeed, the damages asserted in the *Fisher* Action were for the total amount of "Government incentive payments for the benefit of OLS, its investor/owners, and its borrowers."  Fisher Dkt. 126 ¶ 38;[23] *see also id.* at 5 (alleging that Ocwen "wrongfully procured for themselves and the owner/investors of mortgages serviced by OLS nearly two billion dollars in incentive payments from the Government").

Second, there is nothing material about adding the Trusts to the caption as defendants in the absence of any allegations of fraudulent conduct or scienter by those Trusts.  In fact, the Complaint merely purports to impute the publicly disclosed allegations of Ocwen's fraudulent conduct and scienter to the Trusts.  *Contrast with Mitchell*, 2022 WL 135438, at *8 (finding relator's knowledge materially added to publicly disclosed allegations because he "provides specific details of OWB's fraud and scienter").[24]  "Nothing in the law gives [a relator] the right to perpetually pursue the same cause of action *ad infinitum* without obtaining new knowledge that is

---

[23] *See* Fisher Dkt. 126 ¶ 36 ("Through March 2015, the United States has paid a total of $1,776,578,992.03 in incentives for OLS HAMP modifications, which includes $365,772,381.39 for the servicer, OLS.  The balance of the funds was paid for the benefit of the relevant borrowers and investors.  Therefore, the approximate amount of the Government's FCA damages (before applying the trebling requirement) incurred through March 2015 is $1,776,578,992.03.").

[24] While not necessary to reach in the absence of any material addition, Relators also are not independent sources about any information regarding the Trusts.  Neither Relator was employed by any Trustee – both worked for Ocwen, *see* Compl. ¶¶ 19, 21 – and neither has pointed to any other source beyond the publicly disclosed allegations for information about the Trusts.  *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475 (2007) (holding that relator lacked independent knowledge of allegations of fraud that occurred when he was "no longer employed"); *Hendrickson*, 343 F. Supp. 3d at 630 (finding relator lacked independent knowledge about agencies where he did not work), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).  Indeed, the *Fisher* Action complaint already disclosed the existence of "investor owners of the loans," *see, e.g.*, Fisher Dkt. 126 ¶ 13, and both the *Fisher* Action complaint and the Complaint cite to a publicly available federal report for the amount of incentive fees paid to Ocwen (whether for itself or for distribution to borrowers and investors).  *See* Fisher Dkt. 126 ¶ 36; Compl. ¶ 53 (both citing *TARP Housing Transactions Report*, http://www.treasury.gov/initiatives/financial-stability/reports/Pages/TARP-Housing-Transaction-Reports.aspx).

independent of and materially adds to the publicly disclosed allegations or transactions.  To rule otherwise would be inconsistent with the public disclosure bar's purpose ...."  *United States ex rel. Schweizer v. Canon Inc.*, No. 4:16-CV-00582, 2019 WL 5061097, at *4 (S.D. Tex. Oct. 9, 2019) (internal quotation & citation omitted), *aff'd*, 9 F.4th 269 (5th Cir. 2021).  Because neither Relator qualifies as an original source, the Complaint "shall" be dismissed pursuant to the public disclosure bar.  31 U.S.C. § 3730(e)(4).

### III.    THE FCA'S FIRST-TO-FILE RULE REQUIRES DISMISSAL OF RELATOR EICHNER'S CLAIMS

As demonstrated above, Loyd is not an original source and thus cannot proceed with this action as a relator.  To the extent that any of the claims survive dismissal based on Eichner's knowledge – which, as explained above, they should not – Eichner's claims fall prey to the FCA's first-to-file rule:

> When a person brings an action under [the FCA's *qui tam* provisions], no person other than the government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).

The Complaint was filed on July 15, 2019, while the *Loyd* Action still was pending.  The Government did not consent to dismissal until July 25, 2019, and the Court did not order the action dismissed until October 1, 2019.  *See* Loyd Dkts. 20, 21, 22.  "[A]s long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies."  *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009).  As demonstrated in the Background, *supra*, and the Exhibit N Comparison Chart, the Complaint appears to have been copied verbatim, with minor exceptions, from the *Loyd* Action complaint.  Both involve the same alleged FCA violations by Ocwen

premised on the same alleged false statements and certifications with respect to HAMP modifications and FHA/VA loan servicing.

