# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *ex rel.* JEAN-MARC EICHNER, *et al.*, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> OCWEN LOAN SERVICING, LLC, *et al.* § <br> § <br> *Defendants.* § | Civil Action No.  4:19-CV-524 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Ocwen Loan Servicing, LLC's and Ocwen Financial Corporation's Motion to Dismiss Relator's Complaint (Dkt. #40), Defendants U.S. Bank National Association's, Deutsche Bank National Trust Company's, Wells Fargo Bank, N.A.'s, The Bank of New York Mellon Trust Company, N.A. F/K/A The Bank of New York Trust Company, National Association's, The Bank of New York Mellon F/K/A The Bank of New York's, and The Bank Of New York Mellon Corporation F/K/A The Bank of New York Company's Motion to Dismiss on Behalf of Certain Trust Defendants (Dkt. #48), Ocwen Loan Servicing, LLC's and Ocwen Financial Corporation's Motion to Strike the Boyd and Sanders Declarations Submitted by Relators in Response to Motions to Dismiss (Dkt. #60), and Defendants' Joint Motion Requesting an Oral Hearing (Dkt. #66).  Having considered the motions and the relevant pleadings, the Court finds that the motions to dismiss should be **DENIED**, the motion for a hearing should be **DENIED as MOOT**, and the motion to strike should be **DENIED as MOOT.**

## BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA").

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by providing homeowners with affordable mortgage-loan modifications and other alternatives to eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net-present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications.

Defendants Ocwen Financial Corporation ("OFC") and its subsidiary and alter ego Ocwen Loan Servicing ("OLS") (collectively, "Ocwen" or "Ocwen Defendants") were and/or are mortgage loan servicing agents for hundreds of trusts, for which Defendants U.S. Bank, National Association, Trustee ("U.S. Bank"); Deutsche Bank National Trust Company, Trustee ("Deutsche"); Wells Fargo Bank, N.A. Trustee ("Wells"); The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association, The Bank

of New York Mellon f/k/a The Bank of New York, and The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc., Successor-Trustees ("BONY") to J.P. Morgan Chase Bank, N.A., (collectively, the "Trust Defendants") served as Trustees.

In 2009, Ocwen enrolled in the HAMP program.  On April 16, 2009, Ocwen expressly certified its compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA").  The SPA named Ocwen as the servicer and Fannie Mae, solely as Financial Agent of the United States, as the administrator.  The parties signed a Financial Instrument on the same day, which details the representations, warranties, and covenants that Ocwen is obligated to make in connection with participation in HAMP.  The Financial Instrument was fully incorporated into the SPA.  On February 10, 2010, Ocwen signed an Amended SPA.  Ocwen also made annual certifications, a prerequisite to receiving HAMP payments.

Ocwen expressly represented in the SPAs and annual certifications that: (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications.  Each annual certification included an express statement certifying that Ocwen continued to meet the terms and conditions of the SPA, including the representation of compliance with applicable laws.

On July 15, 2019, Relator Jean-Marc Eichner ("Eichner") and Relator Brandon Loyd ("Loyd") (collectively, "Relators") filed their Original Complaint under seal (Dkt. #1), alleging causes of action for presenting false or fraudulent claims to the government, making express and/or implied false certifications to the government, making or using false records or statements material to false or fraudulent claims, fraudulent inducement, and reverse false claims under 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G) (Dkt. #1 ¶¶ 221–28). More specifically, Relators allege various instances of misconduct that resulted in the Ocwen Defendants violating the Federal Housing Administration ("FHA"), the Dodd-Frank Act, the Real Estate Settlement Procedures Act ("RESPA"), the Unfair, Deceptive, or Abusive Acts or Practice Laws ("UDAAP" or "UDAP"), the Truth in Lending Act ("TILA"), Regulation Z, and Texas state law (*see generally* Dkt. #1). Furthermore, Relators allege that the Ocwen Defendants made false representations to the government regarding HAMP, which induced the government to enter SPAs (*see generally* Dkt. #1). Additionally, Relators accuse the Trust Defendants as being vicariously liable for the actions of the Ocwen Defendants (Dkt. #1 at ¶ 2).

On December 10, 2021, the government opted to not intervene in the case. And, on December 14, 2021, the Court unsealed the case.

On May 6, 2022, Ocwen filed a motion to dismiss, arguing that the lawsuit should be dismissed because (1) Eichner lacks standing because he signed a Separation Agreement and release after disclosing "substantially all information" to the government and before filing this lawsuit; (2) of settlement, release, and res judicata based on the conclusion of the *Fisher* Action; (3) of the public disclosure bar because of the *Fisher* Action, the Consumer Finance Protection Bureau's ("CFPB") lawsuit and investigation, and the Special Inspector General for the Troubled Asset Relief Program; (4) of the government action bar because of the CFPB lawsuit;

(5) Relators fail to state a claim under Rule 12(b)(6) and Rule 9(b); (6) the statute of limitations; (7) Relators fail to state a viable reverse false claims violation; and (8) Relators fail to state any claims in their individual capacity (Dkt. #40). Ocwen's motion also includes a motion for summary judgment because "the allegations in this case have been publicly disclosed, yet relators have not and cannot meet their burden to qualify as original sources for issues properly before the Court" (Dkt. #40 at pp. 27–28).

Additionally, on May 6, 2022, the Trust Defendants also filed a motion to dismiss, arguing largely the same points as Ocwen (Dkt. #48). Specifically, the Trust Defendants argue that the lawsuit should be dismissed because of (1) *res judicata*, (2) the public disclosure bar, (3) the government action bar, (4) the first-to-file rule, (5) the statute of limitations, and (6) Relators fail to plead trust liability as required by Rules 8(a) and 9(b) (Dkt. #48).

