IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.* Jean-Marc Eichner and Brandon Loyd, and | § | |
| Jean-Marc Eichner and Brandon Loyd Individually, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| Ocwen Loan Servicing, LLC; Ocwen Financial | § | |
| Corporation; U.S. Bank, National Association, *as* | § | |
| *Trustee*, on behalf of 457 Residential Mortgage Backed | § | |
| Securities Trust Defendants; Deutsche Bank National | § | Case No. 4:19-cv-00524 |
| Trust Company, *as Trustee*, on behalf of 617 | § | |
| Residential Mortgage Backed Securities Trust | § | |
| Defendants; The Bank of New York Mellon Trust | § | |
| Company, N.A. f/k/a The Bank of New York Trust | § | |
| Company, National Association, The Bank of New | § | |
| York Mellon f/k/a The Bank of New York, and The | § | |
| Bank of New York Mellon Corporation f/k/a The Bank | § | |
| of New York Company, Inc., *as Successor-Trustees* to | § | |
| J.P. Morgan Chase Bank, N.A., on behalf of 329 | § | |
| Residential Mortgage Backed Securities Trust | § | |
| Defendants; Wells Fargo Bank, N.A., *as Trustee*, on | § | |
| behalf of 194 Residential Mortgage Backed Securities | § | |
| Trust Defendants, | § | |
| | § | |
| Defendants. | § | |

## OCWEN FINANCIAL CORPORATION'S AND OCWEN LOAN SERVICING, LLC'S MOTION TO COMPEL RELATORS TO RESPOND TO INTERROGATORIES 2, 3, & 4

Robert T. Mowrey
W. Scott Hastings
C. Scott Jones
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile:  (214) 740-8800

ATTORNEYS FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC AND
OCWEN FINANCIAL CORPORATION

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS........................................................................................................... ii

INDEX OF AUTHORITIES.................................................................................................... iii

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

A.    The FCA's Public Disclosure Bar, Original Source Exception, and Timing Elements ......2

B.    Relators Contend They Made Disclosures to the United States Over Several Years..........4

C.    Ocwen Served Interrogatories to Fill Gaps in Relators' Initial Disclosures.......................5

ARGUMENT ...........................................................................................................................6

A.    Ocwen's Interrogatories Seek Relevant Factual Information on the Potentially Case-
      Dispositive Original Source Issue........................................................................................7

B.    Relators Should Be Compelled to Respond to Interrogatory No. 2.....................................9

C.    Relators Should Be Compelled to Respond to Interrogatory No. 3...................................11

D.    Relators Should Be Compelled to Respond to Interrogatory No. 4...................................12

E.    The Rule 26(b)(1) Discovery Standard..............................................................................14

F.    Ocwen Has a Substantial Need for the Requested Information..........................................14

CONCLUSION......................................................................................................................15

## <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Consumer Financial Protection Bureau v. Brown*,
  69 F.4th 1321 (11th Cir. 2023) ........................................................................12, 14

*Consumer Financial Protection Bureau et al. v. Ocwen Financial Corp.*,
  No. 1:13-cv-02025-RMC (D.D.C. 2014) ...................................................................13

*Consumer Financial Protection Bureau et al. v. Ocwen*,
  Case No. 9:17-CV-80495 (S.D. Fla. 2017)................................................................13

*Consumer Financial Protection Bureau v. Ocwen Financial Corp.*,
  30 F.4th 1079 (11th Cir. 2022) .................................................................................13

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) .....................................................................................10

*Jolivet v. Compass Group USA, Inc.*,
  340 F.R.D. 7 (N.D. Tex. 2021) ..................................................................................10

*In re Uehling*,
  2013 WL 3283212 (E.D. Cal. June 27, 2013) ...........................................................10

*United States ex rel. Bagley v. TRW, Inc.*,
  212 F.R.D. 554 (C.D. Cal. 2003) ................................................................................9

*United States ex rel. Fisher v. Homeward Residential, Inc.*,
  2015 WL 4610284 (E.D. Tex. July 31, 2015) .............................................................7

*United States ex rel. Fisher v. JPMorgan Chase Bank, N.A.*,
  2020 WL 3265060 (E.D. Tex. June 17, 2020)................................................1, 8, 9, 11, 12, 15

*United States ex re. Fisher v. Ocwen Loan Servicing, LLC*,
  2015 WL 4609742 (E.D. Tex. July 31, 2015) ......................................................1, 7, 9, 14, 15

*United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
  2016 WL 3031713 (E.D. Tex. May 25, 2016)...........................................................2, 4, 13

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
  2022 WL 135438 (E.D. Tex. Jan. 13, 2022)...............................................................3

*United States ex rel. Reagan v. E. Tex. Med. Ctr.Reg'l Healthcare Sys.*,
  384 F.3d 168 (5th Cir. 2004) ......................................................................................3

*United States ex rel. Schweizer v. Cannon, Inc.*,
  9 F. 4th 269 (5th Cir. 2021) ...................................................................................7

*United States ex rel. Stone v. Rockwell Intern. Corp.*,
  144 F.R.D. 396 (D. Col. 1992) ................................................................................9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016) ................................................................................................5

*VeroBlue Farms USA Inc. v. Wulf*,
  2021 WL 5176839 (N.D. Tex. Nov. 8, 2021) ...................................................12, 13

*Whitehead v. United Property and Casualty Insurance Company*,
  2022 WL 2920415 (E.D. Tex. May 16, 2022) ......................................................10

## STATUTES AND RULES

31 U.S.C. §3730(b)(2) ........................................................................................7, 11, 12

31 U.S.C. §3730(e)(4) ..............................................................................1, 2, 3, 11, 13

Fed. R. Civ. P. 26(b)(1) ...................................................................................6, 7, 14

Fed. R. Civ. P. 26(b)(3) ............................................................................................14

Fed. R. Civ. P. 26(b)(5) .......................................................................................8, 10

Fed. R. Civ. P. 33(a)(2) .........................................................................................6, 8

Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC (collectively, "Ocwen") move to compel Relators Jean-Marc Eichner and Brandon Loyd ("Relators") to provide full and complete responses to Interrogatories 2, 3, and 4 in OFC's First Set of Interrogatories.

## **INTRODUCTION**

Ocwen is filing this motion because, without relief, it will be denied the opportunity to discover essential evidence on one of its primary defenses.  When the Court denied Ocwen's motion to dismiss in February, the Court held that the question whether Relators' claims are barred by the False Claims Act's ("FCA") public disclosure bar, 31 U.S.C. §3730(e)(4), was an issue "best left to a later date" "after the parties have had an opportunity to conduct discovery."  ECF 70 at 10. OFC served six interrogatories on Relators to begin conducting that discovery, but Relators are refusing to answer three of them.

OFC's interrogatories seek only *factual* information relevant to assess what information Relators provided to the government, when, and by whom.  Also, because Relators have failed to provide any metadata for the documents they have produced, Ocwen seeks information regarding how that information was provided to the government, in an attempt to locate discoverable information to test the authenticity, origins, and dates of creation for the reports and documents Relators allegedly provided to the United States.  The information Ocwen seeks is similar to the factual, non-privileged information prior relators in this Court voluntarily produced, without the necessity of a motion to compel.  *See, e.g., United States ex re. Fisher v. Ocwen Loan Servicing, LLC*, 2015 WL 4609742, *2 (E.D. Tex. July 31, 2015) ("*Fisher*"); *United States ex rel. Fisher v. JPMorgan Chase Bank, N.A.*, 2020 WL 3265060 (E.D. Tex. June 17, 2020) ("*Chase*").

Contrary to Relators' representations during the June 30, 2023 conference (the "Conference") with the Court, Ocwen is *not seeking* Relators' underlying disclosure statements to the government through these interrogatories.  Ocwen seeks information *to identify* the relevant

communications that would enable Ocwen to assess issues relating to materiality, original source status, and government knowledge.  Depending on how Relators answer, Ocwen may have the need to conduct follow up discovery on these topics, but it is not appropriate for Relators to stonewall Ocwen's targeted discovery for key issues at the heart of the case.

Relators chose to bring this parasitic lawsuit.  While Ocwen has spent considerable sums producing millions of pages of documents in response, Relators cannot refuse to answer questions about the 280 documents they produced and falsely claim they lack the ability to do so.  The Court should compel Relators to respond in full to OFC's Interrogatories Nos. 2, 3, and 4.

## FACTUAL BACKGROUND

**A.    THE FCA'S PUBLIC DISCLOSURE BAR, ORIGINAL SOURCE EXCEPTION, AND TIMING ELEMENTS**

This Court has held that substantially similar allegations of misconduct against Ocwen were publicly disclosed, thus each Relator can only proceed with his lawsuit if he can satisfy the FCA's "original source" exception.  *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2016 WL 3031713, *6 (E.D. Tex. May 25, 2016) ("The Court finds that Relators' suit is based upon the public disclosures, and thus, will be barred unless Relators qualify as original sources.").  Under 31 U.S.C. §3730(e)(4)(B), an "original source":

> means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or [(ii)] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

If the public disclosure bar applies, as it did in *Fisher* on identical or substantially-similar allegations, Relators bear the burden to prove they each qualify as an original source.  *Fisher*, 2016 WL 3031713, *6.  Defendants will be able to establish the public disclosure bar because that bar

is triggered even where allegations are only partly publicly disclosed.[1]  *United States ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 135438, *3 (E.D. Tex. Jan. 13, 2022) (citing *United States ex rel. Reagan v. E. Tex. Med. Ctr.Reg'l Healthcare Sys.*, 384 F.3d 168, 176 (5th Cir. 2004)). Thus, this Court will need to address the original source standard.

There are two ways to meet the original source exception.  First, a would-be relator can qualify if he can show that, "prior to a public disclosure under subsection (e)(4)(a), [he] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. §3730(e)(4)(B)(i).  This exception requires a comparison of the timing of the public disclosures compared to the information the relator provided to the government "prior to" the public disclosure date(s).  31 U.S.C. §3730(e)(4)(B)(i).

Alternatively, a would-be relator can qualify for the original source exception if he can show (1) he has knowledge "independent of … the publicly disclosed allegations or transactions," (2) his knowledge "materially adds to the publicly disclosed allegations or transactions," and (3) he "has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C. §3730(e)(4)(B)(ii).  The third element is, on its face, a timing element.  To assess whether information "materially adds to" publicly disclosed information, it is necessary to assess a relator's alleged contributions in light of the publicly disclosed information, which likewise has a timing element.  If the information was not provided to the government until after that information was publicly disclosed, a relator likely cannot have "materially add[ed] to" that publicly disclosed information.  Ocwen's interrogatories relate to these timing issues.

---

[1] Ocwen previously explained how and why the public disclosure bar applies here.  *See* ECF 40 at 5-12, 27-34.

**B.** **R**ELATORS **C**ONTEND **T**HEY **M**ADE **D**ISCLOSURES TO THE **U**NITED **S**TATES **O**VER **S**EVERAL **Y**EARS

On Page 130 of their Complaint (ECF 1), Relators allege the dates when they purportedly made disclosures of their information to the government, all of which are not only after the public disclosures that applied to *Fisher*, but also after this Court's decision holding that the allegations in *Fisher* were previously publicly disclosed. *See Fisher*, 2016 WL 3031713, *6.

First, the Complaint alleges Loyd served "substantially all information he possessed" to the government on June 22, 2016. ECF 1 at 130. That disclosure was purportedly made on the very day that the parties in *Fisher* provided notice to this Court that they had reached a preliminary settlement. *See* ECF 528 in Case No. 4:12-CV-542-ALM, *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, in the United States District Court for the Eastern District of Texas ("*Fisher*").[2] The parties entered into the *Fisher* settlement agreement over eight months later on February 17, 2017. *See* Ex. 2 (attached). At the time Ocwen entered into the *Fisher* settlement, Ocwen did not know that Loyd or anyone else was seeking to renew litigation against Ocwen. Because the only "new" allegation by Relators for pre-settlement conduct is that the Trust Defendants are "vicariously liable" for Ocwen's conduct, Loyd's disclosures are necessarily the identical *conduct* alleged in *Fisher*.

Next, the Complaint alleges Loyd made supplemental disclosures to the United States on February 21 and 23, 2017, and also had a telephone conference with the United States on February 28, 2017. ECF 1 at 130. These alleged disclosures were made after the *Fisher* settlement was signed but before Ocwen funded the settlement. *See Fisher*, ECF 583 & 584. When Ocwen funded the settlement it was unaware that Relators were scheming to take a second bite at the apple based on Ocwen's alleged conduct settled in *Fisher*. Relators' alleged February 2017 disclosures were

---

[2] Copies of relevant pleadings from *Fisher* were also attached to the Hastings Declaration filed at ECF 41.

made before the United States consented to the dismissal with prejudice of *Fisher* in April 2017. *See Fisher* ECF 573, 583, 584.  Thus, in addition to the original source issues, the substance of Loyd's factual disclosures to the government in 2016 and early 2017 are relevant to showing what information was in the United States' possession when it agreed to dismiss *Fisher* with prejudice. This information is also relevant to show the extent of the government's knowledge for purposes of assessing materiality relating to Relators' allegations based on Ocwen's post-February 17, 2017 conduct.  *See Universal Health Servs., Inc. v. United States ex rel. Escobar,* 579 U.S. 176 (2016).

Finally, the Complaint alleges both Relators made disclosures in early 2019 before this lawsuit was filed.  ECF 1 at 130.  But Relators do not state which Relator disclosed which facts, nor when any specific disclosure was made.  And, again, Relators' documents will be relevant to assessing the government's knowledge for purposes of assessing materiality questions relating to Relators' claims based on Ocwen's post-2019 conduct.  *See Escobar*, 578 U.S. 176.

**C.**     **OCWEN SERVED INTERROGATORIES TO FILL GAPS IN RELATORS' INITIAL DISCLOSURES**

On July 6, 2022, this Court entered its Order Granting Joint Motion for Limited Initial Discovery and Disclosures, ECF 56, accepting the parties' agreed proposal, which provided in relevant part:  "To the extent that Relators rely on non-privileged documents to demonstrate their status as original sources, Relators will produce any such documents."  ECF 56, Ex. A, §8.  Over nine months later, on April 14, 2023, Relators produced 280 documents to Defendants.  Hastings Decl. at ¶6.  Relators' documents were produced without metadata or other identifying information showing when the documents were created and by whom, nor which Relator(s) provided which document(s) to the government.  *Id.* at ¶6 & Ex. D.

On April 18, 2023, OFC served its First Set of Interrogatories on Relators, seeking to obtain factual information regarding Relators' disclosures to the government.  Hastings Decl. Ex. A.  OFC served six interrogatories, three of which are relevant to this motion:

**Interrogatory No. 2**

Identify each document by bates number that You (or anyone acting on your behalf) provided to the United States as part of your disclosures under 31 U.S.C. §3730(b)(2) related to this case, including as referenced on page 130 of the Complaint, and for each document state the date it was provided to the United States, how it was provided to the United States, and which Relator provided that document.

**Interrogatory No. 3**

Identify each communication that You had with any representative of the United States as part of your disclosures under 31 U.S.C. §3730(b)(2) related to this case.

**Interrogatory No. 4**

If You (or anyone acting on your behalf) met with (or communicated with) the Office of Special Inspector General for the Troubled Asset Relief Program relating to Ocwen, Identify who participated in the meeting or communication, state the date of each such meeting or communication, Identify the documents (if any) you provided as part of such meeting or communication, and describe the substance of such meetings or communications.

Hastings Decl. Ex. A.  Relators served their initial responses to these Interrogatories on May 18, 2023.  Hastings Decl. Ex. B.  Following the parties' meet-and-confer conferences, Relators served supplemental interrogatory answers on June 13, 2023.   Hastings Decl. Ex. C.   Relators' supplemental interrogatory answers still do not answer these three important questions.

Ocwen requested a discovery conference in accordance with the April 5, 2023, Scheduling Order.  *See* ECF 86 at 4.  The Court held a telephonic conference with the parties on June 30, 2023 and then granted Ocwen permission to file this motion.

## **ARGUMENT**

The federal rules allow Ocwen to seek answers to interrogatories from Relators regarding "any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  Rule 26(b) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any parties' claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Ocwen's interrogatories easily meet this standard.

## A.   OCWEN'S INTERROGATORIES SEEK RELEVANT FACTUAL INFORMATION ON THE POTENTIALLY CASE-DISPOSITIVE ORIGINAL SOURCE ISSUE

The FCA's public disclosure / original source standard is potentially case dispositive of this litigation.  *See, e.g., United States ex rel. Schweizer v. Cannon, Inc.*, 9 F. 4th 269 (5th Cir. 2021) (affirming dismissal under the public disclosure bar).  Thus, it is critically important for Ocwen to be able to conduct discovery on this defense, as the Court recognized in its order denying the Defendants' motions to dismiss.  *See* ECF 70 at 10.

[T]his Court recognizes that FCA defendants have the right to discover relevant information from the Relators that bear upon whether each Relator can qualify as an original source.  In *Fisher*, for example, the Relators voluntarily "provided Ocwen with . . . (1) the names of all persons mentioned within the disclosure statements, (2) all underlying documents used in creating and/or referenced within the disclosure statements, (3) all underlying documents provided by Relators to the United States under 31 U.S.C. § 3730(b)(2), and (4) all factual information used to create or referred to within the statements (Dkt. # 192 at p. 1)."  *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2015 WL 4609742, *2 (E.D. Tex. July 31, 2015).  "Relators assert that they are **only withholding the actual disclosure statements** because those are protected by attorney-client privilege, common interest privilege, and the work product doctrine (Dkt. # 192 at p. 1)."  *Id.* (emphasis added).[3]  Here, Ocwen is only seeking factual information necessary to assess the original source standard.  Contrary to Relators' arguments during the Conference, Ocwen's interrogatories do not seek the actual disclosure statements.

---

[3] Relators took the same position on disclosing relevant factual information regarding its disclosures to the government in *United States ex rel. Fisher v. Homeward Residential, Inc.*, 2015 WL 4610284, *2 (E.D. Tex. July 31, 2015).

This Court's decision in *United States ex rel. Fisher v. JPMorgan Chase Bank, N.A.*, 2020 WL 3265060 (E.D. Tex. June 17, 2020) ("*Chase*"), also provides relevant guidance.  The Court explained that "Defendant was 'free to test Relators' claim to original source status in discovery'[.]"  *Id.* at 2.  But, while the Court denied Chase's motion to compel Relators' actual disclosure statement (which Ocwen is not presently seeking through its interrogatories), it emphasized that the Relators in *Chase* "have been forthcoming in responding to Defendant's discovery requests through interrogatories[.]"  *Id.* at *6.  "Relator Fisher provided a detailed factual summary in his interrogatory response[.]"  *Id.*  And Relator Franklin provided sworn testimony of the events he observed and that he "reported 'these issues to the United States through my attorneys in August 2014[.]'"  *Id.*  The *Chase* relators "answered numerous questions regarding the documents they gave the Government[.]"  *Id.* at *7.  "Relator Fisher provided when he met with the Government, who he met with, and the general subject matters of their discussions[.]"  *Id.*

Ocwen's interrogatories seek sworn testimony comparable to what relators, and overlapping counsel, produced in *Fisher* and *Chase*.  During the Conference, Relators said a privilege log would be provided.  But a privilege log is not sworn testimony from the material witnesses regarding relevant facts.[4]  Relators also argued that Ocwen would have the opportunity to take depositions, *see* ECF 96, Tr. at 17:12, but if depositions are appropriate, then interrogatories are appropriate too.  *See* Fed. R. Civ. P. 33(a)(2).  Ocwen's interrogatories seek information that is best answered by Relators with time to respond, rather than just putting them on the spot in a deposition setting to ask which of the 280 documents they gave to the government on which days, testimony that would be difficult to explain and easy to dodge.  Ocwen's interrogatories are

---

[4] Rule 26 explains the requirements of a privilege log:  it must "(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii). A log provided in accordance with this rule would not answer the questions Ocwen has posed regarding the timing of disclosures of particular documents to the government.

intended to focus the discovery so that Relators' future depositions will be more productive.

**B.**   **RELATORS SHOULD BE COMPELLED TO RESPOND TO INTERROGATORY NO. 2**

Ocwen's need for a substantive response to Interrogatory No. 2 is even more important than any timing issues raised in *Fisher* and *Chase*.  Relators contend that they provided documents to the government over a multi-year period from June 2016 into early 2019, and perhaps beyond. Ocwen was subject to extensive HAMP-related litigation and government investigations throughout that time period.  Thus, it is critically important to know when a Relator provided a particular document to the government so that the Relators' alleged contributions to the government may be assessed in light of existing publicly-disclosed information.  This information is relevant to both the timing issues under the original source test, including to enable an assessment of whether Relators materially added to the publicly-disclosed allegations against Ocwen, as well as to assess the government's knowledge for purposes of conducting a materiality analysis under *Escobar*.

Relators argue that Interrogatory No. 2 seeks information that is protected by the attorney-client and work product privileges because it seeks information relating to what they included in their disclosures to the government.  *See* Hastings Decl. Ex. C at Rog. 2.  However, courts almost uniformly hold that a relator's disclosure statement is not protected by the attorney-client privilege, even when some courts find that the statement is protected on other grounds.  *See Chase*, 2020 WL 3265060, *4 ("Courts that have addressed the issue largely agree: disclosure statements do not qualify for attorney-client privilege."); *see also Fisher*, 2015 WL 4609742, *4 n.5; *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554 (C.D. Cal. 2003); *United States ex rel. Stone v. Rockwell Intern. Corp.*, 144 F.R.D. 396, 400 (D. Col. 1992).  Although this Court has held that the work product doctrine covers a relator's disclosure statement, *Fisher*, 2015 WL 4609742, *3, the Court has never extended work product protections to prevent a defendant from conducting factual

discovery, including through interrogatories, to obtain information relevant to the analysis of the original source and materiality standards, as illustrated by the *Fisher* and *Chase* cases discussed above.  Privilege does not extend to underlying facts regarding privileged communications (such as the date information is provided and to whom), which would include the information Ocwen has requested in Interrogatory No. 2.  *See* Fed. R. Civ. P. 26(b)(5); *Jolivet v. Compass Group USA, Inc.,* 340 F.R.D. 7, 21 (N.D. Tex. 2021); *Whitehead v. United Property and Casualty Insurance Company,* 2022 WL 2920415, at *5 (E.D. Tex. May 16, 2022); *In re Uehling*, 2013 WL 3283212, at *6, 8 (E.D. Cal. June 27, 2013).[5]

Relators also complain that it is burdensome to answer Interrogatory No. 2.  But Relators have produced only 280 documents that include the documents provided to the United States, and Relators have not even committed that all of the 280 documents were provided to the government. Even if all were provided to the government, providing factual interrogatory answers regarding Relators' documents is not burdensome in the context of this case where Relators are seeking hundreds of millions of dollars in damages, if not more, from the Defendants.

Relators argue that Ocwen's request for information regarding "how [each document] was provided to the United States" is vague.  It is not.  Relators know the format and methods they used to provide information to the United States.  Ocwen is not privy to that information.

Information regarding the manner in which information was provided to the government is relevant, too.  Relators produced their 280 documents to Defendants as PDFs, many of which appear to be scans of computer files, excel files, and reports.  Hastings Decl. at ¶¶6, 7 & Ex. D. Relators provided no metadata or native files for any of the 280 documents.  *Id.*  Thus, as produced,

---

[5] To the extent that Relators seek to avoid responding to Ocwen's interrogatories by asserting privilege (*i.e.*, to shield communications), Relators should thereafter be precluded from using any withheld privileged information to prove original source status or any other element of their claims or defenses (*i.e.*, as a sword).  *See In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018).

the documents do not show who prepared the document, when, from what sources, or whether they were even provided.  Ocwen seeks to discover whether Relators provided the same PDFs to the government, or whether Relators provided something in a more usable, electronic format.  Thus, this part of the interrogatory seeks information likely to lead to discovery of the native files, which, in turn, can be analyzed to determine their authenticity, when created, by whom, and how.[6]

## C.   RELATORS SHOULD BE COMPELLED TO RESPOND TO INTERROGATORY NO. 3

Interrogatory No. 3 requests Relators to "identify each communication that You had with any representative of the United States as part of your disclosures under 31 U.S.C. §3730(b)(2) related to this case."  Section 3730(b)(2) disclosures refer to information provided to the United States before the relator files suit.  *See* 31 U.S.C. §§3730(b)(2) & 3730(e)(4)(B).  Thus, this interrogatory is limited to communications on or before July 15, 2019.

"Identify" "as applied to oral communications" was defined in the interrogatories as requesting "the name of the person making the communication and the name(s) of the person(s) present while the communication was made, and, where not apparent, the relationship of the person(s) present to the person making the communication; the date and place of the communication; and a summary of the subject matter of the communication[.]"  ROGS at 3, ¶9(c). This request is seeking information comparable to what the relators voluntarily provided in *Chase*.

In *Chase*, Relators "provided Defendant with … the dates, times, and frequency of their meetings with the federal government."  2020 WL 3265060, *6.  They further disclosed "the names of other individuals who they informed about the alleged issues, and when they met with the Government[.]"  *Id.*  "Relator Fisher provided when he met with the Government, who he met

---

[6] As an illustration, in response to Interrogatory No. 6, Relators say that the report discussed in Paragraphs 153-162 of the Complaint was produced at EICHNER_007452-007460.  *See* Hastings Decl. Ex. C at Rog. 6 (supplemental answers).  That report is a PDF of a computer spreadsheet.  To date, Ocwen has not been able to locate the original, native of that file from any source.  Thus, Ocwen does not know where the report came from, what information was used to generate the report, where it was created, by whom, when, or whether it is accurate.

with, and the general subject matters of their discussions[.]"  *Id.* at *7.  "Relator Franklin answered questions on the violations he alleged to the Government and what the Government wanted to generally discuss in meetings[.]"  *Id.*  This is precisely the type of relevant information Ocwen seeks in Interrogatory No. 3.

Relators object, arguing this information is privileged.  But factual information regarding the existence, dates, participants, and general subject matter of communications is not privileged.  *See* pages 9-10 above; *VeroBlue Farms USA Inc. v. Wulf*, 2021 WL 5176839, *21 (N.D. Tex. Nov. 8, 2021).  That is why the Relators in *Chase* voluntarily disclosed that information.

Relators also assert boilerplate objections claiming it is burdensome, a fishing expedition, and disproportional to the needs of this case to provide the requested information.  They offer no explanation or evidence to support their contention.  The Court should not allow Relators to file a lawsuit, impose an enormous burden on the Defendants, and then object that it would be burdensome for Relators to have to participate in discovery.  *See Consumer Financial Protection Bureau v. Brown*, 69 F.4th 1321, 1323 (11th Cir. 2023) (affirming dismissal of the CFPB's claims as a sanction for the CFPB refusing to participate in discovery after imposing an enormous burden on the defendants).

**D.    RELATORS SHOULD BE COMPELLED TO RESPOND TO INTERROGATORY NO. 4**

Interrogatory No. 4 requests Relators to "identify" information regarding any communications they had with the Special Inspector General for the Trouble Asset Relief Program ("SIGTARP").  SIGTARP is the Treasury Department's investigatory arm that conducted investigations of HAMP participants, like Ocwen.  In *Fisher*, Ocwen provided the Court with information regarding public disclosures as a result of SIGTARP's investigation.  *See* ECF 40-10, *et seq.* (reproducing the public disclosures submitted in *Fisher*).  This Court recognized that those SIGTARP reports publicly disclosed some of the identical allegations in this case that were at issue

in *Fisher*.  2016 WL 3031713, *6.  Discovery in this case will show substantially more public disclosures from SIGTARP than were previously addressed in *Fisher* several years before this lawsuit was filed in 2019.  *See, e.g.,* Hastings Decl. Exs. F & G.

Because there have been substantial public disclosures of allegations against Ocwen by SIGTARP, Ocwen seeks factual information to determine whether Relators had any role in those public disclosures, or whether the public disclosures occurred prior to Relators providing their information to the government.  Stated differently, Ocwen seeks discovery to determine whether Relators "materially add[ed] to" existing publicly-disclosed allegations.  *See* 31 U.S.C. §3730(e)(4)(B).  Discovery involving Relators' communications with SIGTARP is also relevant to determine the extent to which Relators' allegations are based on SIGTARP's investigations or are independent of them.  *See* 31 U.S.C. §3730(e)(4)(B).

The existence of any such communications is not privileged.  *See VeroBlue*, 2021 WL 5176839, *21.  Relators' answers to Interrogatories Nos. 4 & 5 suggest they met with SIGTARP.  Interrogatory No. 5 inquired about Relators' communications with the CFPB, to which they responded:  "they are unaware of any meetings and communications with the Consumer Financial Protection Bureau relating to Ocwen[.]"  Hastings Decl. Ex. C at Rog. 5.   However, Relators did not provide a substantive response to Interrogatory No. 4, which implies they are withholding a response regarding communications.  They should be compelled to identify them.

Relators argue Interrogatory No. 4 would expose the existence of government investigations about Ocwen.[7]  But, SIGTARP's investigation of Ocwen was no secret.  Ocwen

---

[7] Presumably, Relators responded to Interrogatory No. 5 because the CFPB's investigations were widely disclosed, including in public filings.  *See, e.g., Consumer Financial Protection Bureau v. Ocwen Financial Corp.,* 30 F.4th 1079, 1085 (11th Cir. 2022); *see also Consumer Financial Protection Bureau et al. v. Ocwen*, Case No. 9:17-CV-80495, in the U.S. District Court for the Southern District of Florida (dismissing all of the CFPB's pre-February 26, 2017 claims based on *res judicata*); *Consumer Financial Protection Bureau et al. v. Ocwen Financial Corp.,* No. 1:13-cv-02025-RMC, in the U.S. District Court for the District of Columbia (resulting in a Consent Judgment, release of all claims before February 26, 2014, and a three year monitoring period).

produced to Relators the SIGTARP Subpoena issued to Ocwen on May 30, 2017, which was part of a massive government investigation. *See* Hastings Decl. at ¶9 (referencing OCW-EI-06796407). Ocwen also produced to Relators approximately 1.4 million documents, consisting of nearly 6.7 million pages, that Ocwen provided to SIGTARP. *Id.* It is not burdensome or improper to require Relators to disclose if one or both of them were part of the investigation, learned about allegations from the SIGTARP investigation, or had no connection to it at all.

### E.    THE RULE 26(b)(1) DISCOVERY STANDARD

For the reasons explained above, Ocwen seeks discovery that is relevant to Relators' claims and Defendants' defenses—indeed, it is potentially case dispositive on the original source issue. The amount in controversy on Relators' claims is potentially in the hundreds of millions of dollars, rendering Ocwen's need for the requested information high and proportional to the needs of the case, particularly in contrast to Relators' insignificant burden to respond to three interrogatories about 280 documents. Any burden associated with Relators having to answer the interrogatories is greatly outweighed by the benefits associated with obtaining relevant factual information.

Ocwen does not have access to the information requested in Interrogatories 2, 3, & 4 from any other source. By contrast, Relators have easy access to the information they disclosed to the government, when, and to whom. Relators cannot meaningfully contend they lack the resources to respond to basic interrogatories; they are represented by multiple law firms and they chose to file this case. Relators cannot avoid their obligation to participate in the discovery process in very lawsuit they initiated. *See CFPB,* 69 F.4th at 1323.

### F.    OCWEN HAS A SUBSTANTIAL NEED FOR THE REQUESTED INFORMATION

Although Ocwen does not believe that its interrogatories seek privileged information, even if they were considered work product material, Ocwen has a substantial need for that information. *See Fisher*, 2015 WL 4609742, *2-3 (recognizing that Rule 26(b)(3) allows a party to obtain

discovery of ordinary work product if there is a substantial need for the information).

In *Fisher*, this Court held that Ocwen failed to meet the substantial need standard when seeking discovery of the Relators' disclosure statements. *Id.* at *3-4.  The Court's decision was based in part because Ocwen would have the opportunity "to compile information through interrogatories, document requests, and depositions[.]"  *Id.* at *3.  The Court denied Ocwen's request for the relators' disclosure statements because "Ocwen has the opportunity to question Relators regarding the information contained within their allegations and their investigative efforts" through other means.  *Id.* at *4.  Similarly, in *Chase*, the Court found that the defendant did not have a substantial need for disclosure statements because "the Relators have been forthcoming in responding to Defendant's discovery requests through interrogatories and depositions."  2020 WL 3265060, *6.  Now that Ocwen is pursuing those other means to obtain discovery—here through interrogatories—Relators have no legitimate baseless to claim that Ocwen should be denied the relevant factual information needed for this case.

Ocwen has no other means to obtain the factual information it seeks.  In *Fisher*, Ocwen attempted to obtain disclosure information directly from the government, but the United States filed a motion for protection, arguing that it was not subject to subpoenas in litigation and that a subpoena was unnecessary because Ocwen could obtain non-privileged information from the relators.  *See Fisher* ECF 190 at 2-3.  The Court granted the United States' motion for protection.  *Fisher* ECF 201.  Thus, Relators are the proper parties to respond to Ocwen's factual discovery.

## CONCLUSION

This Motion should be granted.  Relators should be compelled to provide full answers to Interrogatories Nos. 2, 3, & 4 in OFC's First Set of Interrogatories.

Dated:  July 12, 2023                  Respectfully submitted,

*/s/ Robert T. Mowrey*
Robert T. Mowrey
  Texas Bar No. 14607500
  rmowrey@lockelord.com
W. Scott Hastings
  Texas Bar No. 24002241
  shastings@lockelord.com
C. Scott Jones
  Texas Bar No. 24012922
  sjones@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile:  (214) 740-8800

ATTORNEYS FOR DEFENDANTS
OCWEN LOAN SERVICING, LLC AND
OCWEN FINANCIAL CORPORATION

## CERTIFICATE OF  CONFERENCE

      This motion is opposed.  The undersigned certifies that counsel for Ocwen and counsel for Relators personally conferred via email and telephone to discuss Relators' deficient interrogatory answers that are subject to this motion to compel.  On behalf of Ocwen, I sent an email to Relators' counsel on May 19, 2023, setting forth reasons why Ocwen believes that Relators' interrogatory answers were deficient.  In that email, I requested a telephone conference to discuss these issues. The parties held their meet-and-confer conference on May 30, 2023.  Thereafter, Relators agreed to supplement some interrogatories, but Relators explained that they were going to stand on their objections relating to the three interrogatories subject to this motion.  After Ocwen received Relators' supplemental interrogatory answers on June 13, 2023, which confirmed that Relators were not supplementing their answers to the interrogatories subject to this motion, Ocwen contacted the Court to request a discovery conference in accordance with Court's April 5, 2023 Scheduling Order, ECF 86 at 4.  The Court held that discovery conference on June 30, 2023, and concluded that the parties were at an impasse.  The Court approved Ocwen filing this motion.

*/s/ Robert T. Mowrey*
Robert T. Mowrey

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 12th day of July, 2023, a true and correct copy of the foregoing document was served on all counsel of record via electronic notification pursuant to the Federal Rules of Civil Procedure.


*/s/ Robert T. Mowrey*
Robert T. Mowrey

17