United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *ex rel.* JEAN-MARC EICHNER, *et al.*, § <br> § <br>    *Plaintiffs,* § <br> § <br> v. § <br> § <br> OCWEN LOAN SERVICING, LLC, *et al.* § <br> § <br>    *Defendants.* § | Civil Action No.  4:19-CV-524 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC's Motion to Compel Relators to Respond to Interrogatories 2, 3 & 4 (Dkt. #99). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

On July 15, 2019, Relators filed their Original Complaint under seal (Dkt. #1), alleging causes of action for presenting false or fraudulent claims to the government, making express and/or implied false certifications to the government, making or using false records or statements material to false or fraudulent claims, fraudulent inducement, and reverse false claims under 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G) (Dkt. #1 ¶¶ 221–28). More specifically, Relators allege various instances of misconduct that resulted in Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC violating the Federal Housing Administration ("FHA"), the Dodd-Frank Act, the Real Estate Settlement Procedures Act ("RESPA"), the Unfair, Deceptive, or

Abusive Acts or Practice Laws ("UDAAP" or "UDAP"), the Truth in Lending Act ("TILA"), Regulation Z, and Texas state law (*see generally* Dkt. #1). Furthermore, Relators allege that Defendants made false representations to the government regarding HAMP, which induced the government to enter Servicer Participation Agreements and incorporated Financial Instruments (*see generally* Dkt. #1). Additionally, Relators accuse the remaining defendants in this case of being vicariously liable for the actions of Defendants (Dkt. #1 at ¶ 2).

On December 10, 2021, the government opted to not intervene in the case. And, on December 14, 2021, the Court unsealed the case.

On April 18, 2023, Defendants served their First Set of Interrogatories (Dkt. #99, Exhibit 1 at pp. 5–12) on Relators. The interrogatories sought information relating to Relators' disclosures to the government under 31 U.S.C. § 3730(b)(2). On May 18, 2023, Relators served their Objections and Responses to Ocwen's First Set of Interrogatories (Dkt. #99, Exhibit 1 at pp. 14–23). Relators objected on the grounds that Defendants were seeking information protected from disclosure under the attorney-client privilege, common interest privilege, and work product doctrine. On May 30, 2023, counsel for the parties held a meet-and-confer conference. Afterwards, on June 13, 2023, Relators served their Supplemental Objections and Responses to Ocwen's First Set of Interrogatories (Dkt. #99, Exhibit 1 at pp. 27–34), raising similar objections.

On June 30, 2023, the Court held a teleconference regarding the parties' discovery dispute in which it granted Defendants leave to file a motion to compel (*see* Minute Entry dated June 30, 2023). Defendants then filed the pending motion on July 12, 2023. On July 19, 2023, Relators filed their response (Dkt. #101). On July 21, 2023, Defendants filed a reply (Dkt. #103). And, on July 27, 2023, Relators filed a sur-reply (Dkt. #104).

On September 19, 2023, Defendants notified the Court that Relators "still have not provided a privilege log reflecting any communications or other information that they are withholding on the basis of their privilege assertions" (Dkt. #108 at p. 4).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #20 at p. 5). Moreover, the Local Rules of the Eastern District of Texas ("Local Rules") provide further guidance, indicating that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and

3

information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection, certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment.

The Federal Rules of Civil Procedure follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on courts and parties to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1) advisory

committee's note to 2015 amendment. This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

Federal Rule of Civil Procedure 33 governs written interrogatories to parties. An interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). Rule 33 further requires that each interrogatory, "to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4).

## ANALYSIS

Relators bring this *qui tam* action pursuant to the False Claims Act ("FCA"). 31 U.S.C. § 3729(a)(1). "The [FCA] is designed to allow suits 'by private parties on behalf of the United States against anyone submitting a false claim to the government.'" *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)). The FCA "promot[es] private citizen involvement in exposing fraud against the government," while "prevent[ing] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *Id.* (quoting *Reagan*, 384 F.3d at 174).

Before filing a lawsuit under the FCA, a relator must provide the government with a written disclosure statement of "substantially all material evidence and information the person possesses . . . ." 31 U.S.C. § 3730(b)(2). "Disclosure statements serve the purpose of 'provid[ing]

5

the United States with enough information on the alleged fraud to be able to make a well-reasoned decision on whether it should participate in the filed lawsuit or allow the relator to proceed alone." *United States ex rel. Fisher v. JPMorgan Chase Bank, N.A.*, No. 4:16-CV-00395, 2020 WL 3265060, *3 (E.D. Tex. June 17, 2020) ("*Chase*") (quoting *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 555 (C.D. Cal. 2003)).

The FCA bars a relator from bringing a claim, however, if "substantially the same allegations or transactions in the action or claim were publicly disclosed" before the relator filed suit. *See id.* at *6 (citing 31 U.S.C. § 3730(e)(4)(a)). This is often called the "public-disclosure bar." *Id.* (citing *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017). But if the relator is an "original source," the relator can still bring a claim. *Id.* Under the FCA, an original source means:

> An individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(b).

With this background in mind, the Court will now turn to the interrogatories at issue in this motion.

## I. Interrogatory No. 2

Defendants contend that a response to Interrogatory No. 2 should be compelled because the interrogatory seeks information relevant to their defenses (*see* Dkt. #99 at p. 13). Interrogatory No. 2 asks Relators to:

> Identify each document by bates number that You (or anyone acting on your behalf) provided to the United States as part of your disclosures under 31 U.S.C. §3730(b)(2) related to this case, including as referenced on page 130 of the Complaint, and for each document state the date it was provided to the United States, how it was provided to the United States, and which Relator provided that document.

(Dkt. #99, Exhibit 1 at pp. 27–29). Defendants suggest that Relators will need to rely on the original source exception to overcome the public disclosure bar (*see* Dkt. #99 at pp. 11, 13). So, the argument goes, the information sought will enable Defendants to assess: (1) timing issues under the original source test; (2) "Relators' alleged contributions to the government . . . in light of existing publicly-disclosed information[;]" (3) "whether Relators materially added to the publicly-disclosed allegations against Ocwen[;]" and (4) "the government's knowledge for purposes of conducting a materiality analysis under [*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016)]" (Dkt. #99 at p. 13).

Relators argue in response that Interrogatory No. 2 impermissibly seeks to reveal portions of their disclosure statements because the work product doctrine protects all portions of a disclosure statement, including any attached documents (*see* Dkt. #101 at p. 11). Relators argue that the "disclosure of the identity of each document that Relators' counsel selected for inclusion in the disclosure statements would effectively disclose a portion of the disclosure statements themselves, as well as Relators' opinion work product" (Dkt. #101 at p. 12).

The work product doctrine generally prevents the discovery of two types of attorney work product—ordinary and opinion. *See Fisher*, 2015 WL 4609742 at *2. Ordinary work product consists of documents that are prepared in anticipation of trial or litigation. FED. R. CIV. P. 26(b)(3)(A); *id.* A party seeking discovery of such materials must establish: "(1) a substantial need of the privileged materials and (2) an inability to obtain the information through other means

7

without undue hardship." FED. R. CIV. P. 26(b)(3)(A); *id.* at *3. Opinion work product, on the other hand, consists of the "mental impressions, conclusions, or legal theories of a party's attorney" and "enjoys nearly absolute protection . . . discoverable only in 'rare and extraordinary circumstances.'" FED. R. CIV. P. 26(b)(3)(A); *id.* (citing *Bagley*, 212 F.R.D. at 559).

The Court has previously held that disclosure statements submitted to the government pursuant to the FCA "constitute at least ordinary work product for the purposes of the work product doctrine." *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2015 WL 4610284, at *3 (E.D. Tex. July 31, 2015). And "[t]he Fifth Circuit has not directly addressed whether FCA disclosure statements constitute opinion work product or ordinary work product." *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2015 WL 4609742, *3 (E.D. Tex. July 31, 2015) ("*Fisher*").

In light of its prior holding, the Court finds that Relators' disclosure statements, including the identity of each document that Relators' counsel selected for inclusion into each disclosure statement, constitute at least ordinary work product for the purposes of the work product doctrine. *See Homeward Residential, Inc.*, 2015 WL 4610284, at *3. While it is true that Interrogatory No. 2 seeks factual information, it also invariably seeks a portion of the disclosure statements themselves. Defendants have not offered any authority suggesting that the identity of enclosures or exhibits attached to a disclosure statement falls outside the bounds of ordinary work product protection. Thus, Defendants must show a substantial need to know the identity of the precise documents enclosed in each disclosure statement, along with an undue hardship in obtaining such information by other means. *See Fisher*, 2015 WL 4609742 at *3.

The Court finds that Defendants have failed to meet their burden because they have not shown a substantial need for the identity of each document included as part of their disclosure statements. Relators rightly identify other available sources of information that could allow Defendants to evaluate Relators' original source status. For example, Defendants could look to the allegations in the complaint, Relators' certification identifying the dates of disclosure, or the declarations Relators submitted with their responses to Defendants' motion to dismiss. Further, Relators have already provided the names of all material witnesses and all the documents in Relators' possession, custody, and control that were provided to the government before filing the lawsuit. These sources give Defendants the means to verify what Relators knew at the time of filing the lawsuit without disclosing the actual composition of the disclosure statements. *See Chase*, 2020 WL 3265060, at *6; *Fisher*, 2015 WL 4609742, at *3–4.

Similarly, the Court is unconvinced that Defendants have a substantial need for such information to assess materiality under *Escobar*. The Court's explanation on materiality in *Chase* is instructive:

> In [*Escobar*], the Supreme Court held that "compliance with a statutory, regulatory or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." The Supreme Court defined materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." In *Escobar*, the Court emphasized that the materiality standard is "demanding" and considered several relevant factors. Particularly relevant here, the Supreme Court noted that "if the Government pays a particular claim in full despite its *actual knowledge* that certain requirements were violated, that is very strong *evidence* that those requirements are not material." Twice, the Supreme Court specifically referenced the Government's actual knowledge as relevant—but not dispositive—to materiality.

*Chase*, 2020 WL 3265060, at *8 (alterations in original) (citations omitted) (quoting *Escobar*, 579 U.S. at 181, 192–95). So, while the government's actual knowledge of fraud is relevant to

materiality, the government's mere awareness of allegations of fraud is not. *See id.* at 8. Defendants have not explained how the information they seek would show actual knowledge of fraud on the part of the government, rather than the mere awareness of fraud allegations. Defendants' explanation is conclusory and bare, and the Court can only speculate on the disclosure statements' potential relevance to actual knowledge. Therefore, Defendants have not shown a substantial need on these grounds. *See id.* ("While the disclosure statements here may contain material information to an *allegation* of fraud under the FCA, Relators and the Government rightfully point out that the statements likely do not carry the depth of information which would impart *actual knowledge* on the Government.").

Defendants argue that it is entitled to sworn testimony comparable to what the relators produced in both *Chase* and *Fisher* (*see* Dkt. #99 at p. 12). It is not clear, however, that the relators in those cases ever answered an interrogatory like Interrogatory No. 2 nor identified the exact documents that were selected for inclusion in each respective disclosure statement. Accordingly, Defendants' comparison holds little weight and is not dispositive of the matter at hand.

Relators point out that Interrogatory No. 2 does not "merely seek basic factual information about when Relators disclosed documents to the government" and that Defendants could obtain non-privileged information about the documents using other discovery methods without asking which specific documents were referenced in each disclosure statement (Dkt. #104 at pp. 2–4). The point is well taken. Defendants could very well draft their interrogatories in a way that seeks only non-privileged factual information about the documents that Relators provided to the government. Likewise, Defendants could depose Relators on the same subject matter to assess the

merits of the original source exception. The availability of these discovery alternatives currently obviates any substantial need for the disclosure of ordinary work product.

Therefore, the Court finds that Defendants' motion to compel is denied on Interrogatory No. 2.

## II.     Interrogatory No. 3

Interrogatory No. 3 asks Relators to "[i]dentify each communication that [they] had with any representative of the United States as part of [their] disclosures under 31 U.S.C. § 3730(b)(2) related to this case" (Dkt. #99, Exhibit 1 at p. 29). According to Defendants' interrogatories, the word "identify," as applied to "oral communications," means to:

> state the name of the person making the communication and the name(s) of the person(s) present while the communication was made, and, where not apparent, the relationship of the person(s) present to the person making the communication; the date and place of communication; and a summary of the subject matter of the communication[.]

(Dkt. #99, Exhibit 1 at pp. 6–7).

Defendants contend that a response to Interrogatory No. 3 should be compelled because the interrogatory seeks "information comparable to what the relators voluntarily provided in *Chase*" (Dkt. #99 at p. 15). Defendants further contend that factual information on the "existence, dates, participants, and general subject matter of communications is not privileged" (Dkt. #99 at p. 16).

Relators argue in response that information responsive to Interrogatory No. 3 should be protected from discovery for substantially the same reasons as Interrogatory No. 2 (Dkt. #101 at p. 17). Additionally, because Interrogatory No. 3 purportedly seeks privileged information, Relators suggest that they need only produce a privilege log pursuant to Federal Rule of Civil Procedure

11

26(b)(5) (Dkt. #104 at p. 5). Relators claim that Defendants have refused to identify a date on which the parties may exchange privilege logs, so Relators have asked the Court to set a deadline for the exchange of privilege logs (Dkt. #104 at pp. 5–6).

The Court finds that Interrogatory No. 3 seeks privileged ordinary work product to the extent it asks for a summary of the subject matter of the § 3730(b)(2) communications. Such a question appears to plainly seek the discovery of the disclosure statements' content, so Defendants must establish a substantial need for such information. For the same reasons discussed *supra* for Interrogatory No. 2, the Court finds here that Defendants have failed to show a substantial need.

As for the remaining subparts incorporated into Interrogatory No. 3 via the definition of "identify," the Court finds that such questions do not seek information falling within the ambit of work product. They merely seek peripheral information surrounding the § 3730(b)(2) communications. Relators even concede that the existence of a communication is not in itself privileged (Dkt. #101 at p. 18). *See VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *21 (N.D. Tex. Nov. 8, 2021); *see also Zenith Ins. Co. v. Texas Inst. For Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) ("The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product."). Relators further indicate that they have already provided information regarding the timing of their communications with the government. Given that Relators provided such information without any qualms, the Court fails to glean any merit behind their refusal to provide such information in the form of an interrogatory response.

Therefore, the Court finds that Defendants' motion to compel should be granted on the incorporated subparts of Interrogatory No. 3 that do not ask for a summary of the subject matter of the § 3730(b)(2) communications. The motion is otherwise denied on Interrogatory No. 3.

### III. Interrogatory No. 4

Unlike the other two interrogatories at issue in this motion, Interrogatory No. 4 does not seek information relating to Relators' § 3730(b)(2) disclosure statements. Instead, Interrogatory No. 4 seeks information relating to any communications between Relators and the Office of Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"). Interrogatory No. 4 asks:

> If You (or anyone acting on your behalf) met with (or communicated with) the Office of Special Inspector General for the Troubled Asset Relief Program relating to Ocwen, Identify who participated in the meeting or communication, state the date of each such meeting or communication, Identify the documents (if any) you provided as part of such meeting or communication, and describe the substance of such meetings or communications.

(Dkt. #99, Exhibit 1 at p. 30). At this juncture, however, the Court cannot properly assess the merits of Relators' claim of privilege on such communications, or for that matter Defendants' substantial need for such information, because Relators have not yet provided a privilege log.[1] *See EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) ("[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim."). Under certain circumstances "[f]ailing to timely invoke privilege and/or failing to provide a privilege log can constitute waiver of the privilege." *Ferguson v. Sw. Reg'l PCR, LLC*, No. 5:22-CV-182-H, 2023 WL 4938091, at *8 n.7

---

[1] The Court notes that Interrogatories No. 2 and 3 differ from Interrogatory No. 4 in that they seek privileged information—the § 3730(b)(2) disclosure statements—on their face. *See Homeward Residential, Inc.*, 2015 WL 4610284, at *3.

13

(N.D. Tex. June 22, 2023) (citing *Arya Risk Mgmt. Sys., Pvt. Ltd. v. Dufossat Cap. P.R., LLC*, No. H-16-3595, 2017 WL 11635998, at *11 (S.D. Tex. Nov. 16, 2017)). Defendants do not argue that Relators have waived their claim of privilege, however. Moreover, it is apparent here that there was a mutual lack of cooperation between the parties in agreeing on a date to exchange privilege logs. Therefore, the Court finds that Defendants' motion to compel on Interrogatory No. 4 should be denied as premature without prejudice to Defendants' right to reurge the motion after review of the privilege log. The Court orders Relators to submit a privilege log no later than fourteen (14) days from the date of this Order.

## CONCLUSION

It is therefore **ORDERED** that Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC's Motion to Compel Relators to Respond to Interrogatories 2, 3 & 4 (Dkt. #99) is hereby **GRANTED in part** and **DENIED in part**.

Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC shall provide a supplemental response to Interrogatory No. 3 to the extent it does not ask for a summary of the subject matter of Relators' § 3730(b)(2) communications within fourteen (14) days from the issuance of this order.

It is further **ORDERED** that Relators shall produce to Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC a privilege log no later than fourteen (14) days from the issuance of this order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of February, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE