IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

UNITED STATES OF AMERICA,
ex rel. JEAN-MARC EICHNER, *et al.*,

      Plaintiff,

v.   Case No. 4:19-CV-00524-ALM

OCWEN LOAN SERVICING, LLC,
*et al.*,

      Defendants.
_____

UNITED STATES' MOTION TO INTERVENE IN PART
AND TO DISMISS IN PART PURSUANT TO 31 U.S.C. § 3730(c)(2)(A)

The United States moves to intervene in part and dismiss in part pursuant to 31 U.S.C. § 3730(c)(2)(A) of the False Claims Act (FCA).  As discussed in more detail below, the United States has good cause to intervene in part and is entitled to dismissal of certain FCA claims in Relator's Amended Complaint [Dkt. No. 114] under *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023), and the applicable standard of Fed. R. Civ. P. 41(a)(2).

Specifically, the United States seeks dismissal of the Amended Complaint to the extent that it asserts claims against any Defendant for violations of the FCA that accrued on or before February 17, 2017.  This dismissal will prevent Relators from

continuing to pursue in this litigation conduct that was dismissed with prejudice to the United States by this Court's May 19, 2017, Order in *United States ex rel. Fisher, et al. v. Ocwen Loan Servicing, LLC,* No. 4:12-CV-00543-ALM, Dkt. No. 593 (the "*Fisher* Dismissal Order," attached hereto as **Exhibit 1**). The United States' dismissal is not intended to prevent Relators from pursuing in this action alleged FCA violations of any named Defendant that accrued after February 17, 2017.

## BACKGROUND

### I. FCA Overview

The FCA, 31 U.S.C. §§ 3729-3733, imposes civil penalties and treble damages on any person or entity that (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," in violation of 31 U.S.C. § 3729(a)(1)(A); (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," in violation of § 3729(a)(1)(B); or (3) "knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government," in violation of § 3729(a)(1)(G). Civil suits to enforce the FCA may be brought either by the Attorney General, *id.* § 3730(a), or by a private person who files suit "for the person and for the United States Government" in the name of the

United States, *id.* § 3730(b)(1). The private person is known as a "relator" and the suit is called a *qui tam* action. *Id.* After a relator has filed a *qui tam* action, "[t]he Attorney General diligently shall investigate" to determine whether there has, in fact, been an FCA violation. *Id.* § 3730(a).

Following an investigation, the United States may intervene in the *qui tam* action. Where the United States intervenes, although the relator remains a nominal party, the Government assumes "the primary responsibility for prosecuting the action" and is not bound by any act of the relator. *Id.* § 3730(c)(1). As the party with primary responsibility over the action, the United States may proceed with the action, settle the case over the relator's objection, *id.* at § 3730(c)(2)(B), or dismiss the case over the relator's objection, *id.* § 3730(c)(2)(A). If the United States elects to decline to intervene, "the person bringing the action shall have the right to conduct the action." *Id.* § 3730(b)(4). But even after declining to intervene, the United States may still intervene "upon a showing of good cause," *id.* § 3730(b)(3). Regardless of whether the United States intervenes or declines to intervene in a *qui tam* action, the United States remains the "real party in interest," *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009), and is entitled to the damages and penalties recovered in the action minus a share that is paid to the *qui tam* relator, *id.* § 3730(d).

## II.   Relators' *Qui Tam* Allegations

Relators Jean-Marc Eichner and Brandon Loyd ("Relators") filed this *qui tam* action on July 15, 2019.  This action concerns the Department of Treasury's Home Affordable Mortgage Program (HAMP), which provided monetary incentives to encourage mortgage servicers and investors to modify the terms of residential mortgages to reduce distressed borrowers' monthly mortgage payments and help them avoid default, as well as an equivalent program established by the Federal Housing Administration (FHA) that provided incentives for modifying FHA-insured mortgages ("FHA-HAMP").

Generally, Relators allege that, from 2009 to 2019, Defendants Ocwen Loan Servicing, LLC, and Ocwen Financial Corporation (collectively, "Defendant Ocwen"), a residential mortgage servicer, violated the FCA by falsely certifying compliance with myriad laws and regulations governing servicing in order to participate in, and receive incentive payments as part of, the HAMP and FHA-HAMP programs.  In addition, Relators allege that additional defendants — hundreds of identified residential mortgage-backed securities ("RMBS") trusts comprised of mortgages serviced by Ocwen, and the entities (U.S. Bank, N.A., Deutcsche Bank National Trust Company, The Bank of New York Mellon, and Wells Fargo Bank, N.A.) that acted as trustees to those RMBS trusts (collectively, the "RMBS Trust Defendants") — are vicariously liable for Ocwen's alleged FCA

violations on the theory that Ocwen acted as the RMBS Trust Defendants' agent when it serviced the loans.

### III. Procedural History of this *Qui Tam* Action

The United States declined to intervene in this *qui tam* on December 10, 2021. Dkt. No. 16. Defendant Ocwen and the RMBS Trust Defendants moved to dismiss the Relators' Complaint [Dkt. Nos. 40 and 48], and on February 13, 2023, this Court denied both motions in full. Dkt. No. 70. All Defendants filed answers to the Relators' original Complaint on March 6, 2023 [Dkt. Nos. 75-79]. On October 23, 2023, Relators moved for leave to amend their Complaint [Dkt. No. 113]. On June 10, 2024, the Court granted Relators' motion [Dkt. No. 151], making the Relators' Amended Complaint [Dkt. No. 114] the operative one. Defendants filed answers to the Amended Complaint on June 24, 2024. [Dkt. Nos. 152, 153, 154, 155, and 156]. On September 11, 2024, the RMBS Trust Defendants filed a Motion for Partial Summary Judgment Based on *Res Judicata for* Conduct Through February 17, 2017. Dkt. No. 161.

### IV. The Litigation and Dismissal with Prejudice to the United States in *United States ex rel. Fisher, et al. v. Ocwen Loan Servicing, LLC*.

This Court has previously adjudicated and dismissed with prejudice to the United States the very same allegations Relators make here --- that Defendant Ocwen violated the FCA in connection with its participation in the HAMP and FHA-HAMP program from 2009 to February 17, 2017, in the earlier *qui tam* action,

5

*United States ex rel. Fisher, et al.* v. *Ocwen*, 4:12-CV-543-ALM (E.D. Tex.) (the "*Fisher* Case"), brought by different relators than the Relators here. In the *Fisher* Case, the United States declined to intervene, and ultimately Defendant Ocwen and the *Fisher* relators reached a settlement (the "*Fisher* Settlement," attached hereto as **Exhibit 2**) on February 17, 2017, resolving Ocwen's potential FCA liability for $15 million. The United States did not sign that settlement. *Id.* But, in accordance with FCA, 31 U.S.C. § 3730(b)(1), which prohibits a relator from dismissing a *qui tam* action without the United States' written consent, the United States filed with the Court its consent to dismissal. *See Fisher* Case, Dkt. No. 584 ("*Fisher* U.S. Consent to Dismissal," attached hereto as **Exhibit 3**). In that filing, the United States consented to dismissal with prejudice to the United States of the "Covered Conduct," as defined in the February 17, 2017, *Fisher* Settlement, stating that such dismissal was "in the interest of the United States." *Id.* Consistent with the United States' filing, this Court "dismissed with prejudice as to the United States of America with respect to any claims asserted in this action [under the FCA] for the Covered Conduct, as that term is defined in the [*Fisher* Settlement]" on May 19, 2017. *See* Fisher Dismissal Order.

The *Fisher* Case and this case involve identical allegations about Defendant Ocwen's conduct from 2009 through February 17, 2017. Relators here expand upon those allegations in two ways. First, the RMBS Trust Defendants named here were

not parties in the *Fisher* Case, which did not assert vicarious liability claims against any party based on Defendant Ocwen's alleged FCA violations. Second, this case alleges misconduct by Defendant Ocwen after February 17, 2017, and asserts vicarious liability claims against the RMBS Trust Defendants for those claims.

As discussed in more detail below, this Motion seeks the dismissal of Relators' claims against all defendants — Defendant Ocwen and the RMBS Trust Defendants — for the time period (2009 through February 17, 2017) of the claims against Ocwen that this Court dismissed with prejudice to the United States in the *Fisher* Case.

## ARGUMENT

### I. The United States Has Good Cause to Intervene for the Purpose of Dismissal

The Supreme Court held in *Polansky* that if the United States wishes to dismiss a *qui tam* suit pursuant to § 3730(c)(2)(A), it must first intervene and become a party. *Polansky*, 599 U.S. at 430-31. The FCA provides that the United States may intervene in a *qui tam* suit after declining upon a showing of "good cause." 31 U.S.C. § 3730(c)(3). In its decision that the Supreme Court affirmed "across the board," the Third Circuit explained that "showing 'good cause' is neither a burdensome nor unfamiliar obligation," but instead "a uniquely flexible and capacious concept, meaning simply a legally sufficient reason." *United States ex*

7

*rel. Polansky v. Executive Health Resources, Inc.,* 17 F.4th 376, 387 (3d Cir. 2021), *aff'd* 599 U.S. 419 (2023).

This flexible standard for evaluating "good cause" applies even at a later stage in a *qui tam* litigation. *Polansky*, 17 F.4th at 381–82 (noting that "the parties and the District Court invested considerable time and resources in the case."). In ultimately upholding dismissal in *Polansky*, the Supreme Court recognized that "the Government's interest in the suit is the same [at any stage] — and is the predominant one." *Polansky,* 599 U.S. at 434. *Qui tam* suits are "brought in the name of the Government" and "the injury they assert is exclusively to the Government." *Id.* at 424–25 (citing § 3730(b)(1)).

In this case, the United States has good cause to intervene because it seeks to dismiss in part Relators' Amended Complaint. As the Third Circuit concluded in *Polansky*, the Government's request to dismiss the suit "itself establishes good cause to intervene." *Polansky,* 599 U.S. at 429 n.2; *see United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC,* --- F. Supp. 3d ----, No. 1:21-CV-00008, 2024 WL 3812294, at *6 (E.D. Tex. Aug. 9, 2024) ("the Government's desire to dismiss the case . . . constitutes good cause to intervene"); *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *2 (2d Cir. Aug. 21, 2023) (government's (c)(2)(A) motion amounted to a motion to intervene as well); *United States ex rel. Carver v. Physicians Pain Specialists of Alabama, P.C.*, 2023 WL

4853328, at *6 n.4 (11th Cir. July 31, 2023) (ruling that "the same grounds that support dismissal also provide good cause to intervene").

## II. Legal Standard for the United States' Motion to Dismiss in Part Relator's FCA Claims

Once the United States intervenes in a *qui tam* action, the FCA authorizes it to dismiss such an action, even if the relator objects: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A).

The Supreme Court's 2023 decision in *Polansky* held that district courts should apply the standard of Rule 41(a) when evaluating a motion to dismiss under § 3730(c)(2)(A). 599 U.S. at 424. ("We . . . hold that in handling such a motion, district courts should apply the rule generally governing voluntary dismissal of suits: Federal Rule of Civil Procedure 41(a)"). If the United States moves to dismiss before the defendants have served an answer or a motion for summary judgment, then dismissal may be accomplished merely by the filing of a "notice of dismissal." Fed. R. Civ. P. 41(a)(1). However, where, as here, the United States moves to dismiss after the defendant has served an answer, then Rule 41(a)(2) controls, *Polansky*, 599 U.S. at 424, and the Court may dismiss the action "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

9

In *Polansky*, the Supreme Court held that "(2)(A) motions will satisfy Rule 41 in all but the most exceptional cases." 599 U.S. at 437. When considering the government's (c)(2)(A) motion, "the Government's views are entitled to substantial deference" because "[a] qui tam suit . . . is on behalf of the and in the name of the Government . . . [and] alleges injury to the Government alone." *Id*. The Supreme Court indicated that the "proper terms" assessment of Rule 41(a)(2) is met so long as the United States "[has given] good grounds for thinking that this suit would not do what all *qui tam* actions are supposed to do: vindicate the Government's interests. Absent some extraordinary circumstance, that sort of showing is all that is needed for the Government to prevail on a (2)(A) motion to dismiss." *Id.* at 438.

Notably, the United States need only articulate a defensible reason for dismissal, because as the Court explained, a relator's "competing assessment" of the merits or value of the case "could not outweigh the Government's reasonable view of the suit's costs and benefits." *Id.* The "minimal showing" requirement makes sense because a *qui tam* claim "belongs to the United States, and the statute expressly says that the Government may dismiss it 'notwithstanding' the relator's objection." Order, *U.S. ex rel. Vanderlan*, No. 3:15-cv-00767-DPJ, Dkt. No. 192, at p. 5 (S.D. Miss. Apr. 12, 2024) (hereinafter, "*Vanderlan* Order," attached hereto as **Exhibit 4**). There is no requirement that the Government prove conclusively that a relator's case lacks merit, nor is dismissal under (2)(A) the same thing as a ruling on the merits.

10

*United States ex rel. Doe v. Credit Suisse AG*, No. 22-1054, 2024 WL 3974986, at *5 (4th Cir. Aug. 29, 2024) (affirming dismissal without considering the merits of the relator's case, stating: "The government does not need to disprove the validity of an FCA claim in order to dismiss it since the government has discretion to control litigation brought on its behalf and in its name.").

In *Polansky*, relator alleged that his employer was defrauding the government by charging inpatient rates for what should have been outpatient services. 599 U.S. at 428. The government declined to intervene, and relator proceeded with the case, which spent years in discovery. *Id.* The government later reconsidered its assessment as to whether the case should go forward and, after deciding "that the varied burdens of the suit outweighed its potential value," moved to dismiss relator's claims. *Id.* In moving to dismiss, the government cited, *inter alia*, the costs of future litigation and the low likelihood of success on the merits. Although the relator disagreed with the government's assessment of the case and maintained that the government was "leaving billions of dollars of potential recovery on the table," the district court granted the government's motion and the Supreme Court ultimately affirmed, explaining it was not even a "close call." *Id.* at 438.

**II. The United States Is Entitled to Dismiss the FCA Claims that Accrued Before February 17, 2017.**

Here, as in *Polansky*, the government has good grounds to dismiss the FCA *qui tam* claims in this action for conduct prior to February 17, 2017. The United

11

States has evaluated the probability that these previously settled, pre-2017 claims will succeed against the burdens to the United States of Relators' continued pursuit of the pre-2017 claims and concluded that dismissal of those claims under § 3730(c)(2)(A) and *Polansky* is in the interest of the United States. The United States has also considered that the pre-2017 claims were publicly and extensively litigated in the *Fisher* Case before Relators initiated this lawsuit. The United States respectfully submits that together these considerations meet the highly deferential standard for dismissal under Rule 41(a)(2).

As to the first consideration, Relators' pre-2017 claims against the RMBS Trust Defendants and Defendant Ocwen re-assert claims that have already been publicly and extensively litigated and resolved through settlement in the United States' favor in the *Fisher* Case. Relators' pre-2017 claims against the RMBS Trust Defendants are premised solely on the conduct Defendant Ocwen previously settled for $15 million. *See Fisher* Settlement, p. 3, ¶ 1. Information about that conduct is in the public domain, and Relators do not bring additional knowledge to the pre-2017 portion of their case against Defendant Ocwen or the RMBS Trust Defendants, just the allegation that the RMBS Trust Defendants are legally responsible. The copy-cat nature of Relators' pre-2017 claims supports dismissal, particularly when considered alongside the low probability that those claims will succeed and the burdens this case has created, and will continue to create for the United States.

As to the second consideration, Relators' probability of success, all Defendants have argued that the affirmative defense of *res judicata* applies. *See* Memorandum and Order, Dkt. No. 70, pp. 4-5.[1] This Court declined to address *res judicata* in response to the Defendants' motions to dismiss. The RMBS Trust Defendants' pending motion for partial summary judgment once again argues that *res judicata* applies to Relators' pre-2017 claims against them. *See* Dkt. No. 161.

Relators do not deny that they are precluded from re-litigating the pre-2017 claims against Defendant Ocwen by the *Fisher* Dismissal, and Relators admit that their only claims against the RMBS Trust Defendants for the pre-2017 period are vicarious liability claims based on Defendant Ocwen's conduct. To succeed against the RMBS Trust Defendants' *res judicata* defense, Relators would, among other hurdles, have to address whether *res judicata* bars vicarious liability claims based on previously litigated conduct and why a consent judgment like the *Fisher* Dismissal Order is not entitled to full *res judicata* effect.

As to the third consideration, the United States' burdens associated with Relators' pursuit of the pre-2017 claims have been unusually high and may continue to grow. This case, and Relators' early claims in particular, have generated requests for extensive discovery to numerous federal agencies, including the Department of

---

[1] Each Defendant has also re-asserted *res judicata* as an affirmative defense in its answer to the Amended Complaint. *See* Dkt No. 152, p. 49; Dkt No. 153, p. 49; Dkt. No. 154, p. 49; Dkt. No. 155, p. 49; Dkt. No. 156, p. 46.

Justice, which have been and will continue to be burdensome. In addition, as this case moves past discovery and into summary judgment and trial, the numerous complex FCA legal issues implicated by the claims and defenses in this case will be burdensome for the United States to monitor and to address, as needed, by filing statements of interest. The government has determined that these burdens outweigh any benefit of the continued litigation of the pre-2017 claims.

**IV.     No In-Person Hearing is Necessary**

In *Polansky*, the Court did not specify what procedures would satisfy the requirement of a "hearing" under Section 3730(c)(2)(A) and did not require an in-person hearing in all matters. One Circuit Court has already ruled post-*Polansky* that a "hearing" encompasses a hearing on written papers. *Brutus Trading,* 2023 WL 5344973, at 2-*3 (rejecting relator's argument that an in-person hearing is required by Section 3730(c)(2)(A), stating that "the district court met the hearing requirement by carefully considering the parties' written submissions"). Moreover, as the court in *Vanderlan* recently held, dismissal does not require that the Government "present evidence or that an evidentiary hearing is required," nor does it create a right to discovery. *See Vanderlan Order*, Exhibit 4, at pp. 7-8; *see also Ventavia*, 2024 WL 3812294, at *9 ("an evidentiary hearing is not required by 31 U.S.C. § 3730 (c)(2)(A)"); *Credit Suisse AG,* 2024 WL 3974986, at *4 ("a live,

in-person court hearing is not required to satisfy the 'hearing' requirement of Section 3730(c)(2)").

Moreover, an in-person hearing would not aid the Court in adjudicating the Government's motion to dismiss in this case. In *Polansky*, the Supreme Court suggested that a hearing might establish a constitutional floor, inquiring into any credible allegations that dismissal might "violate the relator's rights to due process or equal protection," but did not elaborate on what would constitute such a violation. *Polansky*, 599 U.S. at 436 n.4. Those types of constitutional concerns clearly are not present in this case. Accordingly, no hearing is required in this matter. *Id.; see Brutus Trading, LLC*, 2023 WL 5344973, at *3; Order, *U.S. ex. rel. Guglielmo v. Leidos, Inc., et al.*, No. 19-1576, Dkt. No. 22 (D.D.C. Feb. 20, 2024), attached hereto as **Exhibit 5** (granting the United States' motion to dismiss without an in-person hearing).

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that, finding the United States had good cause to intervene in part, the Relators' claims against any Defendant claims for violations of the FCA that accrued on or before February 17, 2017, are dismissed pursuant to 31 U.S.C. § 3730(c)(2)(A).

Dated: September 16, 2024             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DAMIEN M. DIGGS
United States Attorney
Eastern District of Texas

By:   /s/ *Kelly E. Phipps*
JAMIE ANN YAVELBERG
SARA McLEAN
KELLY E. PHIPPS (DC Bar No. 1000687)
U.S. Department of Justice, Civil Division
175 N St., NE
Washington, DC 20002
(202) 353-1284
kelly.e.phipps@usdoj.gov

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
(903) 590-1400
James.Gillingham@usdoj.gov
Texas State Bar # 2406529

*Attorneys for the United States*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF to all parties, on this 16th day of September, 2024.

*/s/ Kelly E. Phipps*
Kelly E. Phipps
Trial Attorney