# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | § | |
| JEAN-MARCH EICHNER, *et al.* | § | |
| | § | |
| *Plaintiffs,* | § | Civil Action No. 4:19-cv-524 |
| v. | § | Judge Mazzant |
| | § | |
| OCWEN LOAN SERVICING, LLC, *et al.* | § | |
| | § | |
| *Defendants.* | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is the United States' Motion to Intervene in part and to Dismiss in part pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #163) (the "Government's Motion"). Also pending before the Court are the following Motions, each of which is impacted by the result of the Court's decision on the Government's Motion (Dkt. #163). These Motions are:

1.  The Trust Defendants' Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims based on Conduct through February 17, 2017 (Dkt. #161);

2.  The Trust Defendants' Motion for Partial Stay Pending Resolution of United States' Motion to Intervene in part and to Dismiss in part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #171);

3.  The Relators' Rule 56(d) Motion to Defer the Court's Ruling on Trust Defendant's Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct Through February 17, 2017 (Dkt. #183); and

4.  The Trust Defendants' Motion for Leave to File Sur-Reply in Support of United States' Motion to Intervene in Part and to Dismiss in Part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #197).

After considering each Motion, the relevant pleadings, and the applicable law, the Court determines that:

1.  The United States' Motion to Intervene in part and to Dismiss in part pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #163) should be **GRANTED**;

2. The Trust Defendants' Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims based on Conduct through February 17, 2017 (Dkt. #161) should be **DENIED as moot**;

3. The Trust Defendant's Motion for Partial Stay Pending Resolution of United States' Motion to Intervene in part and to Dismiss in part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #171) should be **DENIED as moot**;

4. The Relators' Rule 56(d) Motion to Defer the Court's Ruling on Trust Defendant's Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct Through February 17, 2017 (Dkt. #183) should be **DENIED as moot**; and

5. The Trust Defendants' Motion for Leave to File Sur-Reply in Support of United States' Motion to Intervene in Part and to Dismiss in Part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #197) should be **GRANTED**.

## BACKGROUND

This is a *qui tam* action. The principal controversy at hand is whether the United States (the "Government"), having previously declined to intervene during the seal period, should now be permitted to intervene and dismiss a portion of the claims Relators have pursued. The Court begins with a brief recitation of the factual background before turning to the procedural history. Then, the Court takes up the controversies before it.

### I. Factual Background

As the Court has noted previously, this case sits at the edge of the 2008 housing crisis in the United States, which was partially precipitated by predatory lending practices and mortgage fraud (*See* Dkt. #70).[1] As home prices plunged, foreclosures increased, leaving homeowners in a lurch with negative equity in their homes and no option to sell or refinance. To cure the chaos that ensued, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA").

---

[1] The factual background of this case is more fully explained in the Court's prior Memorandum Opinion and Order (Dkt. #70). The Court repeats it here for context, but notes that the underlying facts do not weigh on the issues at hand. Unless otherwise indicated, the facts contained in this Section are found in the Court's prior Memorandum Opinion and Order (Dkt. #70).

The Home Affordable Modification Program ("HAMP)—a voluntary program under EESA administered by the Treasury Department—provided homeowners with affordable modifications to mortgage loans in an effort to reduce avoidable foreclosures. Specifically, HAMP sought to relieve homeowners from their economic burdens by lowering their mortgage payments to 31% or less of their gross monthly income. Investors received payments, as well as a guarantee that no mortgage modification would yield a mortgage value less than the net-present value of the property. In consideration of this arrangement, mortgage servicers would not only receive their annual servicing fees but would also receive HAMP incentive payments to complete HAMP modifications. Upon each modification, the servicer would become entitled to $1,200–$2,000, depending on the length of the mortgage's delinquency.

Ocwen were and/or are mortgage loan servicing agents for hundreds of trusts. The remainder of Defendants served as trustees of those trusts. Ocwen enrolled in HAMP in 2009, after which it promptly and expressly certified its compliance with HAMP guidelines and applicable federal laws in its signing of the initial Servicer Participation Agreement ("SPA"). The SPA named Ocwen as the servicer and Fannie Mae, solely as Financial Agent of the United States, as the administration. The parties signed a Financial Instrument that same day, which included representations, warranties, and covenants that Ocwen had to make to participate in HAMP. The SPA fully incorporates the Financial Instrument. In 2010, Ocwen signed an Amended SPA.

To receive HAMP payments, Ocwen made annual certifications. In the executed SPAs, Ocwen expressly represented four things: (1) that it was in compliance with HAMP's terms and guidelines; (2) that it was in compliance with all applicable laws and requirements; (3) that it created and maintained an effective HAMP program and committed the resources needed to

employ sufficiently trained, experienced personnel with the resources necessary to provide quality service to homeowners; and (4) that it had adequately documented and monitored its compliance and immediately reported to the Government any credible evidence of material violations of these certifications. Ocwen had a continuing obligation to expressly certify its continued compliance with these terms and conditions on each annual certification.

## II.    Procedural Background

On July 15, 2019, Relator Jean-Marc Eichner and Relator Brandon Loyd (collectively, "Relators") filed their Original Complaint under seal (Dkt. #1). It asserted causes of action for: (1) presenting false or fraudulent claims to the Government; (2) making express and/or implied false certifications to the Government; (3) making or using false records or statements material to false or fraudulent claims; (4) fraudulent inducement; and (5) reverse false claims under 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G) (Dkt. #1 at pp. 123–30). Relators allege that Ocwen engaged in misconduct that violated Federal Housing Administration ("FHA"), the Dodd-Frank Act, the Real Estate Settlement Procedures Act ("RESPA"), the Unfair, Deceptive, or Abusive Acts or Practice Laws ("UDAAP" or "DAP"), the Truth in Lending Act ("TILA"), Regulation Z, and Texas state law (*See generally* Dkt. #1). Relators' Original Complaint also alleges that Ocwen made false representation to the Government regarding their HAMP compliance, which induced

the Government to enter SPA's (*See generally* Dkt. #1). Finally, Relators claim that the Trust Defendants[2] are vicariously liable for Ocwen's alleged bad acts (Dkt. #1 at p. 1).

During the seal period (which was extended several times), the Government decided to abstain from intervening in the case (Dkt. #16; Dkt. #17). Accordingly, on December 14, 2021, the Court unsealed the matter (Dkt. #17).

After seeking leave, Relators filed their first Amended Complaint (Dkt. #113; Dkt. #114). As their Motion for Leave states, Relators' Amended Complaint leaves "unchanged" the basis of their Complaint (Dkt. #113 at p. 2). But Relators' Amended Complaint deviates from their Original Complaint in three ways: (1) it "conforms the allegations of the [C]omplaint to the discovery [Relators] received . . . from the Trustee Defendants"; (2) it removes "The Bank of New York Mellon Corporation f/k/a The Bank of New York Company, Inc. ("BNYMC") as a defendant"; and (3) it "removes allegations related to implementation of the Home Affordable Modification Program by the Veteran's Administration, known as 'VA-HAMP,' in an effort to streamline the case" (Dkt. #113 at p. 1).

After various discovery disputes ensued, on September 11, 2024, the Trust Defendants filed their Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct through February 17, 2017 (Dkt. #161). After obtaining an extension of time to respond,

---

[2] The following defendants are referred to collectively as the "Trust Defendants": Defendants U.S. Bank National Association solely in its capacity as Trustee on behalf of certain Residential Mortgage-Backed Securities Trust Defendants; Deutsche Bank National Trust Company, solely in its capacity as Trustee on behalf of certain Residential Mortgage-Backed Securities Trust Defendants; the Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, National Association solely in its capacity as Trustee on behalf of certain Residential Mortgage-Backed Securities Trust Defendants; The Bank of New York Mellon f/k/a The Bank of New York solely in its capacity as Trustee on behalf of certain Residential Mortgage-Backed Securities Trust Defendants; and Wells Fargo Bank, N.A., solely in its capacity as Trustee on behalf of certain Residential Mortgage-Backed Securities.

Relators filed a sealed Response in Opposition on November 1, 2024 (Dkt. #167; Dkt. #182). The Trust Defendants then filed their Reply (Dkt. #184). Relators sought an extension of time to file a sur-reply, which the Court granted (Dkt. #187; Dkt. #190). Relators filed their sealed Sur-Reply in opposition to the Motion for Partial Summary Judgment on December 4, 2024 (Dkt. #195).

The basis of the Motion for Partial Summary Judgment is tethered to another case involving Ocwen, which the Court resolved by Final Judgment after settlement in May of 2017: *United States v. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543 (E.D. Tex. May 19, 2017) ("*Fisher*"). *Fisher* was a similar *qui tam* action against Ocwen based on alleged HAMP misconduct that occurred between April 16, 2009, and February 17, 2017 (*Fisher*, Dkt. #593).[3] The Court dismissed those violations with prejudice after settlement (*Fisher*, Dkt. #593; Dkt. #163-2). Now, through their Motion for Partial Summary Judgment, the Trust Defendants argue that, because this action alleges that the Trust Defendants are vicariously liable under the False Claims Act ("FCA") for Ocwen's conduct that partially occurred in the same time period as *Fisher* (the "*Fisher* Period"), Relators' *Fisher* Period claims are barred by *res judicata* (Dkt. #161 at p. 6).

After the Trust Defendants filed their Motion for Partial Summary Judgment but before Relators filed their Response, the Government filed the principal Motion before the Court—its Motion to Intervene in Part and to Dismiss in Part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (a provision of the FCA) (Dkt. #163). Through it, the Government seeks to intervene in this action as to the claims that derive from the *Fisher* Period and to dismiss those claims (Dkt. #163 at pp. 1–2). Unsurprisingly, both the Trust Defendants and Ocwen support the Government's Motion

---

[3] For purposes of clarity, the Court refers to the 4:12-cv-543 action as "*Fisher*" and will refer to the *Fisher* docket as (*Fisher*, Dkt. # [ ]). The Court cites the docket in this action, 4:19-cv-524, as (Dkt. # [ ]).

(Dkt. #179; Dkt. #180). Relators, on the other hand, oppose the Government's Motion (Dkt. #181). As explained *infra*, Relators dispute the propriety of the Government's request to intervene and dismiss wholesale on both substantive and procedural grounds. The Government filed its Reply (Dkt. #196). Relators then filed their Sur-Reply (Dkt. #201). After seeking leave, the Trust Defendants filed their Sur-Reply (Dkt. #197; Dkt. #198). The Court has yet to grant Trust Defendants leave. Relators responded, opposing the Trust Defendants' request to file a Sur-Reply (Dkt. #202). The Trust Defendants filed their Reply to Relator's opposition to the Trust Defendants' request for leave (Dkt. #203), and Relators filed a Sur-Reply (Dkt. #204). On April 22, 2025, the Government filed a Notice of Supplemental authority to notify the Court of a recent Fifth Circuit case that directly answers particular procedural questions associated with dismissal of *qui tam* claims (Dkt. #224). Relators did not respond.

On October 7, 2024, the Court held a telephonic conference. During that call and after entertaining some argument regarding the Government's Motion, the Court directed the Trust Defendants to file a written motion for stay if they so desired. They did. On October 11, 2024, the Trust Defendants filed a Motion for Partial Stay Pending Resolution of the Government's Motion (Dkt. #171). Through it, the Trust Defendants seek a stay of all discovery and proceedings related to the *Fisher* Period pending resolution of the Government's Motion (Dkt. #171 at p. 2). Relators then filed an Unopposed Motion for Extension of Time to Respond to the Trust Defendants' Motion for Partial Stay (Dkt. #173), which the Court granted (Dkt. #174). The Government then filed a Response in support of a partial stay (Dkt. #175). Relators then filed their Response in opposition (Dkt. #176). The Trust Defendants replied (Dkt. #177), and the Relators filed their Sur-Reply (Dkt. #178).

Separately, on November 1, 2024, Relators filed a Rule 56(d) Motion to Defer the Court's Ruling on the Trust Defendants Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct through February 17, 2017 (Dkt. #183). The Trust Defendants responded in opposition (Dkt. #191), and Relators replied (Dkt. #192). The Trust Defendants then filed their Sur-Reply (Dkt. #194).

The Court treats the Government's Motion to Intervene in Part and Dismiss in Part (Dkt. #163) as the principal motion for purposes of this Order because it controls the disposition of the remainder of those pending, except for the Trust Defendants' Motion for Leave to file a Sur-Reply to the Government's Motion (Dkt. #197; Dkt. #198). Because any argument raised in the Trust Defendants' Sur-Reply may bear on the Court's consideration of the Government's Motion to Intervene in Part and Dismiss in Part, the Court considers that Motion first (Dkt. #197; Dkt. #198). Then, the Court will consider the Government's Motion (Dkt. #163). As explained below, the Government's request for partial intervention and dismissal should be granted. After so concluding, the Court briefly explains why the remaining Motions should be denied as moot.

## LEGAL STANDARD

The Court begins with the legal standard applicable to the Government's Motion (Dkt. #163). Once more, this is a *qui tam* action arising under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733. The FCA "imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023). The FCA permits "a unique public-private [enforcement] scheme." *Id.* at 425. Under the FCA, one of two parties may file suit: the Government, or a private party, known as a "relator." *See* 31 U.S.C. § 3730. When a private party sues under the FCA, that action

is called a *qui tam* action. *Polansky*, 599 U.S. at 424. *Qui tam* actions are "'brought in the name of the Government.'" *Id.* (quoting 31 U.S.C. § 3730(b)(1)). That a relator—rather than the Government—initiates suit does not change the core injury upon which the action is predicated; the injury "asserted is exclusively to the Government." *Id.*

Upon a relator's filing of an FCA claim, it "remains under seal for at least sixty days." 31 U.S.C. § 3730(b) (cleaned up). This is sometimes referred to as the "seal period." *See, e.g.*, *Polansky*, 599 U.S. at 425. During the seal period, which may be extended for "good cause," the Government obtains the relator's complaint, as well as any supporting "material evidence." 31 U.S.C. §§ 3730(b)(2), (3). The Government then determines whether it wishes to "intervene and proceed with the action." *Id.* Should the Government elect to pursue its statutory right of intervention, "the relator loses control: the action then 'shall be conducted by the Government,' though the relator can continue as a party in a secondary role." *Polansky*, 599 U.S. at 425 (quoting 31 U.S.C. §§ 3730(b)(4)(A), (c)(1)). If the Government opts to abstain from intervention, however, the relator maintains the "'right to conduct the action.'" *Id.* (citing 31 U.S.C. § 3730(b)(4)(B)).

But the Government's decision with respect to intervention during the seal period does not bind its hands forever. "The Government, after all, is a 'real party in interest' in the *qui tam* action." *Id.* (citing *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009)). Accordingly, the FCA permits the Government to intervene "after the seal period ends, so long as it shows good cause to do so." *Id.* (citing 31 U.S.C. § 3730(c)(3)).

The question in such cases is whether the Government has satisfied its burden to show "good cause." *See* 31 U.S.C. § 3730(c)(3). Most recently, the Supreme Court "shed significant light on the interplay between the Government's right to intervene after the seal period ends and

the Government's right to dismiss the case notwithstanding the relator's objections" in *Polansky*. *United States ex rel. Jackson v. Ventavia Research Group, LLC*, 744 F. Supp. 3d 676, 685 (E.D. Tex. 2024) (citing *Polansky*, 599 U.S. at 423–39). As a court in this District has recognized, although *Polansky* "did not evaluate the good cause standard, it affirmed the Third Circuit's underlying ruling 'across the board' and 'in all respects.'" *Id.* (quoting *Polansky*, 599 U.S. at 429, 439). "And while the Government's satisfaction of the good cause standard was not challenged by the relator in *Polansky*, and, as a result, not addressed in depth by the Supreme Court, the Supreme Court repeated the Third Circuit's explanation of the good cause standard in a neutral—if not positive— manner." *Id.* (citing *Polansky*, 599 U.S. at 429, n.2). "Specifically, the Supreme Court recited the Third Circuit's explanation that 'showing good cause is neither a burdensome nor unfamiliar obligation,' but rather 'a uniquely flexible and capacious concept, meaning simply a legally sufficient reason.'" *Id.* (quoting *Polansky*, 599 U.S. at 429, n.2). Thus, parallel to Judge Truncale's decision in *Jackson*, the Court adopts *Polansky*'s recitation of the Third Circuit's conception of the good cause standard as controlling. *Jackson*, 744 F. Supp. 3d at 686.

## ANALYSIS

Before the Court resolves the principal Motion, it must first ventilate the arguments raised by the parties. But to fully perform that prefatory matter, the Court must first address The Trust Defendants' Motion for Leave to File Sur-Reply in Support of the Government's Motion (Dkt. #197). Accordingly, the Court's analysis proceeds in three parts. First, the Court addresses the Trust Defendants' Motion for Leave (Dkt. #197). Second (and with all relevant materials before it) the Court considers the Government's Motion (Dkt. #163). Third and finally, the Court resolves the remaining pending motions that turn on the resolution of the Government's Motion.

## I.    The Trust Defendants' Motion for Leave

The Trust Defendants seek leave of court to file a sur-reply in support of the Government's Motion to Intervene (Dkt. #197). Relators oppose (Dkt. #202). According to Relators, the Trust Defendants' request for leave is "a disguised request for leave to file an untimely reply brief without good cause" which was unaccompanied by fidelity to the Court's meet-and-confer requirements (Dkt. #202 at p. 1). *See* Local Rule CV-7(h)–(i). Relators also claim that the Trust Defendants have no right to file a sur-reply because "they seek to directly address the arguments raised in Relators' Opposition [to the Government's Motion] to the extent not already addressed in the Government's Reply" (Dkt. #202 at p. 1) (internal citation omitted).

The Trust Defendants replied to Relators' opposition, arguing that, given the unique procedural posture of this case, good cause exists to allow their Sur-Reply and that they acted in good faith (Dkt. #203 at p. 1). The Trust Defendants point out that they filed their Motion for Leave "more than ten days before Relators' sur-reply deadline" (Dkt. #203 at p. 3). Further, they claim that they did attempt to confer with Relators prior to filing their Motion, but that those efforts did not yield any fruit, seemingly because the Relator's opposition was already clear prior to their attempt to seek leave (Dkt. #203 at p. 3).

In their Sur-Reply, Relators stand firm. They argue that the Trust Defendants do not dispute the notion that their proposed Sur-Reply "is actually an unauthorized reply since it responds to the arguments made in Relators' [R]esponse in opposition to the Government's Motion" (Dkt. #204 at p. 1). Further, Relators argue that, because the "Local Rules do not permit the filing of replies by non-movants or sur-replies by parties that are supporting (rather than responding to) a pending Motion[,]" the Court should deny the Trust Defendants' request for leave (Dkt. #204 at p. 1). Finally, they maintain that the Trust Defendants' request is untimely and

that the Trust Defendants' "wholly failed to comply with the Court's meet-and-confer requirements" (Dkt. #204 at p. 1).

The Court notes that Relator's fervent, lengthy opposition to the Trust Defendants' request for leave is jarring, but not new. Over the course of this litigation, in the matter now before the Court and others the Court has yet to address, the parties have accused each other of misconduct in all forms. Rules matter. But the issues are the issues, and the arguments are the arguments. The Court's fundamental focus at this juncture is to ensure that all parties have a fair forum to articulate their positions so that the Court may achieve the right result in this matter. This ancillary bickering only detracts from the weighty questions before the Court today. The Court retains inherent discretion over its docket and the application of its Local Rules. *Edwards v. Cass Cty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990) ("The district court has broad discretion in controlling its own docket"). The Court exercises that discretion to grant the Trust Defendants the leave that they seek. Accordingly, the Trust Defendants' Sur-Reply to the Government's Motion (Dkt. #198) is deemed filed.

## II.   The Government's Motion to Intervene in Part and Dismiss in Part

Having resolved the threshold dispute with respect to the pleadings before the Court which contemplate the Government's Motion (Dkt. #163), the Court turns now to that dispute. The Court's consideration of the Government's Motion proceeds in two steps. First, the Court considers whether the Government may intervene in the action. *Infra*, II.A. Second—and only if the Court concludes that the Government may intervene—the Court analyzes whether the Government may dismiss the *Fisher* Period claims. *Infra*, II.B. Though distinct, those questions are intertwined to some extent. As set forth below, the answer to both questions is "yes."

## A.    Intervention

Because intervention is a prerequisite to dismissal, the Court begins with the question of whether the Government may intervene. *See Polansky*, 599 U.S. at 430–31. The Government invokes *Polansky* as the proper standard by which to measure the Government's request to intervene (Dkt. #163 at p. 7). As articulated *supra*, the Court agrees. There is no reason to question the applicability of the Supreme Court's clear decisions in *Polansky*. Under that standard and in its effort to show "good cause" for intervention as required by the FCA, *see* 31 U.S.C. § 3730(c)(2)(A), the Government offers that it seeks a partial dismissal of Relator's Amended Complaint (Dkt. #163 at p. 8). Parallel to *Polansky*, the Government asserts that its request to dismiss part of the suit "'itself establishes good cause to intervene'" (Dkt. #163 at p. 8) (quoting *Polansky*, 599 U.S. at 429 n.2).  Ocwen supports the Government's efforts (Dkt. #180). So do the Trust Defendants (Dkt. #179; Dkt. #198). Relators oppose (Dkt. #181).

Relators contend that the Government lacks good cause to intervene for both procedural and substantive reasons (Dkt. #181 at p. 6). Their argument comes in four parts. First, Relators argue that the standard by which the Court should determine whether the Government has good cause to intervene is far more stringent than that which the Supreme Court articulated in *Polansky* (*See* Dkt. #181 at pp. 6–8). Relying upon legislative history, Relators claim that the FCA's threshold good cause requirement for post-seal-period intervention "was added to the FCA to 'provide the Government with the option of intervening in situations where new and significant evidence is found which escalates the magnitude or complexity of the fraud after it initially declines to intervene'" (Dkt. #181 at p. 6) (quoting *United States ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995)). Further, Relators argue that "'the good cause requirement . . . was intended to protect the interests of the relator'" (Dkt. #181 at p. 6) (quoting *United States ex rel.*

*Stone v. Rockwell Int'l Corp.*, 950 F. Supp. 1046, 1049 (D. Colo. 1996)) (cleaned up). Because there is no "new and significant evidence" which has "escalate[d] the magnitude or complexity" of this case, and because intervention would be prejudicial to Relators' interests, the Government ought not be permitted to intervene, so the argument goes (*See* Dkt. #181 at pp. 6–7).

Building on these notions, Relators analogize the FCA's good cause standard to that of Federal Rule of Civil Procedure 24(b) (*See* Dkt. #181 at pp. 6–8). As Relators point out, Rule 24 allows a court to permit an intervenor "on timely motion" where the intervenor either: (1) holds a "conditional right to intervene" under federal statute; or (2) "has a claim or defense that shares" "a common question of law or fact" with the "main action." FED. R. CIV. P. 24(b). Relators contend that, in determining whether the Government should be able to intervene, the Court should consider various factors that weigh in a Rule 24(b) inquiry (Dkt. #181 at p. 7). Those factors include the following:

1. how long the putative intervenor knew, or reasonably should have known, of its stake in the action;

2. the prejudice, if any, the existing parties may suffer because the putative intervenor failed to intervene when it knew, or reasonably should have known, of its stake;

3. the prejudice, if any, the putative intervenor may suffer if intervention is not allowed; and

4. any unusual circumstances weighing in favor or, or against, finding timeliness.

(Dkt. #181 at p. 7) (quoting *Efffjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 553, 560–61 (5th Cir. 2003)). Though Relators acknowledge that "courts are divided on whether Rule 24 strictly applies to request for intervention under § 3730(c)(3), they have found it appropriate to consider the guidance of cases decided under Rule 24 in analyzing whether such intervention is appropriate" (Dkt. #181 at p. 7) (citing *United States ex rel. Drennen v. Fresenius Med. Care*

*Holdings, Inc.*, No. 09-10179, 2018 WL 1557253, at *2 (D. Mass. Mar. 30, 2018); *Hall*, 887 F. Supp. at 62). Relators claim that the Court should use Rule 24's factors here because "'the Federal Rules are the default rules in civil litigation'" and "there is no reason to deviate from Rule 24" (Dkt. #181 at p. 8) (quoting *Polansky*, 599 U.S. at 436).

Following their presentation of what they believe to be the proper standard for intervention, the second, third, and fourth phases of Relators' arguments apply the Rule 24 factors. *See Effjohn*, 346 F.3d at 560–61. Specifically, in their second argument against intervention, Relators argue that "the Government knew, or reasonably should have known, of its basis for seeking intervention no later than July 2019" (Dkt. #181 at p. 8). In support, Relators note that the Government did not seek to intervene during the seal period, which terminated in 2019 (Dkt. #181 at p. 9). Instead, according to Relators, the Government investigated the case for two and a half years (Dkt. #181 at p. 9). To Relators, that the Government just now seeks to intervene—after almost five years—is "inexcusable" (Dkt. #181 at p. 9) (internal citation omitted).

Next, Relators argue that "the Government's inexcusable delay has prejudiced Relators" (Dkt. #181 at p. 10). Namely, Relators claim that they have dedicated too much time and effort—and have expended too many resources—in the wake of the Government's original abstention from intervention for an intervention now to leave them unscathed. Relators' argument on this point harkens back to the Court's prior Memorandum Opinion and Order (Dkt. #70), which "left for a later date" the question of "whether some or all of Relators' claims are barred by *res judicata*, the public disclosure bar, the government action bar, or the relevant statute of limitations" (Dkt. #70 at p. 10). In the Court's view at the time of that Order, the resolution of those arguments would have been well-served by further discovery and factual development (Dkt. #70 at p. 10). Now,

Relators argue the expenses they incurred to conduct that discovery and develop those facts would be for naught should the Court grant the Government's Motion (Dkt. #181 at pp. 10–11). Put simply, intervention would leave Relators in the red, with no chance of "recovering the maximum amount of damages for both the Government, and, in turn, Relators" (Dkt. #181 at p. 11).

Conversely, Relators argue that "minimal" prejudice would befall the Government if the Court denied its request to intervene (Dkt. #181 at p. 11). Relators claim that the Government's assessment that "it has faced 'unusually high' burdens with respect to Relators' claims based on Ocwen's conduct" through the *Fisher* Period is unsubstantiated by any evidence (Dkt. #181 at p. 11) (quoting Dkt. #163 at pp. 13–14). Relators claim that the Government "did not meaningfully participate in this lawsuit" in any way (Dkt. #181 at p. 11). Further, to Relators, "because the Government's Motion seeks only a partial dismissal of Relators' claims, the Government will continue to monitor this case regardless of whether the Court grants the Government's Motion" (Dkt. #181 at p. 12) (cleaned up).

Finally, Relators argue that "additional considerations weigh against intervention" (Dkt. #181 at p. 13) (cleaned up). To Relators, the chief additional consideration is the public interest (Dkt. #181 at p. 13). Relators claim that the Trust Defendants are vicariously liable for Ocwen's conduct during the *Fisher* Period and after (Dkt. #181 at pp. 13–14). But they were not involved in the previous *Fisher* litigation. Relators argue that, should the Court permit intervention (and dismissal), "the public will have no opportunity to recoup the ill-gotten incentives paid to the Trust Defendants" during the *Fisher* Period (Dkt. #181 at p. 14).

In its Reply, the Government counters by arguing that "nothing in Relators' Opposition establishes the 'extraordinary circumstances' needed to overcome the Government's entitlement

to dismiss claims brought in its name" (Dkt. #196 at p. 1) (quoting *Polansky*, 599 U.S. at 438). The Government asserts that, post-*Polansky*, "courts have, without exception, found that the Government's request to dismiss the suit itself establishes good cause to intervene" (Dkt. #196 at p. 3) (citations omitted). The Government also argues that Relator's Response does not dispute the basis the Government asserts for seeking to intervene and dismiss (Dkt. #196 at p. 3). Instead, the Government claims that Relators make "irrelevant arguments" regarding Rule 24, which does not apply to the instant dispute (Dkt. #196 at pp. 3–4). Further, the Government counters Relators' assertion that the Government's long delay in seeking intervention counsels against granting its Motion (Dkt. #196 at p. 4). Specifically, the Government argues that *Polansky* expressly allows the Government to change its mind as to whether it will intervene—even years after a *qui tam* action has been filed (Dkt. #196 at p. 4). Finally, the Government contends that Relators' assertions that the Government has done "nothing" in this lawsuit and has unreasonably delayed are simply "wrong" (Dkt. #196 at p. 4). In support, the Government lists its participatory efforts, which include monitoring and reviewing the pleadings and various *Touhy* requests[4] (Dkt. #196 at p. 4). The Government avers that it has conferred with the parties "extensively" and has continuously monitored the legal developments that might impact this case (Dkt. #196 at p. 4).

The Court begins its analysis with the controlling precedent: *Polansky*. Once more, the Government may intervene in a *qui tam* action after the seal period upon a showing of good cause. 31 U.S.C. § 3730(c)(2)(A). Under *Polansky*, "showing 'good cause' is neither a burdensome nor unfamiliar obligation." *Polansky*, 599 U.S. at 429 n.2 (quoting *Polansky v. Exec. Health Res. Inc.*, 17

---

[4] A *Touhy* request is a reference to the Supreme Court case that articulated the process by which one seeks information from a federal agency. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

F.4th 376, 387 (3d Cir. 2021)). Instead, it is "uniquely flexible and capacious concept, meaning simply a legally sufficient reason." *Id.* (quoting *Polansky*, 17 F.4th at 387). Relators' arguments against intervention and in favor of some higher standard are misguided and find no basis in law. In fact, Relators' arguments seem to treat as an afterthought—if not wholly ignore—*Polansky*'s critical language and this Judicial District's recent case, *Jackson*, where Judge Truncale rejected arguments almost identical to those Relators make here.

For starters, Relators argue that Rule 24 applies and somehow modifies the FCA's good cause standard. Not so. As was the case in *Jackson* where the district court faced a similar argument, here, the Court "is not convinced that Rule 24 intervention is analogous to 31 U.S.C. § 3730 intervention." *See Jackson*, 744 F. Supp. at 686. "Rule 24 intervention pertains to *non-parties* intervening in a lawsuit." *Id.* But § 3730 intervention "pertains to the Government, on whose behalf the relator brings the action, intervening to prosecute the action itself." *Id.* Critically, the injury a relator asserts in a *qui tam* lawsuit belongs "'exclusively' to the Government" and "the purpose of the action is to 'vindicate the Government's interests.'" *Id.* (quoting *Polansky*, 599 U.S. at 425, 427) (emphasis in original). The FCA makes clear that "the relator's right to conduct the action is always subject to the Government's rights, including the right to intervene down the road." *Id.* (citing *Polansky*, 599 U.S. at 438).

The cases Relators cite in support of Rule 24's application do not change the Court's view. Relators claim that courts "have found it appropriate to consider the cases decided under Rule 24 in analyzing whether [§ 3730(c)(3)] . . . intervention is appropriate," though "courts are divided on whether Rule 24 strictly applies to requests for" such intervention (Dkt. #181 at p. 7). In support, Relators cite *Jackson* (which rejected the application of Rule 24 in analyzing a § 3730

dismissal), as well as other pre-*Polansky* cases that used Rule 24 in analyzing such motions to dismiss (Dkt. #181 at p. 7) (citing *Drennen*, 2018 WL 1557253, at *2; *Hall*, 887 F. Supp. at 62, and *United States v. Aseracare, Inc.*, No. 2:12-CV-245-KOB, 2012 WL 4479123, at *2 (N.D. Ala. Sept. 24, 2012)). True enough, in *Drennen*, a district court considered Rule 24 in deciding a motion to intervene under the FCA. *See* 2018 WL 1557253, at *2. The same is true in *Hall*. *See* 887 F. Supp. at 62. *Aseracare* is different.

In furtherance of their efforts to convince the Court that Rule 24 applies here, Relators claim that in *Aseracare*, a district court "analyz[ed] a motion to intervene under § 3730(c)(3) under the Rule 24(b) standard" (Dkt. #181 at p. 7 n.4). True enough, the Court did apply the Rule 24(b)(1)(A) insofar as it permits conditional intervention under a federal statute and ultimately applied the Rule 24 factors. *Aseracare*, 2012 WL 4479123, at *2. But Relators overlook that the district court's application of those factors carries no weight because the court *assumed* their applicability. *Id.* There, relators moved the district court to reconsider its prior order granting the Government's motion to intervene under § 3730(c)(3). *Id.* at *1. The defendants argued that "under *United States v. Jefferson County*, the court should not allow the Government to intervene because the motion to intervene was not timely filed." *Id.* at *2.[5] The district court rejected that argument, stating that it was "unaware of any court that has analyzed the Government's motion to intervene in a [FCA] *qui tam* action under *Jefferson*'s factors for permissive intervention." *Id.* It went on to agree with the Government that "the very nature of government intervention in FCA cases creates circumstances and considerations not present in ordinary cases involving a non-

---

[5] Under *Jefferson*, four factors weigh in deciding whether to allow intervention. 720 F.2d 1511, 1516 (11th Cir. 1983). Those factors are the equivalent to those the Fifth Circuit articulated in *Effjohn*. *See* 346 F.3d at 560–61.

party's efforts to intervene under Rule 24." *Id.* (internal citation omitted). But the court stated that, "*even assuming the Jefferson framework does apply*" to § 3730(c)(3) intervention, the Government was entitled to intervene. *Id.* (emphasis added). Relators ask the Court to read out that assumption and treat the district court's subsequent analysis operating under that assumption as somehow binding on the Court in this case. The Court will not do so. In the Eastern District, and seemingly under *Polansky*, Rule 24 does not apply in determining whether Government intervention is appropriate in this context.

Relators' misreading of that case aside, the Court is persuaded by the reasoning in *Jackson*. In *Jackson*, when faced with the same argument—*and the exact same cases cited in support*—the district court observed that, "[u]nlike *Polansky* . . . none of these cases are binding on this Court. These cases also predate *Polansky*, which did not mention Rule 24(b)(3) and therefore substantially undermines their persuasiveness." *Jackson*, 744 F. Supp. 3d at 686. This Court agrees. As was the case in *Jackson*, so too here, "[g]iven that Rule 24 does not fit these circumstances, that the cases cited by . . . Relator[s] are non-binding, and that the Supreme Court seemingly endorsed the Third Circuit's good cause standard, the Court will apply the good cause standard as outlined in *Polansky*." *See id.* at 687. Accordingly, the Government need only offer a "legally sufficient" reason to intervene. *Polansky*, 599 U.S. at 429 n.2.

Here, the Government submits as good cause that "it seeks to dismiss in part Relators' Amended Complaint" (Dkt. #163 at p. 8). In the Government's view, it need submit no more because, "as the Third Circuit concluded in *Polansky*, the Government's request to dismiss the suit 'itself establishes good cause to intervene'" (Dkt. #163 at p. 8) (quoting *Polansky*, 599 U.S. at 429 n.2). The Government seeks to dismiss claims from the *Fisher* Period for several reasons,

including the low probability of those claims' success, the burden concomitant with their continued

pursuit, and the Government's interest (*See* Dkt. #163 at pp. 11–14). That will do.

Turning once more to *Jackson*, as a court in this District has observed, district courts, "particularly in the wake of *Polansky*, have consistently permitted the Government to intervene after the seal period when the Government wants to dismiss a case because it disputes the case's merits, wants to avoid discovery and litigation costs, or finds that the case conflicts with its policies." *Jackson*, 744 F. Supp. 3d at 686–87 (citing *Polansky*, 599 U.S. at 428 n.2; *Brutus Trading, LLC v. Standard Charter Bank*, No. 20-2578, 2023 WL 5344973, at *1–2 (2d Cir. Aug. 21, 2023); *United States ex rel. Carver v. Physicians Pain Specialists of Ala., P.C.*, No. 22-13608, 2023 WL 4853328, at *4, 6–7 (11th Cir. July 31, 2023); *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 853–54 (7th Cir. 2020); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1142–43, 1146 (9th Cir. 1998); *United States ex rel. Vanderlan v. Jackson HMA, LLC*, No. 3:15-CV-767, at *6 (S.D. Miss. Apr. 12, 2024); *United States ex rel. Toomer v. TerraPower, LLC*, No. 4:16-cv-00226, 2018 WL 4934070, at *4–5 (D. Idaho Oct. 10, 2018)). The Court sees no need to deviate from that demonstrated, well-reasoned track record.

Because "the Government's interest is the predominant one," and because the Government's desire to dismiss claims constitutes good cause to intervene, the Court sees no reason to bar the Government from intervening here. *See Jackson*, 744 F. Supp. at 687; *Polansky*, 599 U.S. at 428 n.2. Relators' opposition accuses the Government of "inexcusable delay" in seeking intervention, which Relators claim causes them prejudice (Dkt. #181 at pp. 10–13). But Relators cite no authority for the notion that the Government's Motion to intervene under 31 U.S.C. § 3730(c)(3) is subject to a prejudice analysis. In their effort to do so, Relators attempt to

21

import Rule 24(b) and inapposite authority (*See* Dkt. #181 at pp. 6–8). Their efforts are not persuasive. And even if Rule 24(b) did apply, the Court believes that the Government's "predominant" interests outweigh any prejudice to Relators. *See Jackson*, 744 F. Supp. at 687.

Relators' opposition to the Government's Motion also contests the notion that the Government may dismiss only *part* of a *qui tam* action, as opposed to the entire action (*See* Dkt. #181 at pp. 14–15). As explained *infra*, that argument is misguided, but highlights another intricacy worthy of the Court's attention. That is, the Government only seeks to intervene *in part* (Dkt. #163 at p. 1). The FCA does not expressly contemplate partial intervention. *See* 31 U.S.C. § 3730(c)(3). No less, the Government asserts that this District has "repeatedly found" that the Government may only intervene in part (Dkt. #196 at pp. 2–3). Relators do not appear to mount any argument against partial intervention. Instead, the thrust of their argument is that the Government may not *dismiss* a *qui tam* action in part (in addition to arguing that intervention is inappropriate as a general matter) (*See* Dkt. #183). Rest assured, partial intervention is permissible. As the Government points out, it has partially intervened in *qui tam* actions before (Dkt. #196 at p. 3, n.5). *See also United States ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264-DF, 2005 WL 8167952, at *1 (E.D. Tex. Feb. 3, 2005). That makes sense. After all, the purpose of a *qui tam* action is to "vindicate the Government's interests." *Polansky*, 599 U.S. at 438. Because Relators mount no argument against partial intervention, and because partial intervention appears to harmonize with *Polansky* and the FCA, the Court perceives no issue with it here. *See also United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101–02 (3d Cir. 2000) ("[T]he [G]overnment often decides to take over only certain claims in a multi-claim action, and we are aware of no decision holding that this is improper.").

### B.    Partial Dismissal

Having determined that the Government may intervene in part, the Court turns next to the question of whether it may dismiss the *Fisher* Period claims. It can. Under the FCA, once the Government becomes a party through intervention, "[t]he Government may dismiss [a *qui tam*] action notwithstanding the objections of the [relator] if the [relator] has been notified by the Government of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). In *Polansky*, the Supreme Court held that courts should apply Federal Rule of Civil Procedure 41 in deciding a Government's Motion to dismiss a *qui tam* action. 599 U.S. at 437. In so doing, the Supreme Court stated that "the Government's views are entitled to substantial deference" and warned that "a district court should think several times over before denying a motion to dismiss" *Id.* at 437–38. As one court in this District has already recognized, *Polansky* instructs that "'if the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion'" even where "'the relator presents a credible assessment to the contrary.'" *Jackson*, 744 F. Supp. 3d at 690 (quoting *Polansky*, 599 U.S. at 438).

As the Supreme Court recognized in *Polansky*, the Rule 41 standard that the Court must apply depends on the case's procedural posture. 599 U.S. at 435. "If the defendant has not yet served an answer or summary-judgment motion, the plaintiff need only file a notice of dismissal." *Id.* "But once that threshold has been crossed . . . dismissal requires a 'court order, on terms that the court considers proper.'" *Id.* (quoting FED. R. CIV. P. 41(a)(2)). Here, Rule 41(a)(2) applies because the Government seeks dismissal post-answer and post-motion for summary judgment.

"In non-FCA cases, Rule 41(a)(2)'s 'proper terms' analysis focuses on the defendant's interests: The court mainly addresses whether the party's 'commitment of time and money'

militates against dismissal." *Id.* at 437 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990)). But under the FCA, Rule 41(a)(2)'s "'proper terms' assessment is more likely to involve the relator." *Id.* Generally, relators want to continue pressing their suit and, at the § 3730(c)(2)(A) stage, they have likely expended significant resources in litigation. *See id.* Accordingly, "[p]art of the district court's task is to consider their interests." *Id.* That consideration is cabined, however, by the Supreme Court's observation that § 3730(c)(2)(A) motions to dismiss "will satisfy Rule 41 in all but the most exceptional cases." *Id.*

### 1. Relators are not Entitled to an Evidentiary Hearing.

This brings the Court to the first dismissal-related dispute, which is a threshold one: whether a hearing is necessary. The Court must apply Rule 41 "subject to" the FCA's procedural requirements of notice and an opportunity for a hearing. *Jackson*, 744 F. Supp. 3d at 690 (citing *Polansky*, 599 U.S. at 435–36); 31 U.S.C. § 3730(c)(2)(A). Relators do not dispute that the Government complied with its obligation to give them notice of their intention to seek partial dismissal (*See* Dkt. #181). Instead, Relators argue that § 3730(c)(2)(A) "requires the Court to provide Relators" an oral or evidentiary hearing (Dkt. #181 at p. 15). According to Relators, "nothing in *Polansky* suggests that the Court may forego the hearing requirement or that briefing is an adequate substitute" (Dkt. #181 at p. 15). In fact, Relators go further and suggest that *Polansky* "suggests a hearing must take place" (Dkt. #181 at p. 15) (citing *Polansky*, 599 U.S. at 437 n.4).

Relators are wrong. The footnote to which Relators refer in no way suggests that an evidentiary or oral hearing are required under the FCA. Relators do not point to any particular text in the footnote to substantiate their position to the contrary. As far as the Court can tell, such text does not exist. The full text of the footnote is as follows:

> The Court of Appeals briefly addressed the purpose of a hearing when dismissal is sought before an answer is filed. *See* 17 F.4th 376, 390, n.16 (CA3 2021). In that context, Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role. So what is the court supposed to do at the hearing the FCA requires? The Third Circuit suggested that Rule 41's standards "rest atop the foundation of bedrock constitutional constraints on Government action." *Id.*, at 390, n.16. So a hearing, whether pre- or post-answer, might inquire into allegations that a dismissal "violates the relator's rights to due process or equal protection." *Ibid.* But because Polansky has not raised a claim of that sort, we do not consider the circumstances in which, or procedures by which, a court should find the Constitution to prevent the Government from dismissing a *qui tam* action.

*Polansky*, 599 U.S. at 437 n.4. First, nothing in the footnote even remotely implies a statutory entitlement to an oral or evidentiary hearing. *See id.* Second, the Supreme Court quoted with approval the Third Circuit's belief that the hearing "might inquire into allegations that a dismissal violates the relator's rights to due process or equal protection." *Id.* (internal citation omitted). As was the case in *Polansky*, Relators have not raised such a claim here. (Compare *id.*, *with* Dkt. #181). As the Government points out, this case is bereft of constitutional concerns (*See* Dkt. #163 at p. 15). Thus, Relators' arguments based on this footnote are unpersuasive.

In any event, the Fifth Circuit has recently laid the axe at the feet of Relators' argument. Indeed, just days ago, the Fifth Circuit held that § 3730(c)(2)(A) "only requires a hearing on the briefs." *Vanderlan v. United States*, No. 24-60215, 2025 WL 1143390, at *4 (5th Cir. Apr. 18, 2025). In arriving at that conclusion, the Fifth Circuit noted that "Courts of appeals, since *Polansky*, have routinely read subparagraph (c)(2)(A) in the same way: "hearing" only requires a hearing on the briefs." *Id.* (citing *United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155, 162 (4th Cir. 2024); *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *2–3 (2d Cir. Aug. 21, 2023) (unpublished)). Relators did not respond to the Government's submission of *Vanderlan* as supplemental authority (Dkt. #224), either. Accordingly, Relators are only entitled

to a hearing on the briefs. No oral or evidentiary hearing is required under the FCA, and none will be given. The Court would not benefit from further argument anyway.

### 2.    *The Government is Entitled to Dismiss on a Claim-by-Claim Basis.*

Having resolved that procedural dispute, the Court turns to yet another that Relators raise: whether the Government may seek partial dismissal of the action. Relators say it cannot. Unsurprisingly, the Government disagrees. Again, Relators are mistaken, though their confusion is understandable.

Relators argue that the Government's Motion is "procedurally flawed because it impermissibly seeks dismissal for Relators' *claims* rather than the entire 'action' in violation of clear Fifth Circuit precedent" (Dkt. #181 at p. 1). According to Relators, because both Rule 41 and § 3730(c)(2)(A) permit dismissal of "an action," piecemeal dismissal is prohibited (Dkt. #181 at p. 4). Relators cite a few Fifth Circuit cases in support of their reading (Dkt. #181 at p. 5) (citing *CBX Res., L.L.C. v. ACE Am. Ins. Co.*, 959 F.3d 175, 177 (5th Cir. 2020); *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2020); *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979)). Relators insist that *Bailey* controls (Dkt. #181 at p. 5).

Conversely, the Government contends that it is "entitled to dismiss on a claim-by-claim basis" (Dkt. #196 at p. 2) (cleaned up). According to the Government, courts have "long held" that "the term 'action' wherever it appears in the FCA, including in § 3730(c)(2)(A), refers to a single violation of § 3729" (Dkt. #196 at p. 2) (citing *Merena*, 205 F.3d at 101–02) (cleaned up). The Government also points out that this Court has previously concluded that, "'consistent with its accepted meaning within the FCA, 'an action' . . . can refer to a single claim in a multi-claim complaint'" (Dkt. #196 at p. 2) (quoting *Fisher*, 413 F. Supp. 3d at 577). In line with that understanding, the Government submits that "courts in this District have repeatedly found that

the [Government] may properly dismiss . . . only a subset of the claims alleged in a *qui tam* suit" (Dkt. #196 at p. 2, n.4) (collecting cases).

Because Relators contend that *Bailey* is controlling, the Court begins there. Relators submit that in *Bailey*, "the Fifth Circuit held that a co-relator . . . was not authorized to voluntarily dismiss his individual claims under Rule 41(a) because it would not result in a dismissal of an entire action" (Dkt. #181 at p. 5) (citing 609 F.3d at 720). Importing *Bailey*'s reasoning, Relators accuse the Government of pursuing the same type of "improper partial dismissal" (Dkt. #181 at p. 5).

Relators' reliance on *Bailey*, however, seems misplaced. And their contention that *Bailey* stands as a "clear Fifth Circuit precedent" that prevents the *Government* from partially dismissing part of a *qui tam* lawsuit is yet another attempt to import irrelevant principles into the Court's inquiry. Relators' summary of *Bailey* explains why. There, the party seeking dismissal was a co-plaintiff relator—not the Government (*See* Dkt. #181 at p. 5). *See Bailey*, 609 F.3d at 719. The provision of the FCA at issue there was 31 U.S.C. § 3730(b)—not § 3730(c)(2)(A). *Id.* As the Fifth Circuit observed, that provision states that:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney general give written consent to the dismissal and their reasons for consenting.

*Bailey*, 609 F.3d at 719 (quoting 31 U.S.C. § 3730(b)). The Fifth Circuit reasoned that the co-plaintiff "could not dismiss his *qui tam* action without written consent of the court and the Attorney General, which he did not obtain." *Id.* But that co-plaintiff asked the Fifth Circuit "to carve out an exception from the § 3730(b) consent requirement for plaintiffs who wish to withdraw from multiple-plaintiff *qui tam* actions." *Id.* The Fifth Circuit declined, noting that "[t]he consent

requirement for dismissal of a *qui tam* action safeguards the government's interests . . . ." *Id.* Indeed, as the Fifth Circuit observed:

> "For more than 130 years, Congress has instructed courts to let the [G]overnment stand on the sidelines and veto a voluntary dismissal. It would take a serious conflict with the structure of the FCA or a profound gap in the reasonableness of the provision for us to be able to justify ignoring this language."

*Id.* (quoting *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 159–60 (5th Cir. 1997)).

The co-plaintiff next argued that "the dismissal of one plaintiff from a multi-plaintiff case will not result in dismissal of the entire action." *Id.* at 720. The Fifth Circuit noted, however, that "dismissal of one plaintiff may nonetheless impair the [G]overnment's interests even where another plaintiff remains in the suit to litigate on behalf of the [G]overnment." *Id.* The Fifth Circuit accordingly declined to "erode the statutory protection of the [G]overnment's interest simply for the sake of convenience." *Id.*

Critically, the Fifth Circuit noted that the co-plaintiff could not "have dismissed just his individual claims" as he argued. *Id.* This is because "Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims." *Id.* (citing *Exxon*, 599 F.2d at 662) ("When Rule 41(a) refers to Dismissal of an 'action', there is no reason to suppose that the term is intended to include the separate claims which make up an action. When Dismissal of a claim is intended, as in Rule 41(b), that concept is spelled out in plain language.")).

Here, Relators' arguments are based on this holding regarding Rule 41(a). According to Relators, if a co-plaintiff cannot partially dismiss under Rule 41(a) as the Fifth Circuit held in *Bailey*, then neither can the Government (Dkt. #181 at p. 5). The Government seeks to distinguish *Bailey* as "inapposite" (Dkt. #196 at p. 2 n.4). According to the Government, *Bailey* cannot apply to bar requests for partial dismissal because Rule 41(a), as applied in *Bailey*, "governs dismissal by

a 'plaintiff,' whereas here the [Government], the real party in interest, albeit a non-party, seeks dismissal under 31 U.S.C. § 3730(c)(2)(A)" (Dkt. #196 at p. 2 n.4). Accordingly, the Government submits that *Bailey* should not apply here because "it involves a plaintiff-relator's dismissal of the relator's own claims . . . and not a dismissal by the [Government]" (Dkt. #196 at p. 2 n.4).

Whereas the Government contends that Relators cite no authority that the word "action" as used in the FCA should be construed to bar dismissal of particular claims, the Government does (*See* Dkt. #196 at p. 2, 2 n.4). The Government principally relies on *United States v. ex rel Merena v. SmithKline Beecham Corp.* to ground its position that it may seek dismissal on a claim-by-claim basis (Dkt. #196 at p. 2) (citing 205 F.3d at 101–02). As explained below, the Court agrees with the Government. While Relators' position with respect to Rule 41(a) may bar a co-plaintiff relator from dismissing only part of an action, nothing in the FCA suggests that the Court must bind the Government to an all-or-nothing dismissal approach. *Merena* indicates that Relators' use of *Bailey*, while understandable, is misplaced. True enough, the Fifth Circuit does not appear to have decided that narrow question, nor has the Supreme Court. Nonetheless a close reading of *Merena* and the structure of the FCA explains why the Government may partially dismiss claims in a *qui tam* action.

*Merena* involved two issues, neither of which this case presents. The first "concern[ed] the application of the relevant provision of the *qui tam* statute to a multi-count complaint" for purposes of determining a relators' entitlement to particular proceeds. *Merena*, 205 F.3d at 101–02. The second involved "the interpretation of 31 U.S.C. § 3730(e)(4) and its relationship to the provision governing awards to relators in cases in which the United States elects to proceed with the action, 31 U.S.C. § 3730(d)." *Id.* at 101 (cleaned up). The answers to those questions are not relevant here.

What is relevant is the Third Circuit's recollection of some of the FCA's oddities. The Third Circuit's discussion of these nuances are what form the basis of the Government's argument here.

As then-Judge Alito observed when writing for the Third Circuit, "the draftsmanship of the *qui tam* statute has its quirks." *Id.* (citing *United States ex rel. Mistick v. Housing Auth. of Pitt.*, 186 F.3d 376, 387 (3d Cir. 1999)). "[O]ne of those quirks is that the statute is based on the model of a single-claim complaint." *Id.* (citing *Mistick*, 186 F.3d at 387). The Third Circuit recalled that the district court below stated: "It would seem almost inevitable to me that at least in most *qui tam* actions there would be allegations of multiple false claims alleged in a complaint." *Id.* at 101–02 (internal quotations omitted). The Third Circuit expressed its inclination "to agree," but then acknowledged that the FCA "is phrased as if every *qui tam* complaint contained only one claim." *Id.* (cleaned up).

To demonstrate that pattern, the Third Circuit methodically marched through the FCA. *See id.* at 102–03. For example, it explained that the FCA allows a relator to "bring a civil action for a *violation* of section 3729.'" *Id.* at 102 (quoting 31 U.S.C. § 3730(b)(1) (emphasis added)). But, as the Third Circuit explained, "surely a plaintiff may bring an action containing multiple claims, each of which alleges a separate violation of section 3279" *Id.* In fact, Relators did so in this case (*See* Dkt. #114). Or, as the Third Circuit articulated, take as another example that:

> When a *qui tam* action is filed, the [G]overnment may "proceed with *the action*," §§ 3730(b)(2) and (4), or "decline to take over *the action*," §3730(b)(4)(B), but the [G]overnment often decided to take over only certain claims in a multi-claim action, and we are aware of no decision holding that this is improper.

*Id.* Most saliently here, the Third Circuit explained that:

> The [FCA] authorizes the [G]overnment to "dismiss *the action*" and "settle *the action*," 31 U.S.C. § 3730(c)(2)(A) and (B), but again, we are aware of no decision holding that the [G]overnment may not settle or dismiss only some of the claims in

> a multi-claim complaint, and we can think of no reason why the [G]overnment
> should not be permitted to do so.

*Id.* Indeed, as the Government points out, this Court has agreed with *Merena*'s analysis previously,

though in another context. *See, e.g.*, *United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*, 413

F. Supp. 3d 569, 577 (E.D. Tex. 2019) (relying on *Merena*'s analysis in determining that "an

'action' under the original source exception can refer to a single claim in a multi-claim complaint"

and concluding that "a relator's original source status is to be determined on a claim-by-claim

basis"). The Court has held before, and reaffirms today, consistent with its prior decisions that an

"action" as used in the FCA "is not to be rigidly interpreted as the filing of the original complaint"

or an entire suit. *See id.* Accordingly, the Court, like the Third Circuit in *Merena*, sees no reason

why the Government must take an all-or-nothing approach to dismissal under § 3730(c)(2)(A).

The Court will not require the Government to do so here.

   Relator may lament that this deviates from Fifth Circuit precedent—namely, *Bailey*. But

that position is too myopic. While the Fifth Circuit has not decided this narrow issue, the Fifth

Circuit seems to have cited *Merena* with approval. *See, e.g.*, *United States ex rel. Conyers*, 108 F.4th

351, 357 n.7 (5th Cir. 2024) (internal citations omitted) ("As the Government points out, the FCA

frequently uses the terms 'action' and 'claim' interchangeably, since the statute is based on the

model of a single-claim complaint"). Relators also do not appreciate that *Bailey* is entirely

distinguishable. Therefore, consistent with the Court's prior decisions, its previous reliance on

*Merena*, and the Fifth Circuit's acknowledgment of the FCA's statutory quirk of using "claim"

and "action" "interchangeably," here, the Court holds that the Government may seek dismissal

on a claim-by-claim basis. *See Conyers*, 108 F.4th at 357 n.7; *Fisher*, 413 F. Supp. 3d at 577; *Merena*,

205 F.3d at 101–02.[6]

> 3.    *Dismissal of the* Fisher *Period Claims is Proper.*

These procedural squabbles decided, the Court finally turns to the crux of the issue at hand:

whether, under *Polansky* and Rule 41(a)(2), the Government's Motion to dismiss the *Fisher* Period

claims should be granted. It should.

The Court returns to the fundamental premise underlying its decision today: to be

successful in dismissing the *Fisher* Period claims, the Government must have "good grounds for

thinking that this suit would not do what all *qui tam* actions are supposed to do: vindicate the

Government's interests." *Polansky*, 599 U.S. at 438. Only in "extraordinary circumstances" will

the Government be unable to prevail on a motion to dismiss under § 3730(c)(2)(A). *Id.* A relator's

"competing assessment" of whether a case should proceed, its underlying merits, or its value will

"not outweigh the Government's reasonable view of the suit's costs and benefits." *Id.*

Here, the Government submits several bases as good grounds for dismissing the *Fisher*

Period claims. First, the Government claims to have "evaluated the probability that [the *Fisher*

Period] claims will succeed" and weighed that probability "against the burdens to the

[Government] of Relators' continued pursuit" of those claims (Dkt. #163 at p. 12). After engaging

in that cost benefit analysis, the Government has concluded that dismissal of the *Fisher* Period

claims is "in the interest in the United States" (Dkt. #163 at p. 12). Second, the Government avers

that it has considered the fact that the *Fisher* Period claims "were publicly and extensively litigated

---

[6] The other cases Relators cite in furtherance of their argument that the Government may not dismiss an on a claim-by-claim basis do not change the Court's analysis here. Neither *CBX Resources* nor *Exxon* involve *qui tam* suits. *See generally CBX Res.*, 959 F.3d at 175–77; *Exxon*, 599 F.2d at 660–62.

in *Fisher* before Relators initiated this lawsuit" (Dkt. #163 at p. 12). That, according to the Government, is enough to meet the standard for dismissal under Rule 41(a)(2) and *Fisher*.

A bit more detail might be useful in explaining the Government's position. In the Government's view, Relators' *Fisher* Period "claims against the RMBS Trust Defendants and Defendant Ocwen reassert claims that have already been publicly and extensively litigated and resolved through settlement in the [Government's] favor in the *Fisher* case" (Dkt. #163 at p. 12). According to the Government, information about conduct underlying the *Fisher* Period is already public, and Relators do not add to that information (Dkt. #163 at p. 12). Instead, Relators' *Fisher* Period claims only bring a new allegation that the RMBS Trust Defendants are vicariously liable (Dkt. #163 at p. 12). To the Government, the *Fisher* Period claims in this lawsuit are "copy-cat" of *Fisher* and have a "low probability" of succeeding on the merits (Dkt. #163 at p. 12). At the same time, those claims have created (and will continue to create) an "unusually high" burden for the Government that it no longer wishes to carry (Dkt. #163 at pp. 12–13). The Government doubts the likelihood that claims related to the *Fisher* Period will succeed given that the claims may be barred by *res judicata* (Dkt. #163 at p. 13). Finally, the Government notes that Relators' suit—and particularly their *Fisher* Period claims—"have generated requests for extensive discovery to numerous federal agencies . . . which have been and will continue to be burdensome" (Dkt. #163 at pp. 13–14). Because proceeding with the "numerous" *Fisher* Period claims is not only "complex," but unduly burdensome in the Government's view, the Government's cost-benefit analysis has yielded its desire to dismiss the *Fisher* Period claims (Dkt. #163 at p. 14).

Relators do not meaningfully argue that the Government lacks good grounds for dismissal. Their arguments against dismissal are largely procedural, but the Court has dismissed those

arguments. Instead, they argue, in line with Justice Kagan's predication in *Polansky* that relators generally resist dismissal and have "committed substantial resources" to litigation thus far, that this late-in-the-game dismissal is prejudicial and wasteful of their efforts up to this point (Dkt. #181 at p. 14). Relators also offer a competing view of the case and question the veracity of the Government's views. Specifically, they argue that the "Government's alleged burdens are unsupported by any evidence and its allegation of possible future burdens is merely speculative" (Dkt. #181 at p. 14).

More importantly, Relators argue that the Court, should it dismiss the *Fisher* Period claims, will be reneging its prior decision that Relators are entitled to discovery before the Court decides whether the *Fisher* Period claims are barred by *res judicata* (Dkt. #181 at p. 14; Dkt. #70 at p. 10). On that note, Relators claim that the Trust Defendants' *res judicata* argument against the *Fisher* Period claims is now before the Court via the Trust Defendants' Motion for Partial Summary Judgment (Dkt. #161). Because the Government filed its Motion after the Trust Defendants asserted the *Fisher* Period claims are barred by *res judicata* via their motion for partial summary judgment, Relators assert that "the Government seeks to wrest the gavel from the Court and prevent it from resolving the issues currently before it" (Dkt. #181 at p. 15). Relators suggest that the Court's approval of the Government's request would somehow be tantamount to an unconstitutional abdication of its role to decide issues before it (Dkt. #181 at p. 15). Namely, Relators argue that "[s]uch deference to the Executive Branch would abdicate the judicial power vested in the court, allow the Government to vitiate Relators' Seventh Amendment right to a trial by jury, and violate the separation of powers doctrine" (Dkt. #181 at p. 15).

The Court maintains a tight grasp on its gavel. And the Government's Motion—which it has the *exclusive* statutory ability to file—can in no way be construed as a crafty attempt to aggrandize the Executive Branch with judicial power in violation of the separation of powers. Nor can it be construed as an attempt to deprive Relators of their right to a jury trial. Intervention and dismissal is statutorily permissible and practically commonplace. The Court also understands its role. The Court is bound to give fidelity to the text of the law. *Martinez v. Tyson Foods, Inc.*, 533 F. Supp. 3d 386, 394 (N.D. Tex. 2021) ("[T]his Court and all courts must apply the text of the law, not alter it.") (citation omitted). The Court has a duty to follow binding precedent. *Ibarra v. Port of Houston Auth. of Harris Cnty.*, 526 F. Supp. 3d 202, 216 (S.D. Tex. 2021) ("At the end of the day, this court's role is to adhere to the precedent before it."). Relators' arguments are against both. The FCA and the Supreme Court's holding in *Polansky* compel the Court to permit the Government to dismiss the *Fisher* Period claims.

Good grounds anchor the Government's request for dismissal. The Supreme Court has acknowledged that it "has never set out a grand theory of what . . . Rule [41(a)] requires" and declined to do so in *Polansky*. 599 U.S. at 437. "The inquiry is necessarily 'contextual.'" *Id.* "And in this context, the Government's views are entitled to substantial deference." *Id.* Like *Polansky*, here, the Government conducted a cost-benefit analysis and determined that proceeding with the *Fisher* Period claims is not in the Government's interest (*Compare id.* at 438, *with* Dkt. #163 at pp. 11–14). The Government explained that the burden associated with litigating the *Fisher* Period claims has been "unusually high" (Dkt. #163 at p. 12). In *Polansky*, the Government explained "why it had come to believe that the suit had little chance of success on the merits." *Polansky*, 599 U.S. at 438. The same is true here. The Government explained why it fears proceeding with the

*Fisher* Period claims will likely not be successful on the merits—*res judicata* (*compare id.*, *with* Dkt. #163 at p. 13). Taken together, that is enough. *See Polansky*, 599 U.S. at 438.

A look at caselaw beyond *Polansky* does not change the Court's conclusion. The Trust Defendants claim that "every identifiable § 3730(c)(2)(A) motion since the Supreme Court's decision in *Polansky* has been granted, even where the relator(s) opposed the Government's motion" (Dkt. #179 at p. 4) (cleaned up). The Trust Defendants then list seventy-two cases in support of that bold premise (*See* Dkt. #179 at pp. 5–10) (collecting cases). Regrettably, the Trust Defendants *only list* those cases. While not a model of written advocacy, it is clear that the Trust Defendants' are correct. Of the seventy-two cases the Trust Defendants cite, sixty-one of them are irrelevant because they were decided before *Polansky*. None of the remaining eleven cases decided post-*Polansky* are Fifth Circuit cases. The Trust Defendants cite one pre-*Polansky* Fifth Circuit case. One is, but it predates *Polansky*. *See United States ex rel. Health Choice All. LLC v. Eli Lilly & Co., Inc.*, No. 5:17-CV-00123, 2019 WL 4727422 (E.D. Tex. Sept. 27, 2019), *aff'd*, 4 F.4th 255 (5th Cir. 2021). That case is not persuasive here, because, instead of using *Polansky*'s test, it assumed "without deciding" that the Ninth Circuit's "more burdensome" test for determining whether the Government may dismiss a *qui tam* case applied. *See id.* at 267. The Court must focus the inquiry on cases that apply the *Polansky* standard.

The Trust Defendants suggest the Court weigh this case against *Jackson* (Dkt. #179 at p. 6). Though post-*Polansky* and therefore temporally applicable, *Jackson* still falls short of being a helpful heuristic here. There, the Government sought dismissal pre-answer and pre-summary judgment. *Jackson*, 744 F. Supp. 3d at 690. Accordingly, the only real dismissal-related question the district court had to answer was whether, under Rule 41(a)(1)(A)(i), the FCA's procedural

requirements had been satisfied. *Id.* (citing 31 U.S.C. § 3730(c)(2)(A)). The Court's inquiry here

occurs post-answer and post-summary judgment (*See* Dkt. #152; Dkt. #153; Dkt. #154; Dkt. #155;

Dkt. #156; Dkt. #161).

The most recent Fifth Circuit case involving voluntary dismissal—*Vanderlan*—is helpful,

but still not the best corollary because it did not address a Rule 41(a)(2) motion. 2025 WL 1143390,

at *1, *6. There, the Government sought to dismiss *qui tam* claims due to its believe that the suit

"would interfere with administrative settlement negotiations and lacked merit." *Id.* at *3. The

district court granted the Government's motion to dismiss under Rule 41(a)(1). *Id.* The Court of

Appeals addressed numerous issues on appeal (including, as mentioned above, § 3730(c)(2)(A)'s

hearing requirement). *Id.* As relevant to the Court's analysis here, the Fifth Circuit affirmed the

district court's discretionary decision to dismiss the *qui tam* claims in line with *Polansky*, and

applying even more deference to a motion to dismiss under Rule 41(a)(1). *Id.* In so doing, the Fifth

Circuit acknowledged the deference the Court is to grant the Government in seeking intervention

under Rule 41(a)(2). *See id.*

Lacking a Fifth Circuit post-*Polansky* cognate that contemplates § 3730(c)(2)(A) dismissal

under Rule 41(a)(2), the Court turns to persuasive authority to see if it changes the Court's

assessment. It does not. For example, the district court for the Northern District of Ohio applied

*Polansky* and Rule 41(a)(2) to permit the Government to dismiss a *qui tam* case on terms similar to

those the Government offers here. *See United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs*,

No. 1:17-CV-0558, 2023 WL 8480085, at *3 (N.D. Ohio Dec. 7, 2023), *aff'd sub nom. United States*

*ex rel. USN4U, LLC*, No. 24-3022, 2025 WL 1009012 (6th Cir. Mar. 31, 2025). There, the

Government's chief concern was the merits of the case and questionable credibility of the evidence

supporting the claims. *Id.* The district court deferred to the Government's cost-benefit analysis and dismissed the case under Rule 41(a)(2). *Id.* Similarly, a Magistrate Judge in the District of Columbia has recommended dismissal under Rule 41(a)(2) under like circumstances. *See United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, No. 15-CV-728-CKK-MAU, 2025 WL 1113407, at *8 (D.D.C. Apr. 15, 2025).

At bottom, the reasons the Government seeks to dismiss claims from the *Fisher* Period are almost identical to those the Government offered in *Polansky.* The Court sees no reason to deny the Government's Motion here. And while the inquiry the Court conducts today must consider Relators' positions, Relators' "competing assessment" cannot supersede the Government's decision here. *See Polansky*, 599 U.S. at 438. Relators' argument that dismissal of the *Fisher* Period claims would render wasteful their efforts to litigate the case up to this point fall flat. Expenditure of substantial resources is not unique in *qui tam* cases. *See Polansky*, 599 U.S. at 437. And a *qui tam* relator ought to be aware of the gamble they take in asserting the interest on the Government's behalf—the Government has a broad ability to intervene in such actions. Though the Court's role includes a consideration of Relators' interests, that consideration does not overshadow the Supreme Court's mandate that "[i]f the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary" *Id.* at 437–38. Certainly, this case does not present the kind of "extraordinary circumstance" where the Court should deny the Government its due deference. *See id.* Relators' Hail-Mary argument suggesting that the Government is engaged in a constitutional chess game is simply incorrect. If the Government is permitted to dismiss (as it may under the FCA) the Court need not resolve whether pursuit of

those claims is barred by *res judicata* simply because that issue would simply be moot. That is a far cry from constitutional crisis. It is simply the reality of litigation.

Having determined that the Government has carried its burden to show good cause to intervene in part and dismiss in part claims related to the *Fisher* Period, and having determined that 31 U.S.C. 3730(c)(2)(A)'s procedural requirements of notice and opportunity for a hearing have been fulfilled, the Court determines that the Government's Motion should be granted. All claims from the *Fisher* Period are hereby dismissed with prejudice as to Relators and without prejudice to the United States.

## III.    Disputes Now Moot

It is axiomatic that the Court's dismissal of the *Fisher* Period claims renders moot several motions:

1.   The Trust Defendants' Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims based on Conduct through February 17, 2017 (Dkt. #161);

2.   The Trust Defendant's Motion for Partial Stay Pending Resolution of United States' Motion to Intervene in part and to Dismiss in part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #171); and

3.   The Relators' Rule 56(d) Motion to Defer the Court's Ruling on Trust Defendant's Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct Through February 17, 2017 (Dkt. #183).

Addressing each briefly in turn, the Trust Defendants' Motion for Partial Summary Judgment contemplates claims based on conduct that occurred during the *Fisher* Period (*See generally* Dkt. #161). Because this Order dismisses those claims under Rule 41(a)(2), the Trust Defendants' Motion to dispose those claims by another function (*res judicata*) is moot. Similarly, the Trust Defendants' Motion for partial stay pending resolution of the Government's Motion (Dkt. #171) is moot because, by this Order, the Court has resolved the Government's Motion. Similarly, Relators' Motion to Defer (Dkt. #183) is moot because, again, by this Order, the Court

has resolved the Government's Motion. In short, each of the Motions above hinged on the resolution of the Government's Motion, (Dkt. #163). With that dispute resolved, so are these.

## CONCLUSION

It is therefore **ORDERED** that the United States' Motion to Intervene in part and to Dismiss in part pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #163) should be granted. Accordingly, Relators claims against any Defendant in this action for violations of the FCA that accrued on or before February 17, 2017 (the *Fisher* Period) are hereby **DISMISSED with prejudice as to Relators** and **DISMISSED without prejudice as to the United States**. It is also **ORDERED** that The Trust Defendants' Motion for Leave to File Sur-Reply in Support of United States' Motion to Intervene in Part and to Dismiss in Part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #197) should be granted. It is further **ORDERED** that:

1. The Trust Defendants' Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims based on Conduct through February 17, 2017 (Dkt. #161) should be denied as moot.

2. The Trust Defendant's Motion for Partial Stay Pending Resolution of United States' Motion to Intervene in part and to Dismiss in part Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Dkt. #171) should be denied as moot.

3. The Relators' Rule 56(d) Motion to Defer the Court's Ruling on Trust Defendant's Motion for Partial Summary Judgment on *Res Judicata* Grounds for Claims Based on Conduct Through February 17, 2017 (Dkt. #183) should be denied as moot.

**IT IS SO ORDERED.**

 **SIGNED this 2nd day of May, 2025.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE