**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEAN-MARC EICHNER and BRANDON LOYD and JEAN-MARC EICHNER AND BRANDON LOYD, Individually, <br><br> Relators, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, ET AL., <br><br> Defendants. | Civil Action No. 4:19-cv-00524-ALM <br><br> **JURY TRIAL DEMANDED** |

**DECLARATION OF JEAN-MARC EICHNER**

1.      My name is Jean-Marc Eichner. I am more than twenty-one years of age, under no legal disability, and am capable of making this declaration. I have personal knowledge of the facts stated herein, except to the extent that I have noted otherwise, and such facts are true and correct to the best of my knowledge.

2.      I was the Senior Vice President of Customer Experience at Ocwen from January 2016 to May 2019.

3.      At some point after I became employed at Ocwen, Ocwen created an internal group of its business leaders called the "Remediation Working Group." The group consisted mainly of top executives and business unit heads. I became a member of the Remediation Working Group in 2017. Other members of the Remediation Working Group during my time at Ocwen included Robert Kaltenbach and Michael Hollerich.

4.      The primary purpose of the Remediation Working Group was for business unit executives to meet and decide what, if any, remediation would be provided to borrowers and

1

investors who were harmed by Ocwen's failure to properly service loans. The Remediation Working Group met on a monthly basis to discuss submissions from Ocwen's servicing and origination departments related to issues having the potential to impact negatively borrowers and investors and the plan for remediating those issues. The submissions were made via forms.

5.    While ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████ Instead, they were submitted to obtain feedback from the Remediation Working Group. The ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████

6.    During the meetings, the ████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

7. The Remediation Working Group was a regular, ordinary business activity at Ocwen. The discussions concerned only business issues. While Ocwen's in-house counsel was present during these meetings, they did not participate actively in the discussions of the issues submitted to the Remediation Working Group, did not provide any legal advice at the meetings, and rarely, if ever, provided any input regarding the Remediation Working Group discussions. The lawyers served no purpose at the Remediation Working Group meetings other than as "window dressing" so that Ocwen could later make a false claim that the Remediation Working Group meetings and any documents related thereto were covered by the attorney-client privilege. The Remediation Working Group was controlled by the business executive members of the committee.

8. Over the weekend of January 11–12, 2025, I cleaned up my home office. During the cleaning, I located a dusty pile of 36 additional hardcopy documents related to this lawsuit that I had not previously provided to any of Relators' counsel. These documents were covered by a couple of black duffle bags containing outdated electronics, cables, packaging tape, and tools. These documents included copies of (1) a Management Assertion of Issue Remediation form, (2) certain Remediation Working Group submission forms, and (3) various Remediation Working Group Monthly Closure Reports. After locating these documents, I promptly provided them to Relators' counsel on January 14, 2025. I understand that these documents have been produced by Relators' counsel as EICHNER_012216–EICHNER_012908.

9. The document produced as EICHNER_012216–EICHNER_012225 is a copy of a Management Assertion of Issue Remediation form related to an issue that I handled during my

3

time at Ocwen. A true and correct copy of this document is attached hereto as **Exhibit 1**. The purpose of the Management Assertion of Issue Remediation form is to document that Ocwen's management has carried out the remediation plan approved by the Remediation Working Group. Such documents contain purely factual information. They are not created for the purpose of obtaining any legal advice. Nothing in the Management Assertion of Issue Remediation form was done to prepare for any litigation. It was merely created to document a business activity of Ocwen.

10.    The documents produced as EICHNER_012226–EICHNER_012850 are copies of Remediation Working Group Monthly Closure Reports from my time at Ocwen. True and correct copies of these documents are attached hereto as **Exhibits 2–22**. The ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ While these reports contained a footer with the language "Subject to Attorney Client Privilege and Attorney Work Product Doctrine," the footers were a pretext used by Ocwen to hide critical information in these reports from government regulators. The information in these reports was received directly from Ocwen's business units. The reports do not include any legal advice, and they were not created in preparation for any litigation. Rather, these reports include information related to non-legal, business matters, such as ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████ As a member of the Remediation Working Group, I received copies of these reports.

11.    The documents produced as EICHNER_012851–EICHNER_012908 are copies of Remediation Working Group Submission forms from my time at Ocwen. True and correct copies

of these documents are attached hereto as **Exhibits 23–34**. The information contained in the Remediation Working Group Monthly Closure Reports is substantially the same as the information in the Remediation Working Group Submission forms.

12.    I have reviewed the declaration of Renee Royer dated January 21, 2025, and believe that it contains a number of inaccuracies and half-truths regarding Ocwen's Remediation Working Group and the various documents discussed in this declaration. Ms. Royer suggests that the Remediation Working Group consists of a group of attorneys presenting options to executives. This is incorrect. Attorneys never presented anything to the Remediation Working Group. Ocwen's business unit executives made the presentations to the Remediation Working Group. Ms. Royer omits the fact that a majority of the voting members of the Remediation Working Group were executives from various business units at Ocwen who actually decided and determined the remediation plans for the Remediation Working Group. The Remediation Working Group was primarily a group of business executives conferring with each other and coming to a consensus as to the remediation plans.

13.    In Paragraph 3, Ms. Royer states that the Research Working Group was led by Ocwen's inhouse counsel. But the voting members of the Research Working Group included two in-house lawyers, two compliance executives, the Ombudsman, and an executive from the risk department. In Paragraph 4, Ms. Royer states that the Remediation Working Group had to make a determination that the remediation plan is legally sufficient. That is incorrect.

Contrary to Ms. Royer's statement in Paragraph 6 that the Research Working Group used the "Financial Impact Analysis" in the Remediation Working Group Monthly Closure Reports to

"asses the legal rationale of potential remediation," the Remediation Working Group used that information primarily to assess the financial impact to borrowers, investors, and Ocwen. The Remediation Working Group Monthly Closure Reports did not include any legal evaluations or assessments of issues related to remediation. They contained assessments in these reports were based on financial information and were business decisions.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of January, 2025.

Jean-Marc Eichner