Eichner cannot benefit from the Fifth Circuit's first-to-file bar exception for circumstances "when the same plaintiff makes the same claim in a different jurisdiction," *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 721 (5th Cir. 2010), or this Court's exception for when "a second relator voluntarily [is] added to an existing complaint in the later-filed suit," *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 812364, at *6 (E.D. Tex. Mar. 16, 2022). Indeed, neither of those exceptions applies as there is no "different jurisdiction" involved here – both the *Loyd* Action and this action were filed in the Eastern District of Texas – and Eichner was not voluntarily added to any existing complaint but instead filed the original and only Complaint here.  To allow Eichner "to bring" this action while the *Loyd* Action was pending simply because he associated himself with an invalid relator (Loyd, who is not an original source) would circumvent the first-to-file rule's goal of "seek[ing] to discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud."  *Branch Consultants*, 560 F.3d at 376.

## IV.   THE FCA'S "GOVERNMENT ACTION" BAR REQUIRES DISMISSAL OF RELATORS' CLAIMS

In addition to res judicata, the public disclosure bar, and the first-to-file bar, the Complaint also is precluded by the FCA's government action bar, which provides:

> In no event may a person bring [a *qui tam* action] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

31 U.S.C. § 3730(e)(3).  The government action bar discourages parasitic lawsuits that rely on allegations already known to the Government and thereby provide no "useful or proper return" to the Government.  *See Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E,*

*LLC*, 259 F. Supp. 2d 329, 339 (D.N.J. 2003) ("[P]laintiff's suit seeks to remedy fraud that the government has already investigated within its full regulatory authority, culminating in a resolution acceptable to the DOL, based on the same set of underlying facts."); *United States ex rel. Stone v. AmWest Sav. Ass'n*, 999 F. Supp. 852, 855 (N.D. Tex. 1997) ("If the *qui tam* action receives support from the earlier case without giving the government any useful return (other than the potential for monetary recovery), the basis and the subject of the lawsuits are the same." (citing *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320, 328 (1st Cir. 1994), *overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)).

The Complaint's allegations are "based upon" the allegations or transactions in the *Fisher* Action and the CFPB Action.  As demonstrated above with respect to both res judicata and the public disclosure bar – and as illustrated in the Background, *supra*, the Exhibit N Comparison Chart, and the Exhibit O TOC Comparison – this Complaint and the *Fisher* Action complaint are near duplicates of one another and allege FCA violations for the ***same*** alleged false statements and certifications and the ***same*** HAMP/FHA/VA-related servicing misconduct by Ocwen.  And as demonstrated above with respect to the public disclosure bar, the Complaint contains substantially similar allegations regarding Ocwen's alleged loan servicing misconduct – particularly with respect to RESPA, TILA, and Regulation Z violations, inaccurate communications with borrowers, and failure to correct errors after borrower complaints – as are alleged by the Government in the CFPB Action.  *See United States ex rel. Bennett v. Biotronik, Inc.*, No. 2:14-cv-2407, 2016 WL 1587215, at *6 (E.D. Cal. Apr. 20, 2016) (applying government action bar because the settlement of prior FCA case raised the same allegations as the case under review); *United States ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 876 (N.D. Ill. 2007) (applying government action

bar because "[b]oth cases involve the same Contract, the same contract negotiations, the same contract provisions, the same certifications, and the same general fraud scheme by Defendants").

The Government is a party to these separate cases.  With respect to the pending CFPB Action, CFPB – a government agency – is the plaintiff.  And with respect to the *Fisher* Action, the Government asserted control through participation in the settlement.  While the government action bar typically arises following *qui tam* actions in which the Government has formally intervened, the Government can "assert control over *qui tam* litigation through a number of procedural mechanisms, such as intervention, **settlement**, and the power to veto voluntary settlements." *Eli Lilly & Co.*, 4 F.4th at 262 (emphasis added) (internal quotation & citation omitted).  The Government's assertion of control via settlement is equivalent to intervention for purposes of government action regardless of whether a formal notice of intervention is filed.  *Cf. id.* at 269 n.2 (Higginbotham, J. concurring) (finding irrelevant the distinction between formal intervention and treating a government motion to dismiss as a motion to intervene when considering whether dismissal was proper).[25]  The Government actively participated in the settlement of the *Fisher*

---

[25] The Government itself has taken the position that it is a "party" for purposes of the government action bar when it participates in settlement even where it does not intervene in order to proceed with the action.  *See* Government's Statement of Interest at 3, *United States ex rel. Schweizer v. Canon USA, Inc.*, No. 4:16-cv-00582, ECF No. 37 ("It is true that the government was a party in *Océ* ...."). In *Océ*, which preceded *Canon*, the Government declined to intervene but then later participated in settlement.  When the relator objected to settlement, the Government moved for dismissal (filing a notice of intervention only "for the purpose of dismissal following execution of a settlement"), United States' Notice of Intervention at 1, *United States ex rel. Schweizer v. Océ, N.V.*, No. 1:06-cv-00648, ECF No. 64, and the D.C. Circuit determined – over the relator's objection – "that the government did not have to intervene [pursuant to § 3730(c)(3)] before filing its motion." *United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228, 1233 (D.C. Cir. 2012). In a recommendation that was not adopted because the claims already were subject to dismissal under the public disclosure bar, the magistrate judge accordingly recognized that "even though the Government only participated in the *Océ* action for purposes of reaching a settlement, it is considered to have been a party to the entire case" under the government action bar. *United States ex rel. Schweizer v. Canon, Inc.*, No. H-16-0582, 2019 WL 7593347, at *6 (S.D. Tex. Aug. 14,

Action in 2017, received payment thereunder, and formally consented to dismissal of the FCA claims **with prejudice**.[26]  In particular, while not labelling the document as a notice of intervention, the Government filed a formal consent to dismissal with prejudice as to the claims covered by the Settlement Agreement, referring to itself as "Plaintiff the United States of America" and collectively with relators as "the parties."  Fisher Dkt. 584, at 1, 3.[27]

Finally, it makes no difference for government action bar purposes that the *Fisher* Action was no longer pending when Relators initiated this action.  As the Ninth Circuit has made clear, the government action bar applies even if the case involving the Government is no longer pending because "for purposes of § 3730(e)(3) the Government 'is a party' to lawsuits which have concluded."  *Bennett*, 876 F.3d at 1019.  *See, e.g.*, *Found. For Fair Contracting, Ltd.*, 259 F. Supp. 2d at 338–39 (applying bar because Government was a party to an administrative penalty proceeding and had negotiated and settled all claims it had against two defendants prior to filing of FCA action).

Thus, the pending claims fall squarely within the government action bar, and the Complaint must be dismissed on this ground as well.

---

2019), *report and recommendation adopted in part, rejected in part*, No. 4:16-CV-00582, 2019 WL 5061097 (S.D. Tex. Oct. 9, 2019), *aff'd*, 9 F.4th 269 (5th Cir. 2021).

[26] *See* Fisher Dkt. 528 (Notice of Preliminary Settlement) ("The parties respectfully inform the Court that, **in coordination with the United States Department of Justice**, the parties have reached a preliminary settlement .... Counsel for the United States Department of Justice has agreed to seek final approval of the settlement in principle, and subject to obtaining that approval **the parties and the Department of Justice will negotiate** in good faith towards documenting and finalizing the settlement." (emphases added)); Fisher Dkt. 584 (United States' Consent to Dismissal).

[27] The *Fisher* Action settlement agreement also explicitly stated that "the United States plans to intervene in this action for purposes of settlement."  Ex. A at 2.  The United States' Consent to Dismissal document accomplished this because a § 3730(c)(3) intervention is not necessary in the Fifth Circuit in order for the Government to settle an FCA *qui tam* action.  *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753–54 (5th Cir. 2001).

## V.    ANY CLAIMS BEFORE JULY 15, 2013 ARE BARRED BY THE FCA STATUTE OF LIMITATIONS

Even if Relators could overcome these various hurdles, it is clear from the face of the Complaint that many of their FCA claims are barred by the statute of limitations and should be dismissed now.  *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (statute of limitations issues are appropriate for resolution on motion to dismiss); *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 777, 780, 784–86 (E.D. Tex. 2019) (Mazzant, J.) (adopting report and recommendation dismissing claims because they were barred by the applicable statute of limitations).

The FCA contains two limitations periods.  The first provides a claim is timely if it is brought within "6 years after the date on which the violation" is committed.  31 U.S.C. § 3731(b)(1).  The second – a discovery-based limitations period coupled with a statute of repose – provides a claim is timely if it is brought within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after" the violation.  *Id.* § 3731(b)(2).  Whichever of the two periods "provides the later date serves as the limitations period" for the FCA claim.  *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019).

Here, the alternative discovery-based limitations period is shorter than the six-year period because the Complaint leaves no doubt that "the official of the United States charged with responsibility to act"[28] knew the facts material to this action for much longer than three years.  The

---

[28] Although precisely which government officials trigger the running of this statute of limitations is not settled, under even the most restrictive reading, an official within the Civil Division of the Department of Justice qualifies as "the official of the United States charged with responsibility to

relevant United States officials were on actual notice of Ocwen's alleged HAMP-related fraud no later than August 20, 2012, when the *Fisher* Action originally was filed.  *See* Fisher Dkt. 1, at 34 (noting that the Attorney General and other U.S. attorneys were served with the complaint); *see also Frey*, 2021 WL 4502275, at *15 (three-year period begins to run once complaint containing relevant allegations is filed, as this notifies the Civil Division of the Department of Justice).  And the United States officials even learned about this specific action more than three years before Relators filed the Complaint on July 15, 2019.  In a "Certificate of Service and Disclosure" appended to the end of the Complaint, Loyd signs and certifies that he "served a Disclosure Statement and substantially all information he possessed on June 14, 2016 and Supplemental Disclosure Statement on February 23, 2017" to attorneys at the Civil Division of the Department of Justice and the local United States Attorney's Office.  Compl. at 130.

The FCA's six-year statute of limitations thus precludes Relators from pursuing any FCA violation that occurred more than six years before they filed the Complaint on July 15, 2019. Because the claim for payment is the FCA violation that triggers the statute of limitations, any Ocwen claims for payment submitted to the Government prior to July 15, 2013 are time barred and must be dismissed.[29]  *See United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 816 (E.D. Tex. 2008) (finding that the trigger for the limitations period is "the filing of a false claim"); *see also United States ex rel. Jackson v. Univ. of N. Texas*, 673 F. App'x 384, 387 (5th Cir. 2016) ("The statute of limitations begins to run on an FCA claim on the date upon

---

act."  *See generally United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-CV-0920-B, 2021 WL 4502275, at *15 (N.D. Tex. Oct. 1, 2021); *see also* 31 U.S.C. § 3730(a), (b) (giving the "Attorney General" the power to act on FCA claims).

[29] Since, as discussed further below, the Complaint fails to identify any loans or resulting claims for payment with particularity, it is unclear precisely how many claims are thus barred for this additional reason.

which the offender submits a false claim for payment ….”), *overruled in part on other grounds by*

*Cochise Consultancy, Inc.*, 139 S. Ct. at 1512–13.

## VI.   THE COMPLAINT DOES NOT PLEAD TRUST LIABILITY WITH THE PARTICULARITY REQUIRED BY RULE 9(B)

To the extent any part of the Complaint survives application of res judicata, the public

disclosure bar, the government action bar, the first-to-file bar, and the statute of limitations, the

Complaint still should be dismissed as to the Trusts because Relators fail to plead FCA liability as

to them with the plausibility and particularity required by Federal Rules of Civil Procedure 8(a)

and 9(b).  To survive a motion to dismiss, the “[f]actual allegations [in the complaint] must be

enough to raise a right to relief above the speculative level.”  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  And, “[a]s the False Claims Act is about fraud, claims asserted under it must

comply with Rule 9(b)’s heightened pleading standard. … This requires, at a minimum, that a

plaintiff plead the ‘who, what, when, where, and how’ of the alleged fraud.”  *Colquitt*, 858 F.3d at

371.

The Complaint here does not allege any direct conduct by the Trusts constituting FCA

violations.  Instead, the Complaint merely alleges that “the Trust Defendants/Principals (through

the Trustee Defendants) are **vicariously liable** for damages and relief due under the False Claims

Act to the United States and based upon Ocwen’s wrongful conduct while engaged as a servicing

agent for its Principals, respectively.”  Compl. ¶ 216 (emphasis in original).  But in making this

vicarious liability allegation against the Trusts,[30] the Complaint does not allege precisely “who” is

vicariously liable for Ocwen’s conduct or “when” – *i.e.*, which particular Trusts over which time

---

[30] The vicarious liability allegation is accepted as true only for purposes of this Motion to Dismiss and without waiving any defenses or admitting any facts.  The Trustee Defendants submit that the facts ultimately will show that the Trusts cannot be vicariously liable for Ocwen’s conduct at all, but the Trustee Defendants defer that discussion to a later stage of the case, if any.

periods.  Instead, the Complaint resorts to impermissible group pleading by lumping all of the Trusts together in general terms as "the Trusts."  *See United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008) (explaining that a relator must "identify[] specific actions of specific individuals at specific times" and finding complaint deficient where it failed to make allegations "beyond 'defendants'"); *United States ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-0803-S, 2019 WL 4450371, at *4 (N.D. Tex. Sept. 17, 2019) ("Does Relator not understand that he may not simply lump Defendants together?"); *United States ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-803-S, 2018 WL 5313884, at *6 (N.D. Tex. Oct. 26, 2018) ("It is impermissible to lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another." (quotation & citation omitted)).

Lumping is particularly inappropriate here because the Complaint itself makes clear that – even if vicarious liability were a legally viable theory in these circumstances – Ocwen's alleged misconduct cannot be imputed to some of the Trusts named in the Complaint at all and cannot be imputed to other Trusts for the entire time period.  For example, the Complaint acknowledges that some of the Trusts did not even participate in HAMP, meaning that there is no way these Trusts could be responsible for Ocwen's purported false statements on HAMP certifications or Ocwen's purported actions in misleading investors.  Compl. ¶ 128 ("OLS additionally failed to inform some borrowers that the investor (the Trust) on their loan did not participate in HAMP ….").  And Relators acknowledge that Ocwen did not even acquire the rights to service loans in many of the Trusts until 2011 or after.  *See* Compl. ¶¶ 6, 113, 189 ("Litton was purchased by Ocwen in 2011; Homeward was purchased by Ocwen in 2012"; "OFC acquired several portfolios of servicing rights from Litton, Saxon, and ResCap, to name a few, which OFC delegated to OLS"; "in 2011, Ocwen took over servicing rights" from Litton).  Those Trusts cannot be vicariously liable for

conduct that pre-dated their association with Ocwen, yet the Complaint broadly asserts vicarious liability dating back to Ocwen's supposed fraudulent inducement in signing the HAMP SPA on April 16, 2009.  Compl. ¶¶ 16, 38, 214.

Relators also nowhere specify which loans (and subsequent claims for payment) allegedly are at issue in the violations they allege.  The touchstone of Rule 9(b) is whether the allegations "give[] defendants adequate notice of the claims."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009).  The Trusts here have none, and – if the Complaint were permitted to survive on these imprecise allegations – Defendants would be subject to a massive "fishing expedition" across the 1,597 Trusts.  The purpose of Rule 9(b) is to guard against such an unjust eventuality.  *See, e.g.*, *United States v. Career Opportunities, Inc.*, 2016 WL 8674565, at *5 (N.D. Tex. Sept. 16, 2016) (granting motion to dismiss FCA claims due to plaintiff's failure to satisfy Rule 9(b) as complaint "fail[ed] to set out the particular workings of a scheme, and it [did] not have a reliable indicia that leads to a strong inference that fraudulent claims were actually submitted"); *Park*, 2018 WL 5313884, at *6 (finding that plaintiff's complaint failed to differentiate which defendants were involved in which alleged conduct and thus failed to "provide Defendants with fair notice of Relator's claims").  The Complaint thus is subject to dismissal with respect to all of the Trusts for its Rule 9(b) failures to segregate them with respect to any particular connection to the alleged Ocwen misconduct, particular time periods, and particular loans/claims for payment.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE BANK OF NEW YORK MELLON CORPORATION

In addition to improperly lumping Defendant The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc. ("BNYM Corp.") together with the other Defendants,

the Complaint fails to state a claim against BNYM Corp. at all because it is not plausibly alleged to be a trustee of any trust (much less the Trusts named as defendants here).

Relators collectively define three entities as the singular "BONY" – (1) BNYM Corp.; (2) The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association ("BNYM Trust"); and (3) The Bank of New York Mellon f/k/a The Bank of New York ("BNY Mellon") – calling all three "Successor-Trustees to J.P. Morgan Chase Bank, N.A., on behalf of 329 Residential Mortgage Backed Securities Trust Defendants." Compl. ¶ 1.  Throughout the Complaint, Relators continue with this lumping, which ignores that these are three separate entities.  *See, e.g.*, *id.* ¶ 30 ("At all relevant times, BONY was Successor-Trustee for, at a minimum, the pools of loans (Trusts) listed in Exhibit 9, for each of which Ocwen was its servicing agent.").  This is particularly problematic with respect to BNYM Corp. because other Complaint allegations reveal that Relators have alleged no claim against BNYM Corp.

The Complaint's only allegations against "the Trust Defendants, through the Trustee Defendants" are premised on vicarious liability for Ocwen's alleged conduct, Compl. ¶ 188, and the Complaint makes clear that "[t]he Trustee Defendants are sued in their capacities *as Trustees* (and legal owners of the Trust Assets) and on behalf of the Trusts," *id.* ¶ 1 (emphasis in original). Thus, to the extent that a defendant is not plausibly alleged to be a trustee, the Complaint states no claim with respect to it.

The Complaint acknowledges that "[t]he Bank of New York Mellon Corporation is a Bank Holding Company subject to federal capital rules, administered by the Federal Reserve."  Compl. ¶ 30.  In other words, Relators admit that BONY Corp. is a Bank Holding Company, but do not allege that it is a bank or a trust company (it is not).  State laws generally do not allow corporations (as opposed to natural persons) that are not banks, trust companies, and certain similar entities to

engage in trust business.  *See, e.g.*, N.Y. Banking Law § 131 (entitled "Prohibitions against Encroachments upon Certain Powers of Banks and Trust Companies").  An October 5, 2006 8-K filed by BNYM Corp. (which is Exhibit 6 to the Complaint) further specifies that "JPMorgan sold its corporate trust business **to the Bank**," earlier defined as The Bank of New York (now BNY Mellon), a **subsidiary** of The Bank of New York Company, Inc. (now BNYM Corp.).  Compl. Ex. 6, at Item 8.01 (emphasis added).[31]  The Complaint itself later acknowledges this, alleging that "Bank of New York" – not BNYM Corp. – "is Trustee."  Compl. at 6 n.8.  Thus, Relators' allegations that refer to the collective "BONY" group as a trustee are not plausible with respect to BNYM Corp. since they are contradicted by these other complaint exhibits and assertions that are specific to the individual "BONY" entities.  *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (Where "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."); *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 872 n.8 (S.D. Tex. 2020) ("[A] court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (internal quotations & citation omitted)).  Accordingly, the

---

[31] "[T]he presumption that related corporations are separate entities persists unless it is overcome by clear evidence that the former asserts sufficient control to make the latter its agent or alter ego." *United States ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-CV-86, 2019 WL 12875442, at *7 (E.D. Tex. Mar. 1, 2019); *see also United States ex rel. Sujatha v. Dental Health Programs, Inc.*, No. 3:18-CV-00463-E, 2020 WL 3064712, at *9 (N.D. Tex. June 8, 2020) ("Relator does not allege facts requiring that DQ USA's corporate form be disregarded."); *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 546, 552 (S.D. Tex. 2011) (explaining that "if the complaint does not plausibly link each corporate entity to the scheme or schemes alleged, it may still satisfy the 'who' aspect of the Rule 9(b) particularity requirement by plausibly alleging an alter ego relationship," but denying any discovery into alter ego claims where relators failed to meet the pleading threshold), *order vacated in part on reconsideration on other grounds*, No. CIV.A. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012).  The Complaint nowhere alleges facts supporting an argument that the corporate veil should be pierced, much less that such piercing would be viable here since that still would not make BNYM Corp. a designated "trustee" for any of the Defendant Trusts.

Complaint should be dismissed as to BNYM Corp., which is not specifically and plausibly alleged to be a trustee.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants U.S. Bank National Association, Deutsche Bank National Trust Company, Wells Fargo Bank, N.A., The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association, and The Bank of New York Mellon f/k/a The Bank of New York – on behalf of the Defendant Trusts for which each acts as trustee – and The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc. respectfully request that this Court dismiss Relators' Complaint with prejudice and enter judgment for the Trusts.

Dated:  May 6, 2022

_/s/ James A. Reeder, Jr._
James A. Reeder, Jr.
  Texas Bar No. 16695010
JONES DAY
717 Texas St., Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600

Michael P. Conway
  *Pro Hac Vice*
  mcconway@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782.3939
Facsimile: (312) 782-8585

Howard F. Sidman
  *Pro Hac Vice*
  hfsidman@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

ATTORNEYS FOR DEFENDANTS
WELLS FARGO BANK, N.A., AS
TRUSTEE, ON BEHALF OF CERTAIN
RESIDENTIAL MORTGAGE-BACKED
SECURITIES TRUST DEFENDANTS

Respectfully submitted,

_/s/ Stephanie Barnes_
Stephanie Barnes
  Texas Bar No. 24045696
  sbarnes@plunksmith.com
PLUNK SMITH, PLLC
1701 Legacy Dr., Suite 2000
Frisco, TX 75034
Telephone: (972) 370-3333
Facsimile: (972) 294-5274

Douglas W. Baruch
  *Pro Hac Vice*
  douglas.baruch@morganlewis.com
Jennifer M. Wollenberg
  *Pro Hac Vice*
  jennifer.wollenberg@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

Michael S. Kraut
  *Pro Hac Vice*
  michael.kraut@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

ATTORNEYS FOR DEFENDANTS U.S.
BANK NATIONAL ASSOCIATION, AS
TRUSTEE, ON BEHALF OF CERTAIN
RESIDENTIAL MORTGAGE-BACKED
SECURITIES TRUST DEFENDANTS;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE, ON BEHALF
OF CERTAIN RESIDENTIAL
MORTGAGE -BACKED SECURITIES
TRUST DEFENDANTS; THE BANK OF
NEW YORK MELLON TRUST
COMPANY, N.A., AS SUCCESSOR-
TRUSTEE, ON BEHALF OF CERTAIN
RESIDENTIAL MORTGAGE-BACKED
SECURITIES TRUST DEFENDANTS;

50

THE BANK OF NEW YORK MELLON,
AS SUCCESSOR-TRUSTEE, ON
BEHALF OF CERTAIN RESIDENTIAL
MORTGAGE-BACKED SECURITIES
TRUST DEFENDANTS; THE BANK OF
NEW YORK MELLON CORPORATION

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of May, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

_/s/ Stephanie Barnes_
**STEPHANIE BARNES**