On June 24, 2022, Relators filed responses to both motions (Dkt. #53; Dkt. #54). On July 29, 2022, the Ocwen Defendants and the Trust Defendants filed replies (Dkt. #59; Dkt. #61). And, on August 19, 2022, Relators filed sur-replies to both responses (Dkt. #64; Dkt. #65).

## LEGAL STANDARD

### I.    12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## II.     12(b)(6) Standard

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached

to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. 9(b) Standard

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)). Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186. "Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *see Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010) ("'[W]hen the parties have not urged a separate focus on the negligent misrepresentation claims,' the Fifth Circuit has

found negligent misrepresentation claims subject to Rule 9(b) in the same manner as fraud claims."). Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## ANALYSIS

Relators bring this *qui tam* action pursuant to the False Claims Act ("FCA"). 31 U.S.C. § 3729(a)(1). "The [FCA] is designed to allow suits 'by private parties on behalf of the United States against anyone submitting a false claim to the government.'" *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)). The FCA "promot[es] private citizen involvement in exposing fraud against the government," while "prevent[ing] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *Id.* (quoting *Reagan*, 384 F.3d at 174).

Defendants collectively argue that there are ten reasons the Court should dismiss this case:

1. Eichner released his FCA claims in a separation agreement;

2. Relators' FCA claims are barred by settlement, release, and *res judicata*;

3. Relators' claims are subject to the public disclosure bar;

4. Relators' claims are subject to the government action bar;

5. Relators' post-*Fisher* claims do not state a viable claim under 12(b)(6) or 9(b);

6. Relators' claims for earlier time periods are barred by statute of limitations;

7. Relators' fail to plead a viable reverse false claims violation;

9

      8. Relators' do not have any viable individual claims;

      9. Relators' complaint does not plead trust liability as required by 9(b); and

      10. Relators' fail to state a claim against BNYM Corp.

(Dkt. #40; Dkt. #48). Because of the substantial overlap between Defendants' motions to dismiss and Relators' responses, the Court has considered all the briefing together.

The Court believes that several of Defendants' arguments, although valid concerns, are best dealt with after the parties have had an opportunity to conduct discovery, develop the facts, and fully brief the issues under the requisite standard.[1] Issues best left for a later date include whether Eichner released his FCA claims pursuant to a separation agreement[2] and whether some or all of Relators' claims are barred by *res judicata*, the public disclosure bar, the government action bar, or the relevant statute of limitations.

As to Defendants' arguments that are appropriately dealt with in these motions to dismiss, after reviewing the current complaint and the arguments presented in briefing, the Court concludes that dismissal is not warranted. Relators have stated plausible claims for relief against Defendants under both the 12(b)(6) and 9(b) standards.

---

[1] The Court acknowledges that the Ocwen Defendants requested that the Court convert their motion to dismiss into a motion for summary judgment and that the Ocwen Defendants briefed their motion to dismiss, at least partially, under a summary judgment standard. The Court also acknowledges that all parties in this case submitted evidence outside of the pleadings for the Court's consideration. However, the Court believes that allowing parties the benefit of discovery and an opportunity to fully brief each issue under a summary judgment standard is appropriate and, therefore, the Court did not consider any evidence outside the pleadings and will not treat either motion as one for summary judgment.

[2] Defendants argue that the Court should dismiss Eichner's claims under 12(b)(1) because Eichner allegedly lacks standing to bring this case. This is a jurisdictional issue. Relators, though, posit that discovery is necessary to determine whether Eichner sufficiently disclosed his allegations of fraud to the government at the time he signed the separation agreement, the scope of the separation agreement, and whether Eichner was actually permitted to have a lawyer review the separation agreement. The Court can, and in this case will, permit parties to conduct discovery and be heard on the factual matters underlying jurisdiction before considering the jurisdictional question. *See Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir. 2009). The party seeking discovery must show its necessity of discovery by alleging the specific facts which demonstrate a need for discovery. *Id.* Here, Relators have articulated a discrete discovery request that might cure the jurisdictional deficiency. Accordingly, the question of whether Eichner has standing to sue is best dealt with after discovery on these issues has been conducted. After such discovery, Defendants may re-raise the issue with the Court.

## CONCLUSION

It is therefore **ORDERED** that Defendants U.S. Bank National Association's, Deutsche Bank National Trust Company's, Wells Fargo Bank, N.A.'s, The Bank of New York Mellon Trust Company, N.A. F/K/A The Bank of New York Trust Company, National Association's, The Bank of New York Mellon F/K/A The Bank of New York's, and The Bank Of New York Mellon Corporation F/K/A The Bank of New York Company's Motion to Dismiss on Behalf of Certain Trust Defendants (Dkt. #48) is hereby **DENIED,** and Ocwen Loan Servicing, LLC's and Ocwen Financial Corporation's Motion to Dismiss Relator's Complaint (Dkt. #40) is hereby **DENIED.**

It is further **ORDERED** that Ocwen Loan Servicing, LLC's and Ocwen Financial Corporation's Motion to Strike the Boyd and Sanders Declarations Submitted by Relators in Response to Motions to Dismiss (Dkt. #60) is hereby **DENIED as MOOT**.

It is further **ORDERED** that Defendants' Joint Motion Requesting an Oral Hearing (Dkt. #66) is hereby **DENIED as MOOT**.

**IT IS SO ORDERED**.
**SIGNED** this 13th day of February, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE